Docket No.: CIV-21-0388
Recorded on: —
By: ___
IN CIVIL COURT
PINE RIDGE   Deputy Clerk
Oglala Sioux Tribal Court

OGLALA SIOUX TRIBAL COURT          )
OGLALA SIOUX TRIBE                 )SS.
PINE RIDGE INDIAN RESERVATION      )

LILLIAN "TONI" MONTILEAUX,                    Case No. CIV-21-0388
                    Petitioner

vs.                                           **COMPLAINT**
                                              **AND**
MAZASKA OWECASO OTIPI FINANCIAL,              **DEMAND FOR JURY TRIAL**
INC.,
                    Respondent

Comes now, Lillian "Toni" Montileaux (hereinafter the "Petitioner"), by and through her

attorney of record, Steven D. Sandven, and submits this Complaint against Mazaska Owecaso

Otipi Financial, Inc. (hereinafter the "Respondent") for breach of contract and the covenant of

good faith and fair dealing and would state as follows:

## NATURE OF THE ACTION

1.      By this action, Petitioner seeks, inter alia, (i) damages for Respondent's breach of

the Parties' Mortgage agreement and Note; (ii) damages for Respondent's breach of the covenant

of good faith and fair dealing; (iii) compensatory and punitive damages; and (iv) a full

accounting of Petitioner's loan history by an independent party.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to Chapter 1,

Section 1 of the Oglala Sioux Tribe's Law and Order Code.

3.      This Court has subject matter over this action pursuant to Section 10 of the Note:

1

Mazaska Complaint Exhibit 1
001

This Note shall be governed by the law of the Tribe upon which the leasehold interest in the land is located and applicable federal law. The courts of the Tribe shall have sole and exclusive jurisdiction with respect to all controversies or claims relating to or arising out of this Note.

4.    Venue is proper here as the property, parties, and legal issues which are the subject of this action are located on and inextricably tied with the Tribe and its sovereign territory.

## PARTIES

5.    Petitioner is a natural person who is, and was at all times relevant hereto, a resident of Oglala Lakota County.  Petitioner's mailing address is P.O. Box 7020, Pine Ridge, South Dakota 57770.

6.    Respondent is a Native Community Development Financial Institution that provides housing loans and financial and homebuyer education training to members of the Tribe living on, or in communities adjacent to, the Pine Ridge Indian Reservation and enrolled members of other federally recognized tribes in South Dakota.

7.    Respondent was formally organized as a nonprofit corporation under the laws of the State of South Dakota on June 14, 2004. Declaration of Steven D. Sandven ("Sandven Decl.") Exhibit 1.

8.    Respondent's registered agent is Tawney Brunsch with an address of P.O. Box 1996, 108 Oglala Street, Pine Ridge, South Dakota 57770. Sandven Decl. Exhibit 2.

## ALLEGATIONS COMMON TO ALL COUNTS

9.    On July 7, 2010, the Parties executed a mortgage (One Hundred Eighty Day Redemption) for repayment of Petitioner's debt in the amount of $51,634.00 ("First Mortgage"). Sandven Decl. Exhibit 3.

10.    Section 2 of the First Mortgage required Petitioner to remit a monthly sum to

2

Mazaska Complaint Exhibit 1
002

cover the following:

    (a)    yearly taxes and assessments which may attain priority as a lien, if any;

    (b)    yearly leasehold payments or ground rents, if any;

    (c)    yearly hazard or property insurance premiums;

    (d)    yearly flood insurance premiums, if any;

    (e)    yearly mortgage insurance premiums, if any; and

    (f)    any sums payable in lieu of the payment of mortgage insurance premiums.

11.    Additionally, Section 2 requires Respondent to give Petitioner, without charge, an annual accounting of the escrow account, showing credits and debits to the fund and the purpose for which each debit to the funds was made. *Id.* Petitioner has never received an annual accounting.

12.    Section 2 of the First Mortgage mandates that "[i]f the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law." *Id.*

13.    Section 3 of the First Mortgage provides that payments are to be applied first to escrow items, second to interest due, third to principal, and finally to, late charges. *Id.*

14.    On July 7, 2010, Petitioner executed the "First Note" therein promising to pay Respondent $51,634.00, plus interest at a yearly rate of 7.50%. *Id.* at Section 2.

15.    According to the First Note, Petitioner was to make monthly payments in the amount of $439.94 which would include a monthly insurance escrow amount of $90.33. *Id.* at Section 3. Interest was to be paid before principal. *Id.*

16.    The maturity date was set for July 6, 2020. *Id.*

17.    On December 1, 2010, the Parties executed a second mortgage (One Hundred Eighty Day Redemption) for repayment of Petitioner's debt in the amount of $54,084.00

Mazaska Complaint Exhibit 1
003

("Second Mortgage"). *Id.*

18.    The Second Note provided that the loan was to be paid in monthly installments of $439.94 which included $90.33 for escrow items. *Id.*

19.    Provisions of the Second Mortgage were the same as contained within the First Mortgage. *Id.*

20.    The maturity date on the Second Mortgage was July 6, 2015. *Id.*

21.    On April 19, 2011, the Parties executed a third mortgage (One Hundred Eighty Day Redemption) for repayment of Petitioner's debt in the amount of $66,370.25 ("Third Mortgage"). *Id.*

22.    Under the Third Note, payments were to made in monthly installments of $553.60 which included $90.33 for escrow items. *Id.*

23.    The maturity date on the Third Mortgage was May 10, 2016. *Id.*

24.    Provisions of the Third Mortgage were the same as contained within the First and Second Mortgages. *Id.*

25.    None of the loan documents held the former mortgage and note was superseded or had been renewed.  Thus, it appears that Petitioner received three different loans representing a sum total of $155,882.92 when in fact she only received $67,441.16. Sandven Decl. Exhibit 4.

26.    The First Mortgage and Promissory Note represented a loan for $51,634.00. Sandven Decl. Exhibit 3. Respondent's records show a commitment in the amount of $50,000 with an actual advance to Petitioner in the amount of $45,731.76. Sandven Decl. Exhibit 4.

27.    Under the First Note, Petitioner paid principal in the amount of $778.62, $969.75 in interest, and $451.65 for escrow.

28.    The Second Note was for the amount of $54,084 with a maturity date reduced by

4

six years to July 6, 2015. Sandven Decl. Exhibit 3. A new commitment of $17,441.16 was made by Respondent with an advance to Petitioner for $8,352.24. Sandven Decl. Exhibit 4.

29.     Petitioner paid principal in the amount of $372.13, $1,246.55 in interest, and $361.32 for escrow under the second note.

30.     The Third Note evidenced a debt in the amount of $66,370.25. Sandven Decl. Exhibit 3. No new commitment was issued but advances were made in the amount of $13,357.16. Sandven Decl. Exhibit 4.

31.     Under the Third Note, Petitioner paid principal in the amount of $28,761.94, $38,440.11 in interest, and $12,810.11 for escrow.

32.     On April 14, 2021, Respondent notified Petitioner that Loan No. 10-0019 was maturing on May 10, 2021 (the "Notice"). Sandven Decl. Exhibit 5. Petitioner had never agreed, nor had she been provided notice by the Respondent, that the maturity date was extended by six (6) additional years.

33.     The Notice informed Petitioner that her current loan balance was $37,878.67 (Principal $37,717.13, Interest $124.00 and Escrow $37.54). *Id.* If Respondent's calculations are correct, Plaintiff would be responsible for paying $122,926.35 in total for the $67,441.16 loan.

34.     On May 19, 2021, Petitioner requested an accounting of her loan history. Sandven Decl. Exhibit 6.

35.     Petitioner informed Respondent that her records demonstrated that she had made $85,047.68 in payments. *Id.*

36.     According to Respondent's own records, Petitioner received $67,441.16 in advances originating on July 7, 2010. *Id.* She consistently made scheduled payments and oftentimes paid more than what was due. *Id.*

5

37.    The promissory notes dated July 7, 2010, December 1, 2010, and April 19, 2011, all provided that a monthly payment of $90.33 would be set aside for escrow. *Id.* However, the amounts set aside for escrow never equaled that amount after October 12, 2011. Petitioner argued, based thereon, that all amounts above and beyond $90.33 should have been applied to principal. *Id.*

38.    Commencing on March 1, 2016, Respondent's records show they deducted escrow fees bi-weekly instead of monthly as required by the promissory note. *Id.*

39.    Respondent also deducted $114.92 per month for approximately a year. *Id.* Said amount was raised to $151.75 the following year and raised again to $165.00 per month the year thereafter. *Id.*

40.    As there is no property tax on the real estate subject to the mortgage, escrow funds would solely be used to cover insurance. *Id.* According to Petitioner's records, premiums from 2015 through 2022 were as follows:

|           |            |
|-----------|------------|
| 2015-2016 | $709.00    |
| 2016-2017 | $795.00    |
| 2017-2018 | $815.00    |
| 2018-2019 | $840.00    |
| 2019-2020 | $947.00    |
| 2020-2021 | $976.00    |
| 2021-2022 | $1,067.00  |

Respondent charged Petitioner $165.00 per month for the end period of 2015 and $118.16 for the first part of 2016. Thus, for period 2016-2017, she overpaid $989.96. *See* Sandven Decl. at Exhibit 4. Petitioner was provided no information as to where the overpayment was applied, and Respondent's attempt at an accounting was unresponsive.

41.    Respondent's records noted several "escrow releases" totaling $9,186.00. *Id.* Petitioner was provided no information as to what the notations signified.

6

Mazaska Complaint Exhibit 1
006

42.    None of the promissory notes or the mortgages authorize Respondent to impose administrative fees on the transaction. *Id*. An amount of $663.11 for such fees was added to Petitioner's outstanding balance on April 19, 2011, and then deducted that same day. *Id*.

43.    Respondent failed to record any of the mortgages with the Bureau of Indian Affairs prior to their maturity dates. Sandven Decl. Exhibit 7.

44.    On June 1, 2021, an update on Petitioner's request for an accounting was requested from Respondent. Sandven Decl. Exhibit 8.

45.    On June 4, 2021, Respondent's legal counsel responded to Petitioner's request, but did not tell Petitioner an accounting would be forthcoming. Sandven Decl. Exhibit 9.

46.    On June 8, 2021, the undersigned provided notice to Respondent's legal representation that Petitioner intended to file a lawsuit if an accounting was not completed within fourteen (14) days. Sandven Decl. Exhibit 10.

47.    On June 15, 2021, Respondent's legal counsel requested a thirty (30) day extension for which to respond. Sandven Decl. Exhibit 11.

48.    On July 22, 2021, an update on the accounting was requested from Respondent's legal counsel. Sandven Decl. Exhibit 12.

49.    On September 30, 2021, Respondent's legal counsel provided insurance declarations and other documents said to comply with Section 2 of the mortgage. Sandven Decl. Exhibit 13.

50.    Petitioner has never agreed to extend the maturity date beyond May 10, 2016, nor did she agree to the interest rate imposed by Respondent after the maturity date had elapsed.

## CLAIMS

## COUNT I
## (BREACH OF CONTRACT)

Mazaska Complaint Exhibit 1
007

51.    Petitioner realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 50.

52.    The Mortgages and Notes constitute valid and binding contracts between Petitioner and Respondent.

53.    The Respondent has breached its contractual obligations by failing and refusing to properly account for the escrow funds as required by Section 2 of the Third Mortgage, unilaterally extending the maturity date as delineated in the Third Note, and not applying Petitioner's payments in accordance with the Third Mortgage.

54.    The Respondent is liable to Petitioner for all damages which Petitioner has sustained as a result of its breaches of the Third Mortgage and Third Note, together with costs, interest and attorneys' fees.

**COUNT II**
**(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)**

55.    Petitioner realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 54.

56.    The Mortgage and Note constitute contracts which required the Respondent to act in good faith and to deal fairly with Petitioner.

57.    The Respondent has breached the covenant of good faith and fair dealing under the Third Mortgage and Third Note by breaching the foregoing agreements.

58.    By virtue of the Respondent's breaches of the covenant of good faith and fair dealing, Petitioner has sustained damages.

59.    Respondent is liable to Petitioner for all damages sustained by Petitioner, together with costs, interest and attorneys' fees.

WHEREFORE, Petitioner demands:

8

Mazaska Complaint Exhibit 1
008

1.     That judgment be entered in her favor and against the Respondent as to Counts I and II, for all damages Petitioner has sustained, together with costs, interest and attorneys' fees;

2.     That this Court award Petitioner compensatory and punitive damages;

3.     That this Court order a full accounting of Petitioner's loan history by an independent party at the expense of Respondent.

4.     Petitioner be awarded such other and further relief as is proper and just.

PETITIONER DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated this 31st day of October, 2021.

STEVEN D. SANDVEN, Law Office PC

By:

STEVEN D. SANDVEN
Attorney for Petitioner
12294 Gold Mountain Loop
Hill City SD 57745
Telephone: 605 206-7400
Facsimile 605 206-7588
sdsandven@gmail.com

Mazaska Complaint Exhibit 1
009

OGLALA SIOUX TRIBAL COURT    )
OGLALA SIOUX TRIBE           )SS.           IN CIVIL COURT
PINE RIDGE INDIAN RESERVATION  )           PINE RIDGE

LILLIAN "TONI" MONTILEAUX,         Case No. CIV_____
        Petitioner

vs.                        **DECLARATION**
                                **OF**
MAZASKA OWECASO OTIPI FINANCIAL,   **STEVEN D. SANDVEN. ESQ.**
INC.,

        Respondent

STEVEN D. SANDVEN submits this declaration in support of Petitioner's Complaint:

1.    I make this declaration based upon my own personal knowledge.

2.    I am over the age of eighteen and if called to testify, I would testify consistent with this declaration.

3.    Attached as Exhibit 1 is a true and correct copy the Certificate of Incorporation for Mazaska Owecaso Otipi Financial, Inc. ("Mazaska") dated June 14, 2004, and the entity's Annual Reports from 2004 to 2020.

4.    Attached as Exhibit 2 is a true and correct of the 2021 Annual Report of Mazaska dated May 17, 2021.

5.    Attached as Exhibit 3 is a true and correct copy of the Mortgage One Hundred Eighty Day Redemption dated May 11, 2011, the Note dated April 19, 2011, the Mortgage One Hundred Eighty Day Redemption dated July 7, 2010, the Note dated July 7, 2010, the Mortgage One Hundred Eighty Day Redemption dated December 1, 2010, and the Note dated December 1, 2010.

6.    Attached as Exhibit 4 is a true and correct copy of the Loan Details Report dated April 19, 2021, received from Mazaska.

7.    Attached as Exhibit 5 is a true and correct copy of correspondence from Amanda Standing Bear, Housing Specialist for Mazaska to Petitioner dated April 14, 2021.

1

8.      Attached as Exhibit 6 is a true and correct copy of correspondence from the undersigned to Amanda Standing Bear dated May 19, 2021.

9.      Attached as Exhibit 7 is a true and correct copy of email correspondence between staff from the Bureau of Indian Affairs and Mazaska dated December 1-2, 2020.

10.     Attached as Exhibit 8 is a true and correct copy of an email between the undersigned's office and Amanda Standing Bear dated June 1, 2021.

11.     Attached as Exhibit 9 is a true and correct copy of correspondence from Jonathan McCoy, attorney for Mazaska, to the undersigned dated June 4, 2021.

12.     Attached as Exhibit 10 is a true and correct copy of correspondence from my office to Mr. McCoy dated June 8, 2021.

13.     Attached as Exhibit 11 is a true and correct copy of correspondence from Mr. McCoy to the undersigned dated Jun 15, 2021.

14.     Attached as Exhibit 12 is a true and correct copy of email correspondence between the undersigned's office and Mr. McCoy dated July 22, 2021.

15.     Attached as Exhibit 13 is a true and correct copy is a true and correct copy of correspondence from Mr. McCoy to the undersigned dated September 30, 2021.

Dated this 31st day of October, 2021.

STEVEN D. SANDVEN, Law Office PC

By:

STEVEN D. SANDVEN
Attorney for Petitioner
12294 Gold Mountain Loop
Hill City SD 57745
Telephone: 605 206-7400
Facsimile 605 206-7588
sdsandven@gmail.com

2

Mazaska Complaint Exhibit 1
011

OGLALA SIOUX TRIBAL COURT　　　　)
OGLALA SIOUX TRIBE　　　　　　　　)SS.　　　　　IN CIVIL COURT
PINE RIDGE INDIAN RESERVATION　　)　　　　　　　PINE RIDGE

LILLIAN "TONI" MONTILEAUX,　　　　　　　　Case No. CIV_____
　　　　Petitioner

vs.　　　　　　　　　　　　　　　　　　　　　**DECLARATION**
　　　　　　　　　　　　　　　　　　　　　　**OF**
MAZASKA OWECASO OTIPI FINANCIAL,　　　**STEVEN D. SANDVEN. ESQ.**
INC.,
　　　　Respondent

STEVEN D. SANDVEN submits this declaration in support of Petitioner's Complaint:

1.　　　I make this declaration based upon my own personal knowledge.

2.　　　I am over the age of eighteen and if called to testify, I would testify consistent with this declaration.

3.　　　Attached as Exhibit 1 is a true and correct copy the Certificate of Incorporation for Mazaska Owecaso Otipi Financial, Inc. ("Mazaska") dated June 14, 2004, and the entity's Annual Reports from 2004 to 2020.

4.　　　Attached as Exhibit 2 is a true and correct of the 2021 Annual Report of Mazaska dated May 17, 2021.

5.　　　Attached as Exhibit 3 is a true and correct copy of the Mortgage One Hundred Eighty Day Redemption dated May 11, 2011, the Note dated April 19, 2011, the Mortgage One Hundred Eighty Day Redemption dated July 7, 2010, the Note dated July 7, 2010, the Mortgage One Hundred Eighty Day Redemption dated December 1, 2010, and the Note dated December 1, 2010.

6.　　　Attached as Exhibit 4 is a true and correct copy of the Loan Details Report dated April 19, 2021, received from Mazaska.

7.　　　Attached as Exhibit 5 is a true and correct copy of correspondence from Amanda Standing Bear, Housing Specialist for Mazaska to Petitioner dated April 14, 2021.

1

Mazaska Complaint Exhibit 1
012

8.      Attached as Exhibit 6 is a true and correct copy of correspondence from the undersigned to Amanda Standing Bear dated May 19, 2021.

9.      Attached as Exhibit 7 is a true and correct copy of email correspondence between staff from the Bureau of Indian Affairs and Mazaska dated December 1-2, 2020,

10.     Attached as Exhibit 8 is a true and correct copy of an email between the undersigned's office and Amanda Standing Bear dated June 1, 2021.

11.     Attached as Exhibit 9 is a true and correct copy of correspondence from Jonathan McCoy, attorney for Mazaska, to the undersigned dated June 4, 2021.

12.     Attached as Exhibit 10 is a true and correct copy of correspondence from my office to Mr. McCoy dated June 8, 2021.

13.     Attached as Exhibit 11 is a true and correct copy of correspondence from Mr. McCoy to the undersigned dated Jun 15, 2021.

14.     Attached as Exhibit 12 is a true and correct copy of email correspondence between the undersigned's office and Mr. McCoy dated July 22, 2021.

15.     Attached as Exhibit 13 is a true and correct copy is a true and correct copy of correspondence from Mr. McCoy to the undersigned dated September 30, 2021.

Dated this 31st day of October, 2021.


                                STEVEN D. SANDVEN, Law Office PC

                                By:

                                STEVEN D. SANDVEN
                                Attorney for Petitioner
                                12294 Gold Mountain Loop
                                Hill City SD 57745
                                Telephone: 605 206-7400
                                Facsimile 605 206-7588
                                sdsandven@gmail.com

2

Mazaska Complaint Exhibit 1
013



Receipt Number: *I*33 £>^0/

File Number NS012594          NS012594

*NSO1    259A.*

CERTIFICATE OF INCORPORATION

^CERTIFICATE OF INCORPORATION*

**CERTIFICATE OF INCORPORATION**

For

**MAZASKA OWECASO OTIPI FINANCIAL, INC***

Filed at the request of:

**DAVID SNELL**
**MAZASKA OWECASO OTIPI FINANCIAL INC**
**PO BOX 3001**
**PINE RIDGE SD 57770**

*State of South Dakota*
*Office of the Secretary of State*

Filed in the office of the Secretary of State on: **Monday, June 14, 2004**

Chris Nelson

Secretary of State

Fee Received: $25.00

EXHIBIT 1

Mazaska Complaint Exhibit 1
014



# State of South Dakota



## OFFICE OF THE SECRETARY OF STATE

# Certificate of Incorporation
# Nonprofit Corporation

### ORGANIZATIONAL ID #: NS012594

**I, Chris Nelson,** Secretary of State of the State of South Dakota, hereby certify that the Articles of Incorporation of **MAZASKA OWECASO OTIPI FINANCIAL, INC.** duly signed and verified, pursuant to the provisions of the South Dakota Corporation Act, have been received in this office and are found to conform to law.

**ACCORDINGLY** and by virtue of the authority vested in me by law, I hereby issued this Certificate of Incorporation and attach hereto a duplicate of the Articles of Incorporation.



**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the Great Seal of the State of South Dakota, at Pierre, the Capital, this June 14, 2004.

*Chris Nelson*

**Chris Nelson**
**Secretary of State**

Cert of Incorp Non Profit Merge.doc

Mazaska Complaint Exhibit 1
015



Filed this *14th* day of *June 2004*

*Chris Nelson*

SECRETARY OF STATE

332 1573

RECEIVED

JUN 14 '04

S.D. SEC. of STATE

# ARTICLES OF INCORPORATION

## OF

## MAZASKA OWECASO OTIPI FINANCIAL, INC., A Non-Profit Corporation

The undersigned, who are citizens of the United States, acting as incorporators of a nonprofit corporation, hereby adopt the following Articles of Incorporation:

## ARTICLE I

The name of the corporation is Mazaska Owecaso Otipi Financial, Inc

## ARTICLE II

The corporation shall have perpetual existence.

## ARTICLE III

This Corporation is organized and shall be operated exclusively for charitable and educational purposes as contemplated and permitted by Sections 170(c)(2) and 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"). All references in these Articles of Incorporation to a particular section of the Code shall include the corresponding provisions of any future federal tax law. Within the framework and limitations of the foregoing, the specific primary purposes of the Corporation include:

1. To act as a Community Development Financial Institution as defined in and regulated by 12 CFR Part 1805

2. To provide grants, loans, guarantees, or other arrangements to individuals or organizations working to develop the community, and to enter into lawful agreements to secure and enforce the performance and payment obligations of such financial assistance.

3. To provide information, technical assistance, and housing counseling to the residents of the Pine Ridge Reservation concerning the methods and resources available for construction of new housing and the rehabilitation of substandard housing. The Corporation is also formed for the educational purposes of instructing the residents of the Pine Ridge Reservation on how to prepare for home ownership, purchase a home, and

NS012594

Mazaska Complaint Exhibit 1
016

maintain and rehabilitate a home, which will improve or develop the capabilities of the community.

4. To enhance affordable home ownership opportunities among residents of the Pine Ridge Reservation.

5. To promote and develop affordable, decent, safe, and sanitary housing for residents of the Pine Ridge Reservation.

6. To improve the community physically, socially, and economically by the coordinated efforts of the citizens of the Oglala Sioux Tribe, the business community, and government representatives, thus promoting the general welfare and combating community deterioration while lessening the burdens of government.

7. To establish linkages and partnerships with public and private financial intermediaries and to provide financial services and assistance, including, but not limited to, home ownership loans, down payment buy-downs, lease-purchase options, revolving loan funds, and loan loss reserve services.

8. To enter into contracts, partnerships, joint ventures, or other arrangements to provide or secure services, funding, or other assistance which serve the purposes of this Corporation.

9. To solicit, hold, use, invest, and dispose of money, personal property, or real property and collect and use proceeds of such money or property, including interest, rent, sale proceeds, and other types of income, for the purposes for which this Corporation is formed.

10. To acquire, hold, use, invest, and dispose of money, personal, and real property, and exercise any lawful right to make use of that property, including, but not limited to, renting, leasing, assigning, exchanging, selling, mortgaging, or otherwise encumbering, improving, converting, or altering such property.

11. To acquire, hold, use, and dispose of through any lawful means or instrument, shares in stock, bonds, notes, debentures, mortgages, and other securities.

12. To incur debt obligations and secure such debt or obligations through any lawful instrument which is reasonable and appropriate to achieve the purposes of the Corporation.

13. To communicate with residents and government regarding capital improvements, needed services, available programs, and resources that currently or potentially impact the Oglala Sioux Tribe.

2

Mazaska Complaint Exhibit 1
017

14. To work in cooperation with other organizations having aims similar to those of Corporation.

15. To do any and all lawful things which a natural person might find necessary and desirable for the general purposes for which the Corporation is organized, as permitted by a nonprofit corporation organized under the laws of the State of South Dakota and exempt from federal income tax under Section 501(a) of the Code as an organization described in Section 501(c)(3) of the Code.

## ARTICLE IV

The Corporation shall have no members.

## ARTICLE V

A. The affairs of the Corporation will be managed by its Board of Directors. The number, qualifications, terms of office, method of selection or election, powers, authority, and duties of the directors of this Corporation, the time and place of their meetings, and such other provisions with respect to them as are not inconsistent with the express provisions of these Articles of Incorporation shall be as specified in or prescribed pursuant to the Bylaws of the Corporation.

B. Directors shall be elected and/or appointed by the Board of Directors in accordance with the Bylaws of the Corporation.

## ARTICLE VI

A. The Corporation is organized exclusively for charitable and educational purposes within the meaning of Section 501(c)(3) of the Code. Notwithstanding any other provision of these Articles of Incorporation, the Corporation will not carry on any other activities not permitted to be carried on (1) by a corporation exempt from federal income tax under Section 501(a) of the Code as an organization described in Section 501(c)(3) of the Code, or (2) by a corporation contributions to which are deductible under Section 170(c)(2) of the Code.

B. This Corporation is not organized nor will it be operated for pecuniary profit and no part of this Corporation's net income, earnings, or assets shall, directly or indirectly, ever inure to the benefit of, or be distributed to, any member or person having a personal and private interest in the activities of the Corporation, except that the Corporation may pay reasonable compensation for services rendered to this Corporation in furtherance of its purposes set forth in Article III. The property of the Corporation is irrevocably dedicated to charitable and public purposes. No substantial part of the activities of this Corporation will be conducting

3

Mazaska Complaint Exhibit 1
018

propaganda or attempting to influence legislation, except pursuant to an election under, and as permitted by, Section 501(h) of the Code, nor will this Corporation participate in or intervene in any political campaign on behalf of or in opposition to any candidate for political office.

C. Dissolution:

1. The Corporation may voluntarily dissolve for any reason at any time, after providing notice to its known creditors and claimants, and posting a notice of intent to dissolve on the Reservation for a period of one month. Upon the expiration of 90 days after the notice was posted, if there are no known creditors or claimants, then the Corporation may dissolve by submitting Articles of Dissolution with the South Dakota Secretary of State.

2. Upon dissolution of the Corporation, and after the payment of all liabilities and obligations of the Corporation and all costs and expenses incurred by the Corporation in connection with such dissolution, any remaining assets shall be distributed to one or more nonprofit corporations that are organized and operated exclusively for charitable and/or educational purposes and that have established their tax exempt status under Section 501(c)(3) of the Code, or shall be distributed to the Oglala Sioux Tribe for housing and educational purposes, in the manner and in such amounts as may be determined by the Board of Directors. The Board of Directors shall make all reasonable efforts to distribute the Corporation's assets to one or more nonprofit corporations organized or operated exclusively for the purpose of promoting affordable, decent, safe, and sanitary housing for residents of the Pine Ridge Reservation and that have established their tax exempt status under Section 501(c)(3) of the Code. Notwithstanding anything apparently or expressly to the contrary contained in this Article VI, if any assets are then held by the Corporation in trust or upon condition or subject to any executory or special limitation, and if the condition or limitation occurs by reason of the dissolution of the Corporation, such assets shall revert or be returned, transferred, or conveyed in accordance with the terms and provisions of such trust, conditions, or limitation.

## ARTICLE VII

The initial registered office of the Corporation shall be:

Old Ambulance Building           PO Box 3001
Pine Ridge, SD  57770            Pine Ridge, SD  57770

and the name of the registered agent at such address is Melvin Cummings.

4

Mazaska Complaint Exhibit 1
019

## ARTICLE VIII

A. The initial Board of Directors shall be composed of three members

B. The names and addresses of the initial directors, who will serve until the first annual election of directors or until their successors are elected are:

*Elsie Meeks*          *PO Box 340   Kyle, SD 57752*
*Melvin Cummings*      *P.O. Box 109   Manderson, SD 57776*
*Lyle Meyer*           *3611 Croftview Ter, Minnetonka, MN 55345*

## ARTICLE IX

A.     The Corporation shall indemnify its directors, officers, employees, and agents, including persons formerly occupying such positions, and the heirs, executors, and administrators of such persons, against all expenses, judgments, fines, settlements, and other amounts actually and reasonably incurred by them in connection with any action, suit, or proceeding relating to the Corporation, including an action by or in the right of the Corporation.

B.     No indemnification shall be provided for any person with respect to any matters as to which he or she shall have been adjudged in any proceedings to have acted in bad faith or without a reasonable belief that his or her action was in the best interests of the Corporation. If he or she has not been so adjudged, he or she shall be entitled to indemnification unless the Board of Directors determines that he or she did acted in bad faith or acted without a reasonable belief that his or her action was in the best interests of the Corporation. To the fullest extent permitted by law, and except as otherwise determined by the Board of Directors in a specific instance, expenses incurred by a person seeking indemnification in defending any action, suit or proceeding shall be advanced by the Corporation before final disposition of the proceeding and upon receipt by the Corporation of an undertaking by that person to repay such amount unless it is ultimately determined that the person is entitled to be indemnified by the Corporation for those expenses.

## ARTICLE X

These Articles of Incorporation and the Bylaws of the Corporation may be amended to include any provision permitted by law, or may be restated in their entireties, at the times and in the manner provided in the Bylaws of the Corporation and in accordance with the laws of the State of South Dakota\

5

Mazaska Complaint Exhibit 1
020

**IN WITNESS WHEREOF,** we have hereunto set our hand this 4th day of June, 2004.

**INCORPORATORS**

State of South Dakota
County of Shannon

On this, the 4th day of June _____, 2004 before me personally appeared Elsie Meeks, Melvin Cummings & Lyle Meyer, know to me or satisfactorily proven to be the persons who are described in, and who executed the within instrument and acknowledge to me that they executed the same.

My Commission Expires
~~May 24, 2007~~
My Commission Expires

*Rosemarie Dillingham*
Notary Public

Notarial Seal

    ROSEMARIE C. DILLINGHAM
    NOTARY PUBLIC
    State of South Dakota

---

CONSENT OF APPOINTMENT BY THE REGISTERED AGENT

I, Melvin Cummings, hereby give my consent to serve as the registered agent for Mazaska Owecaso Otipi Financial, Inc.

Dated: Jun 4, 2004 _____        _____
                                          (Signature of Registered Agent)

6

Mazaska Complaint Exhibit 1
021

239 0320 07/14/2005

# 2005 NONPROFIT REPORT

FILE DATE 01|01|05
RECEIPT NO. 1455 215

RECEIVED

JUL 1 '05

S.D. SEC. OF STATE

### PLEASE TYPE OR USE BLACK INK
**FILING FEE: $10 MAKE CHECK PAYABLE TO SECRETARY OF STATE**
**ADDITIONAL PENALTY FEE OF $25 APPLIES TO ALL LATE FILINGS**

1. Corporate Name, Registered Agent and Registered Address:



*NS012594*
NS012594        JUN/0000
MAZASKA OWECASO OTIPI FINANCIAL, INC.
CUMMINGS, MELVIN
OLD AMBULANCE BUILDING
PO BOX 3001
PINE RIDGE SD 57770-3001

Day Time Phone # _____
Federal Taxpa
FILING DATE: Due during the month the Certificate
of Incorporation was issued, and delinquent after
the last day of the following month.

IF THE REGISTERED AGENT (CONTACT PERSON) AND/OR THE REGISTERED OFFICE ADDRESS HAS CHANGED FROM THAT LISTED ON THE MAILING LABEL ABOVE, THE STATEMENT OF CHANGE FORM IS REQUIRED TO BE COMPLETED.

2.   The nature of the affairs which the corporation is conducting in South Dakota is   Corporation is a US Treasury
Certified Community Development Financial Inst making mortgage loans

3. A.  The amount of property which the corporation is authorized to hold is unlimited or as set forth in the articles of incorporation.

B.  The amount of property presently held by the corporation is $      3,500                                                *
* Property should include all real or personal property, or any interest therein, wherever situated.

4. The names and addresses of the corporation officers:

| NAME | OFFICE | STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| Melvin Cummings | President | PO Box 109 | Manderson | SD | 57776 |
| Lyle Meyer | Vice President | 3611 Croftview Ter | Minnetonka | MN | 55345 |
| Elsie Meeks | Secretary | PO Box 340 | Kyle | SD | 57752 |
| Elsie Meeks | Treasurer | PO Box 340 | Kyle | SD | 57752 |

5. The names and addresses of directors (**State law requires a minimum of three**). If the directors and officers are the same individuals, please re-list them and their addresses. Attach an additional sheet if more space is needed to list directors.

| NAME | OFFICE | STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| Melvin Cummings | Director | PO Box 109 | Manderson | SD | 57776 |
| Lyle Meyer | Director | 3611 Croftview Ter | Minnetonka | MN | 55345 |
| Elsie Meeks | Director | PO Box 340 | Kyle | SD | 57752 |

The report must be signed by the **chairman** of the board of directors, or its **president**, or any **other officer**.

Dated   6/28/05

_____
(Signature)

Executive Director
_____
(Title)

RETURN TO:   SECRETARY OF STATE, 500 E. CAPITOL, PIERRE, S.D. 57501-5077
PHONE: 605-773-4845   FAX (605) 773-4550
www.sdsos.gov

nsar.pdf
Revised 07/04

Mazaska Complaint Exhibit 1
022

SECRETARY OF STATE
STATE CAPITOL
500 E. CAPITOL
PIERRE, S.D. 57501-5077
605-773-4845
Fax (605) 773-4550

## NON-PROFIT
## STATEMENT OF CHANGE OF REGISTERED OFFICE
## OR REGISTERED AGENT, OR BOTH

**FILING FEE: $5 In addition to corporate report fee**

Pursuant to the provisions of the South Dakota Corporation Acts, the undersigned corporation submits the following statement for the purpose of changing its registered office and/or its registered agent in the state of South Dakota.

1. The name of the corporation is_____

   _____

2. The previous street address, <u>or</u> a statement that there is no street address, or its registered office _____

   _____ ZIP _____

3. The current address to which the registered office is to be changed.  A PO box number can be used for mailing but a street address, or a statement that there is no street address if street addresses have not been assigned, or the RR address, <u>must also be included.</u>_____

   _____ ZIP _____

4. The name of its previous registered agent is _____

5. The name of its successor (current) registered agent is * _____

   **\*The Consent of Registered Agent below <u>must</u> be completed by the new agent.**

6. The address of its registered office and the address of the business office of its registered agent, as changed, will be identical.

7. This change has been authorized by resolution duly adopted by the board of directors.

The statement may be signed by the chairman of the board of directors, by its president, or by another officer.

Dated_____        _____
                                              (Signature)

                                              _____
                                              (Title)

---

### <u>CONSENT OF APPOINTMENT BY THE REGISTERED AGENT</u>

I,_____ ,hereby give my consent to serve as the
            (name of registered agent)

registered agent for _____
                                    (corporate name)

Dated _____        _____
                                              (signature of registered agent)

Revised 07/04

Mazaska Complaint Exhibit 1
023

SECRETARY OF STATE
STATE CAPITOL
500 E. CAPITOL AVE.
PIERRE, S.D. 57501
(605)773-4845
Fax (605)773-4550

*2006*

# NONPROFIT REPORT

PLEASE TYPE OR USE BLACK INK

FILING FEE: $10 MAKE CHECK PAYABLE TO SECRETARY OF STATE
ADDITIONAL PENALTY FEE OF $25 APPLIES TO ALL LATE FILINGS

FILE DATE 08/30/06
RECEIVED 1390102

AUG 30 '06

S.D. SEC. of STATE

1. Corporate Name, Registered Agent and Registered Address:

NS012594        2006 REPORT
MAZASKA OWECASO OTIPI FINANCIAL, INC.
CUMMINGS, MELVIN
 OLD AMBULANCE BUILDING  PO BOX 3001
 PINE RIDGE, SD  57770-3001

Day Time Phone # _605-867-1555_

Federal Identification #

FILING DATE: Due during the month the
Certificate of Incorporation was issued, and
delinquent after the last day of the following
month.

IF THE REGISTERED AGENT (CONTACT PERSON) AND/OR THE REGISTERED OFFICE ADDRESS HAS CHANGED
IN NUMBER ONE, THE STATEMENT OF CHANGE FORM IS REQUIRED TO BE COMPLETED.

2. The nature of the affairs which the corporation is conducting in South Dakota is _Corporation is a US treasury Certified Community Development Financial Institute, Making Mortgage loans_

3. A. The amount of property which the corporation is authorized to hold is unlimited or as set forth in the articles of incorporation.

   B.  The amount of property presently held by the corporation is $ _3,500.00_ *
       * Property should include all real or personal property, or any interest therein, wherever situated.

4. The names and addresses of the corporation officers.

| | NAME | OFFICE | STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| ☑ | Mike HerMany Houses | President | PO Box # 92 | Wounded Knee | SD | 57794 |
| ☑ | Delyle Mayer | Vice President | 3611 Craftview Terrace | Minn | MN | 55346 |
| ☑ | Elsie Meeks | Secretary | 1010 9th St. Suite 3 | Rapid City | SD | 57701 |
| ☐ | Melvin Cummings | Treasurer | PO Box 109 | Manderson, SD | | 57756 |

5. The names and addresses of directors (**State law requires a minimum of three**). If the directors and officers are the same individuals, please check the
   box next to the person's name above. Attach an additional sheet if more space is needed to list directors.

| NAME | OFFICE | STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| | Director | | | | |
| | Director | | | | |
| | Director | | | | |

The report must be signed by the **chairman** of the board of directors, or its **president**, or any **other officer**.

Dated _8.29.06_ .

_Emma S Clifford_
(Signature)

_Executive Director_
(Title)

nonprofitannualreport July 2006

Mazaska Complaint Exhibit 1
024

Mazaska Complaint Exhibit 1
025

266 2002 09/12/2007

# 2007 NONPROFIT REPORT

FILE DATE 08/31/07
RECEIPT NO. 1709556

**RECEIVED**
AUG 3 1 2007
S.D. SEC. OF STATE

PLEASE TYPE OR USE BLACK INK
FILING FEE: $10 MAKE CHECK PAYABLE TO SECRETARY OF STATE
ADDITIONAL PENALTY FEE OF $25 APPLIES TO ALL LATE FILINGS

1. Corporate Name, Registered Agent and Registered Address:



*NS012594*
NS012594    JUN/2006
MAZASKA OWECASO OTIPI FINANCIAL, INC.
CUMMINGS, MELVIN
OLD AMBULANCE BUILDING
PO BOX 3001
PINE RIDGE SD 57770-3001

Day Time Phone # 605-867-1555
Federal Taxpa
FILING DATE: Due during the month the Certificate of Incorporation was issued, and delinquent after the last day of the following month.

IF THE REGISTERED AGENT (CONTACT PERSON) AND/OR THE REGISTERED OFFICE ADDRESS HAS CHANGED FROM THAT LISTED ON THE MAILING LABEL ABOVE, THE STATEMENT OF CHANGE FORM IS REQUIRED TO BE COMPLETED.

2. The nature of the affairs which the corporation is conducting in South Dakota is *Mortgaging & Refinancing of Homes,*

3. A. The amount of property which the corporation is authorized to hold is unlimited or as set forth in the articles of incorporation.

   B. The amount of property presently held by the corporation is $ *737,374.91*
   * Property should include all real or personal property, or any interest therein, wherever situated.

4. The names and addresses of the corporation officers:

| | NAME | OFFICE | STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| ☑ | Mike Her Many Horse | President | P.O. Box 92 | Wounded Knee | SD | 57794 |
| ☑ | Wilbur Between Lodge | Vice President | P.O. Box 292 | Pine Ridge | SD | 57770 |
| ☑ | Melvin Cummings | Secretary | P.O. Box 109 | Manderson | SD | 57756 |
| ☐ | Melvin Cummings | Treasurer | P.O. Box 109 | Manderson | SD | 57756 |

5. The names and addresses of directors (State law requires a minimum of three). If the directors and officers are the same individuals, please check the box next to the person's name above. Attach an additional sheet if more space is needed to list directors.

| NAME | OFFICE | STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| | Director | | | | |
| | Director | | | | |
| | Director | | | | |

The report must be signed by the **chairman** of the board of directors, or its **president**, or any **other officer**.

Dated *August 30, 2007*

*Michael Her Many Horse*
(Signature)

*Chairman of the Board*
(Title)

RETURN TO:  SECRETARY OF STATE, 500 E. CAPITOL, PIERRE, S.D. 57501-5077
PHONE: 605-773-4845    FAX (605) 773-4550
www.sdsos.gov

nsar.pdf
Revised 07/06

Mazaska Complaint Exhibit 1
026

SECRETARY OF STATE
STATE CAPITOL
500 E. CAPITOL
PIERRE, S.D. 57501-5077
605-773-4845
Fax (605) 773-4550

**NON-PROFIT**
**STATEMENT OF CHANGE OF REGISTERED OFFICE**
**OR REGISTERED AGENT, OR BOTH**

**FILING FEE: $5 In addition to corporate report fee**

Pursuant to the provisions of the South Dakota Corporation Acts, the undersigned corporation submits the following statement for the purpose of changing its registered office and/or its registered agent in the state of South Dakota.

1. The name of the corporation is_____

_____

2. The previous street address, or a statement that there is no street address, or its registered office _____

_____ ZIP _____

3. The current address to which the registered office is to be changed.  A PO box number can be used for mailing but a street address, or a statement that there is no street address if street addresses have not been assigned, or the RR address, must also be included._____

_____ ZIP _____

4. The name of its previous registered agent is _____

5. The name of its successor (current) registered agent is * _____

   **\*The Consent of Registered Agent below must be completed by the new agent.**

6. The address of its registered office and the address of the business office of its registered agent, as changed, will be identical.

7. This change has been authorized by resolution duly adopted by the board of directors.

The statement may be signed by the chairman of the board of directors, by its president, or by another officer.

Dated_____          _____
                                                 (Signature)

                                                 _____
                                                 (Title)

_____

**CONSENT OF APPOINTMENT BY THE REGISTERED AGENT**

I,_____ ,hereby give my consent to serve as the
                    (name of registered agent)

registered agent for _____
                                                 (corporate name)

Dated _____          _____
                                                 (signature of registered agent)

Revised 07/04

Mazaska Complaint Exhibit 1
027

282 2830 11/20/2008

# 2008 NONPROFIT REPORT

FILE DATE 10/30/08
RECEIPT NO. IK50443

**RECEIVED**
OCT 30 2008
S.D. SEC. OF STATE

**RECEIVED**
AUG 19 2008
S.D. SEC. OF STATE

PLEASE TYPE OR USE BLACK INK
FILING FEE: $10 MAKE CHECK PAYABLE TO SECRETARY OF STATE
ADDITIONAL PENALTY FEE OF $25 APPLIES TO ALL LATE FILINGS

1. Corporate Name, Registered Agent and Registered Address:



*NS012594*

NS012594     JUN/2007
MAZASKA OWECASO OTIPI FINANCIAL, INC.
CUMMINGS, MELVIN
OLD AMBULANCE BUILDING
PO BOX 3001
PINE RIDGE SD 57770-3001

5/16/08

Day Time Phone # 605·867·1555
Federal Taxp
FILING DATE: Due during the month the Certificate of Incorporation was issued, and delinquent after the last day of the following month.

---

IF THE REGISTERED AGENT (CONTACT PERSON) AND/OR THE REGISTERED OFFICE ADDRESS HAS CHANGED FROM THAT LISTED ON THE MAILING LABEL ABOVE, THE STATEMENT OF CHANGE FORM IS REQUIRED TO BE COMPLETED.

---

2. The nature of the affairs which the corporation is conducting in South Dakota is _to assist members of the Dalala Sioux Tribe, Mortgaging & Refinancing of homes_

3. A. The amount of property which the corporation is authorized to hold is unlimited or as set forth in the articles of incorporation.

   B. The amount of property presently held by the corporation is $ _707,374.91_
      * Property should include all real or personal property, or any interest therein, wherever situated.

4. The names and addresses of the corporation officers:

| | NAME | OFFICE | STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| ☒ | Mike Her Many Horses | President | PO Box 42 | Wounded Knee | SD | 57794 |
| ☒ | Elsie Meeks | Vice President | 27200 Snake Butte Rd. | Interior, SD. | | 57750 |
| ☒ | | Secretary | | | | |
| ☒ | Melvin Cummings | Treasurer | P.O. Box 109 | Manderson | SD. | 57756 |

5. The names and addresses of directors (State law requires a minimum of three). If the directors and officers are the same individuals, please check the box next to the person's name above. Attach an additional sheet if more space is needed to list directors.

| NAME | OFFICE | STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| | Director | | | | |
| | Director | | | | |
| | Director | | | | |

The report must be signed by the **chairman** of the board of directors, or its **president**, or any **other officer**.

Dated _July 9, 2008_

_Michael Her Many Horses_
(Signature)

_Chairman of the Board_
(Title)

RETURN TO:   SECRETARY OF STATE, 500 E. CAPITOL, PIERRE, S.D. 57501-5077
PHONE: 605-773-4845   FAX (605) 773-4550
www.sdsos.gov

nsar.pdf
Revised 07/06

Mazaska Complaint Exhibit 1
028

SECRETARY OF STATE
STATE CAPITOL
500 E. CAPITOL
PIERRE, S.D. 57501-5077
605-773-4845
Fax (605) 773-4550

# NON-PROFIT
## STATEMENT OF CHANGE OF REGISTERED OFFICE
## OR REGISTERED AGENT, OR BOTH

### FILING FEE: $5 In addition to corporate report fee

Pursuant to the provisions of the South Dakota Corporation Acts, the undersigned corporation submits the following statement for the purpose of changing its registered office and/or its registered agent in the state of South Dakota.

1. The name of the corporation is_____

   _____

2. The previous street address, or a statement that there is no street address, or its registered office _____

   _____ ZIP _____

3. The current address to which the registered office is to be changed. A PO box number can be used for mailing but a street address, or a statement that there is no street address if street addresses have not been assigned, or the RR address, must also be included. _____

   _____ ZIP _____

4. The name of its previous registered agent is _____

5. The name of its successor (current) registered agent is * _____

   **\*The Consent of Registered Agent below must be completed by the new agent.**

6. The address of its registered office and the address of the business office of its registered agent, as changed, will be identical.

7. This change has been authorized by resolution duly adopted by the board of directors.

The statement may be signed by the chairman of the board of directors, by its president, or by another officer.

Dated_____      _____
                                          (Signature)


                                          _____
                                          (Title)


---

## CONSENT OF APPOINTMENT BY THE REGISTERED AGENT

I,_____ ,hereby give my consent to serve as the
         (name of registered agent)

registered agent for _____
                                  (corporate name)

Dated _____      _____
                                                 (signature of registered agent)

---

Revised 07/04

Mazaska Complaint Exhibit 1
029

103012594

282 2831

## Mazaska Owecaso Otipi Financial, Inc.

### Board of Directors

**Michael Her Many Horses, Chairman**
PO Box #92
Wounded Knee, SD 57794
Phone: 605-867-6411
605-484-6109 (cell)

**Melvin Cummings, Treasurer**

PO Box #109
Manderson, SD. 57756
Phone: 605-867-5094
605-867-5375 (fax)

**Elsie Meeks, Vice Chairman**

1010 9th Street, Suite 3
Rapid City, SD 57701
Phone: 605-342-3770
605-342-3771 (fax)

**Tanya Fiddler**
PO Box # 726
Eagle Butte, SD 57625
Phone: 605-964-3687
605-365-6676 (cell)

**David Pourier**
HC49 Box # 110
Porcupine, SD 57752
Phone: 605-455-2837 (H)
605-867-5821 (w)
605-685-5454 (Cell)

Mazaska Complaint Exhibit 1
030

Mazaska Complaint Exhibit 1
031

Secretary of State Office
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

*2009*

# ANNUAL REPORT
## DOMESTIC NONPROFIT
### Please Type or Print Clearly in Ink

**FILING FEE: $10** Make check payable to SECRETARY OF STATE

FILE DATE *07/09/09*
RECEIPT NO *1927688*

**RECEIVED**

**JUL 09 2009**

S.D. SEC. OF STATE

**RECEIVED**

**JUL 0 7 2009**

S.D. SEC. OF STATE

1. Corporate ID and Name:

    NSO12594

    MAZASKA OWECASO OTIP FINANCIAL, INC.
    CUMMINGS, MELVIN
    PO BOX 3001
    PINE RIDGE, SD 57770-3001

Telephone # (605) 867-1018

FAX # (605) 867-1522

FILING DATE: Due during the month the Certificate of Incorporation was issued, and delinquent after the last day of the following month.

2. The address of the principal executive office in or out of the State of South Dakota.

| OLD AMBULANCE BUILDING  PINE RIDGE, SD. 57770 | | | |
|---|---|---|---|
| Street Address | City | State | ZIP+4 |
| | | | |
| Mailing Address (Optional) | City | State | ZIP+4 |

3. The name of the South Dakota Registered Agent    MELVIN CUMMINS

| PO BOX 3001 OLD AMBULANCE BUILDING PINE RIDGE, | | SD | 57770-3001 |
|---|---|---|---|
| Street Address (Required to be a South Dakota Address) | City | State | ZIP+4 |
| | | | |
| Mailing Address (Optional – Required to be a South Dakota Address) | City | State | ZIP+4 |

4. The names and business addresses of its principal officers and directors.  Please place a check mark next to the name if the principal officer serves as a director.  South Dakota Law requires at least three directors.

| ☑ MIKE HER MANY HORSES PO BOX 92 | WOUNDED KNEE | SD | 57770-3001 |
|---|---|---|---|
| President | Street Address | City | State | ZIP+4 |
| ☐  SEE ATTACHMENT | | | |
| Vice President ↓ | Street Address | City | State | ZIP+4 |
| ☐ | | | |
| Secretary | Street Address | City | State | ZIP+4 |
| ☑ MELVIN CUMMINGS PO BOX 109 | MANDERSON | SD | 57770-3001 |
| Treasurer | Street Address | City | State | ZIP+4 |
| ☑ TANYA FIDDLER | EAGLE BUTTE | SD | 57625 |
| Director | Street Address | City | State | ZIP+4 |
| ☑ DAVID POURIER HC 49 BOX 110 | PORCUPINE, | SD | 57752 |
| Director | Street Address | City | State | ZIP+4 |
| ☑ TAWNEY BRUNSCH PO BOX 57752 | KYLE, | SD | 57752 |
| Director | Street Address | City | State | ZIP+4 |

Dated 7/6/09

*Mike Her Many Horses*
(Signature of an authorized officer)

MIKE HER MANY HORSES
(Printed Name)

CHAIRMAN
(Title)

*Annualreportdomesticnonprofit July2008*

Mazaska Complaint Exhibit 1
032

Mazaska Complaint Exhibit 1
033

N3012594

293 0429

## Mazaska Owecaso Otipi Financial, Inc.
## Board of Directors List
## 2009

Mike Her Many Horses, **Chairman**
Po Box 92
Wounded Knee, SD. 57794
Phone: 605-867-6411 (Home)
          605-484-6109 (cell)

David Pourier, **Vice Chair**
HC 49 PO Box 110
Porcupine, SD. 57772
Phone: 605-455-2837 (home)
          605-685-5454 (cell)

Melvin Cummings, **Treasurer**
PO Box 109
Manderson, SD. 57756
Phone: 605-867-5094

Tanya Fiddler, **Secretary**
PO Box 726
Eagle Butte, SD. 57625
Phone: 605-964-3687 (home)
     605-365-6676 (cell)

Tawney Brunsch
Po Box 522
Kyle, SD. 57752
Phone: 605-455-2500 (work)

Tom MCann
Po Box 5054
Pine Ridge,
SD. 57770
Phone: 605-867-2282

Mazaska Complaint Exhibit 1
034

Mazaska Complaint Exhibit 1
035

Secretary of State Office
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

*2010*

# ANNUAL REPORT
## DOMESTIC NONPROFIT
### Please Type or Print Clearly in Ink

**FILING FEE: $10** Make check payable to SECRETARY OF STATE

FILE DATE _10/12/10_
RECEIPT NO _2074994_

## RECEIVED
### OCT 1 2 2010
### S.D. SEC. OF STATE

311 2008

1. Corporate ID and Name:

NS012594

Mazaska Owecaso Otipi Financial, Inc.
PO Box 1996
Pine Ridge, SD 57770

| Telephone # | (605) 867-1018 |
|---|---|
| FAX # | (605) 867-1002 |

FILING DATE: Due during the month the Certificate of Incorporation was issued, and delinquent after the last day of the following month.

2. The jurisdiction under whose law it is formed ___South Dakota___

3. The address of the principal executive office in or out of the State of South Dakota.

| PO Box 1996 | Pine Ridge | SD | 57770 |
|---|---|---|---|
| Street Address | City | State | ZIP+4 |
| | | | |
| Mailing Address (Optional) | City | State | ZIP+4 |

4. The name of the South Dakota Registered Agent ___Melvin Cummings___

| PO Box 1996 | Pine Ridge | SD | 57770 |
|---|---|---|---|
| Street Address (Required to be a South Dakota Address) | City | State | ZIP+4 |
| | | | |
| Mailing Address (Optional – Required to be a South Dakota Address) | City | State | ZIP+4 |

5. The names and business addresses of its principal officers and directors. Please place a check mark next to the name if the principal officer serves as a director. South Dakota Law requires at least three directors.

| | Name | Street Address | City | State | ZIP+4 |
|---|---|---|---|---|---|
| ✓ | Mike Her Many Horses | Box 92 | Wounded Knee | SD | 57794 |
| | President | | | | |
| ✓ | Tanya Fiddler | PO Box 726 | Eagle Butte | SD | 57625 |
| | Vice President | | | | |
| ✓ | Tawney Brunsch | Box 522 | Kyle | SD | 57752 |
| | Secretary | | | | |
| ✓ | David Pourier | PO Box 110 | Porcupine | SD | 57756 |
| | Treasurer | | | | |
| ✓ | Melvin Cummings | PO Box 109 | Manderson | SD | 57756 |
| | Director | | | | |
| ☐ | | | | | |
| | Director | | | | |
| ☐ | | | | | |
| | Director | | | | |

No person may execute this report knowing it is false in any material respect. Any violation is subject to a civil penalty.

Dated ▓▓▓▓▓▓ _____

_Michael Her Many Horses_
(Signature of an Authorized Person)

Michael Her Many Horses
(Printed Name)

Mazaska Complaint Exhibit 1
036

Mazaska Complaint Exhibit 1
037

311 2009

Secretary of State Office
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

## STATEMENT OF CHANGE OF REGISTERED
## OFFICE OR REGISTERED AGENT OR BOTH

Please Type or Print Clearly in Ink
**Please submit one Original and one Photocopy**

**FILING FEE: $10** Make check payable to SECRETARY OF STATE

FILE DATE _____
RECEIPT NO _____

**RECEIVED**

**OCT 1 2 2010**

**S.D. SEC. OF STATE**

1. Corporate ID and Name:

   NS012594

   Mazaska Owecaso Otipi Financial, Inc.
   PO Box 1996
   Pine Ridge, SD 57770

Telephone # (605) 867-1018
FAX # (605) 867-1002

2. The name of the registered agent on file  Melvin Cummings _____

   The name of the successor registered agent  _____

3. If listing a Commercial Registered Agent, please state their identification number  _____

4. The address of the agent currently on file for this entity

| PO Box 3001 | Pine Ridge | SD | 57770 |
|---|---|---|---|
| Street Address (Required) | City | State | ZIP+4 |
| | | | |
| Mailing Address (Optional) | City | State | ZIP+4 |

5. If the address has changed, its new address

| PO Box 1996 | Pine Ridge | SD | 57770 |
|---|---|---|---|
| Street Address (Required to be a South Dakota Address) | City | State | ZIP+4 |
| | | | |
| Mailing Address (Optional – Required to be a South Dakota Address) | City | State | ZIP+4 |

6. The address of its registered office and the address of the business office of its registered agent, as changed, must be identical.

The undersigned entity submits the following statement for purpose of changing its registered office and/or its registered agent in the State of South Dakota.

No person may execute this report knowing it is false in any material respect. Any violation is subject to a civil penalty.

Dated _____    _____

_____
(Signature of an Authorized Person)

Michael Her Many Horses
(Printed Name)

statementofchangeentity July 2010

Mazaska Complaint Exhibit 1
038

Mazaska Complaint Exhibit 1
039

324 3269 08/26/2011

| 2011 |
Enter Filing Year

**Secretary of State Office**
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

# ANNUAL REPORT
## DOMESTIC NONPROFIT

*Please Type or Print Clearly in Ink*

**FILING FEE: $10** Make check payable to SECRETARY OF STATE

FILE DATE 8/25/11
RECEIPT NO 2180359

**RECEIVED**

AUG 2 5 2011

S.D. SEC. OF STATE

1. Corporate Name, Registered Agent Name and Address:

NSO12594  July 2011
Mazaska Owecaso Otipi Financial INC.
Cummings, Melvin
PO Box 1996
Pine Ridge, SD. 57770-1996

Telephone # 605-867-1018

2. The jurisdiction under whose law it is formed      **South Dakota**

3. The address of the principal executive office (business address).

| PO Box 1996 | | Pine Ridge | SD | 57770 |
|---|---|---|---|---|
| Street Address | | City | State | ZIP+4 |
| | | | | |
| Mailing Address | | City | State | ZIP+4 |
| | | | | |
| Email Address | | | | |

4. The name of the South Dakota Registered Agent    Melvin Cummings

| Pine Ridge | | Pine Ridge | SD | 57770 |
|---|---|---|---|---|
| Street Address or Rural Route Box Number in This State and | | City | State | ZIP+4 |
| | | | | |
| Mailing Address in This State, if Different from Street Address | | City | State | ZIP+4 |
| | | | | |
| Email Address | | | | |

5. The names and addresses of its principal officers and directors.  Please place a check mark next to the name if the principal officer serves as a director.  South Dakota Law requires at least three directors.

| ✓ | Mike Her Many Horses | PO Box 92 | Wounded Knee | SD | 57794 |
|---|---|---|---|---|---|
| | President | Street Address | City | State | ZIP+4 |
| ✓ | Tanya Fiddler | PO Box 726 | Eagle Butte | SD | 57625 |
| | Vice President | Street Address | City | State | ZIP+4 |
| ✓ | Tawney Brunsch | PO Box 522 | Kyle | SD | 57752 |
| | Secretary | Street Address | City | State | ZIP+4 |
| ✓ | David Pourier | PO Box 110 | Porcupine | SD | 57758 |
| | Treasurer | Street Address | City | State | ZIP+4 |
| ✓ | Melvin Cummings | PO Box 109 | Manderson | SD | 57756 |
| | Director | Street Address | City | State | ZIP+4 |
| ☐ | | | | | |
| | Director | Street Address | City | State | ZIP+4 |
| ☐ | | | | | |
| | Director | Street Address | City | State | ZIP+4 |

No person may execute this report knowing it is false in any material respect.  Any violation is subject to a civil penalty.

Dated  Jul 11, 2011

*Michael Her Many Horses*
(Signature of an Authorized Person)

Michael Her Many Horses
(Printed Name)

Email

Mazaska Complaint Exhibit 1
annualreportdomesticnonprofit February 2011
040

Mazaska Complaint Exhibit 1
041

| 2012 | Enter Filing Year |
|---|---|

**Secretary of State Office**
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

### ANNUAL REPORT

### DOMESTIC NONPROFIT
Please Type or Print Clearly In Ink

**FILING FEE:** $10.00   Make check payable to SECRETARY OF STATE

| FILE | 8/21/2012 |
|---|---|
| RECEIPT NO | 59129 |

1. Corporate Name and Address:
NS012594
MAZASKA OWECASO OTIPI FINANCIAL, INC.
108 OGLALA STREET
PINE RIDGE, SD 57770-1996

2. The jurisdiction under whose law it is formed      SOUTH DAKOTA

3. The address of the principal executive office (business address).

| 108 OGLALA STREET | PINE RIDGE | SD | 57770-1996 |
|---|---|---|---|
| Street Address | City | State | ZIP+4 |
| PO BOX 1996 | PINE RIDGE | SD | 57770-1996 |
| Mailing Address | City | State | ZIP+4 |

4. The name of the South Dakota Registered Agent

Agent Name:      MELVIN CUMMINGS

| PO BOX 1996 | PINE RIDGE | SD | 57770-1996 |
|---|---|---|---|
| Street Address or Rural Route Box Number in This State and | City | State | ZIP+4 |
| Mailing Address in This State, if Different from Street Address | City | State | ZIP+4 |

5. The names and business addresses of its principal officers and directors.  Please place a check mark next to the name if the principal officer serves as a director.  South Dakota Law requires at least three director.

| | | | | | |
|---|---|---|---|---|---|
| X | MIKE HER MANY HORSES | PO BOX 92 | WOUNDED KNEE | SD | 57794 |
| | President | Street Address | City | State | ZIP+4 |
| X | TANYA FIDDLER | PO BOX 726 | EAGLE BUTTE | SD | 57625 |
| | Vice President | Street Address | City | State | ZIP+4 |
| X | TAWNEY BRUNSCH | PO BOX 522 | KYLE | SD | 57752 |
| | Secretary | Street Address | City | State | ZIP+4 |
| X | DAVID POURIER | PO BOX 110 | PORCUPINE | SD | 57758 |
| | Treasurer | Street Address | City | State | ZIP+4 |
| X | MELVIN CUMMINGS | PO BOX 109 | MANDERSON | SD | 57756 |
| | Director | Street Address | City | State | ZIP+4 |
| | | | | | |
| | Director | Street Address | City | State | ZIP+4 |
| | | | | | |
| | Director | Street Address | City | State | ZIP+4 |

No person may execute this report knowing it is false in any material aspect.  Any violation is subject to a civil penalty.
By signing this form you agree to have both the fee and the form processed electronically.

| Date | 08/21/2012 |
|---|---|

Signature Accepted Electronically
_____
(Signature of an Authorized Person)
COLLEEN STEELE
_____
(Printed Name)

8/21/2012 1:33:37 PM

Mazaska Complaint Exhibit 1
042

| 2013 | Enter Filing Year |
|---|---|

**Secretary of State Office**
**500 E Capitol Ave**
**Pierre, SD 57501**
**(605)773-4845**

## STATEMENT OF CHANGE OF REGISTERED
## OFFICE OR REGISTERED AGENT OR BOTH
### DOMESTIC NONPROFIT
**Please Type or Print Clearly In Ink**

**FILING FEE: $10.00**  Make check payable to SECRETARY OF STATE

| FILE | 6/7/2013 |
|---|---|
| RECEIPT NO | 121430 |

1. Corporate Name and Address:
   NS012594
   MAZASKA OWECASO OTIPI FINANCIAL, INC.
   108 OGLALA STREET
   PINE RIDGE, SD 57770-1996

2. The jurisdiction under whose law it is formed    SOUTH DAKOTA

3. The address of the agent currently on file for this entity.

Agent Name:        MELVIN CUMMINGS

| PO BOX 1996 | PINE RIDGE | SD | 57770-1996 |
|---|---|---|---|
| Street Address or Rural Route Box Number in This State and | City | State | ZIP+4 |
| | City | State | ZIP+4 |
| Mailing Address in This State, if Different from Street Address | | | |

4. If the address has changed, its new address.

New Agent Name:    TAWNEY  BRUNSCH

| 108 OGLALA STREET | PINE RIDGE | SD | 57770-199 |
|---|---|---|---|
| Street Address or Rural Route Box Number in This State and | City | State  SD | ZIP+4 |
| | City | State | ZIP+4 |
| Mailing Address in This State, if Different from Street Address | | | |

No person may execute this report knowing it is false in any material aspect.  Any violation is subject to a civil penalty.
By signing this form you agree to have both the fee and the form processed electronically.

Date    06/07/2013

Signature Accepted Electronically

(Signature of an Authorized Person)

COLLEEN J STEELE

(Printed Name)

6/7/2013 11:13:39 AM

Mazaska Complaint Exhibit 1
043

| 2013 | Enter Filing Year |
|---|---|

**ANNUAL REPORT**

Secretary of State Office
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

**DOMESTIC NONPROFIT**
Please Type or Print Clearly In Ink

**FILING FEE:** $10.00  Make check payable to SECRETARY OF STATE

| FILE | 6/7/2013 |
|---|---|
| RECEIPT NO | 121430 |

1. Corporate Name and Address:
NS012594
MAZASKA OWECASO OTIPI FINANCIAL, INC.
108 OGLALA STREET
PINE RIDGE, SD 57770-1996

2. The jurisdiction under whose law it is formed      SOUTH DAKOTA

3. The address of the principal executive office (business address).

| 108 OGLALA STREET | PINE RIDGE | SD | 57770-1996 |
|---|---|---|---|
| Street Address | City | State | ZIP+4 |
| | | | |
| Mailing Address | City | State | ZIP+4 |

4. The name of the South Dakota Registered Agent

Agent Name:      TAWNEY  BRUNSCH

| 108 OGLALA STREET | PINE RIDGE | SD | 57770-199 |
|---|---|---|---|
| Street Address or Rural Route Box Number in This State and | City | State SD | ZIP+4 |
| Mailing Address in This State, if Different from Street Address | City | State | ZIP+4 |

5. The names and business addresses of its principal officers and directors. Please place a check mark next to the name if the principal officer serves as a director. South Dakota Law requires at least three director.

| | Name | Street Address | City | State | ZIP+4 |
|---|---|---|---|---|---|
| X | TANYA  FIDDLER | PO BOX726 | EAGLE BUTTE | SD | 57625 |
| | President | Street Address | City | State | ZIP+4 |
| X | TAWNEY BRUNSCH | PO BOX 522 | KYLE | SD | 57752 |
| | Treasurer | Street Address | City | State | ZIP+4 |
| X | KAREN POURIER | HC 49 PO BOX 110 | PORCUPINE | SD | 57772 |
| | Secretary | Street Address | City | State | ZIP+4 |
| X | KADEM FISHER | PO BOX HC 2 BOX 102 APT 2B | KYLE | SD | 57752 |
| | Vice President | Street Address | City | State | ZIP+4 |

No person may execute this report knowing it is false in any material aspect. Any violation is subject to a civil penalty.
By signing this form you agree to have both the fee and the form processed electronically.

| Date | 06/07/2013 |
|---|---|

Signature Accepted Electronically

(Signature of an Authorized Person)

COLLEEN J STEELE

(Printed Name)

6/7/2013 11:13:39 AM

Mazaska Complaint Exhibit 1
044

| 2014 | Enter Filing Year |
|------|-------------------|

Secretary of State Office
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

## STATEMENT OF CHANGE OF REGISTERED OFFICE OR REGISTERED AGENT OR BOTH
### DOMESTIC NONPROFIT
Please Type or Print Clearly In Ink

**FILING FEE: $10.00**    Make check payable to SECRETARY OF STATE

| FILE DATE | 10/24/2014 |
|-----------|------------|
| RECEIPT NO | 241683 |

1. Corporate Name and Address:
   NS012594
   MAZASKA OWECASO OTIPI FINANCIAL, INC.
   108 OGLALA STREET
   PINE RIDGE, SD 57770-1996

2. The jurisdiction under whose law it is formed    SOUTH DAKOTA

3. The address of the agent currently on file for this entity.

Agent Name:    MELVIN CUMMINGS

| PO BOX 1996 | | PINE RIDGE | SD | 57770-1996 |
|-------------|--|------------|----|-----------|
| Street Address or Rural Route Box Number in This State and | | City | State | ZIP+4 |
| | | | | |
| Mailing Address in This State, if Different from Street Address | | City | State | ZIP+4 |

4. If the address has changed, its new address.

New Agent Name:    TAWNEY BRUNSCH

| 108 OGLALA STREET | PINE RIDGE | SD | 57770 |
|-------------------|------------|----|----|
| Street Address or Rural Route Box Number in This State and | City | State | ZIP+4 |
| PO BOX 1996 | PINE RIDGE | SD | 57770 |
| Mailing Address in This State, if Different from Street Address | City | State | ZIP+4 |

No person may execute this report knowing it is false in any material aspect. Any violation is subject to a civil penalty.
By signing this form you agree to have both the fee and the form processed electronically.

Dated   10/24/2014

Signature Accepted Electronically
_____
(Signature of an Authorized Person)
COLLEEN STEELE
_____
(Printed Name)

10/24/2014 4:30:24 PM

| 2014 | Enter Filing Year |
|------|-------------------|

ANNUAL REPORT

Secretary of State Office
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

**DOMESTIC NONPROFIT**
Please Type or Print Clearly In Ink

**FILING FEE: $10.00**  Make check payable to SECRETARY OF STATE

FILE DATE _____10/24/2014_____

RECEIPT NO _241683_____

1. Corporate Name and Address:
   NS012594
   MAZASKA OWECASO OTIPI FINANCIAL, INC.
   108 OGLALA STREET
   PINE RIDGE, SD 57770-1996

2. The jurisdiction under whose law it is formed      SOUTH DAKOTA

3. The address of the principal executive office (business address).

| 108 OGLALA STREET | PINE RIDGE | SD | 57770-1996 |
|-------------------|------------|-----|-----------|
| Street Address | City | State | ZIP+4 |
| PO BOX 1996 | PINE RIDGE | SD | 57770 |
| Mailing Address | City | State | ZIP+4 |

4. The name of the South Dakota Registered Agent

   Agent Name:      TAWNEY  BRUNSCH

| 108 OGLALA STREET | PINE RIDGE | SD | 57770 |
|-------------------|------------|-----|-------|
| Street Address or Rural Route Box Number in This State and | City | State | ZIP+4 |
| PO BOX 1996 | PINE RIDGE | SD | 57770 |
| Mailing Address in This State, if Different from Street Address | City | State | ZIP+4 |

5. The names and business addresses of its principal officers and directors.  Please place a check mark next to the name if the principal officer serves as a director.  South Dakota Law requires at least three director.

| | Name | Street Address | City | State | ZIP+4 |
|---|------|----------------|------|-------|-------|
| X | TANYA  FIDDLER | PO BOX 726 | EAGLE BUTTE | SD | 57625 |
| | President | Street Address | City | State | ZIP+4 |
| X | TAWNEY BRUNSCH | PO BOX 522 | KYLE | SD | 57752 |
| | Treasurer | Street Address | City | State | ZIP+4 |
| X | KAREN  POURIER | HC 49 PO BOX 110 | PORCUPINE | SD | 57772 |
| | Secretary | Street Address | City | State | ZIP+4 |
| X | KADEM  FISHER | PO BOX HC 2 BOX 102 APT 2B | KYLE | SD | 57752 |
| | Vice President | Street Address | City | State | ZIP+4 |
| | Director | Street Address | City | State | ZIP+4 |
| | Director | Street Address | City | State | ZIP+4 |
| | Director | Street Address | City | State | ZIP+4 |

No person may execute this report knowing it is false in any material aspect.  Any violation is subject to a civil penalty.
By signing this form you agree to have both the fee and the form processed electronically.

Dated   _10/24/2014_____

Signature Accepted Electronically
(Signature of an Authorized Person)
COLLEEN  STEELE
(Printed Name)

10/24/2014 4:30:24 PM

Mazaska Complaint Exhibit 1
046

| 2015 | Enter Filing Year |
|---|---|

ANNUAL REPORT

Secretary of State Office
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

**DOMESTIC NONPROFIT**
Please Type or Print Clearly In Ink

**FILING FEE: $10.00**    Make check payable to SECRETARY OF STATE

| FILE DATE | 4/6/2015 |
|---|---|
| RECEIPT NO | 289790 |

1. Corporate Name and Address:
NS012594
MAZASKA OWECASO OTIPI FINANCIAL, INC.
108 OGLALA STREET
PINE RIDGE, SD 57770-1996

2. The jurisdiction under whose law it is formed    SOUTH DAKOTA

3. The address of the principal executive office (business address).

| 108 OGLALA STREET | PINE RIDGE | SD | 57770-1996 |
|---|---|---|---|
| Street Address | City | State | ZIP+4 |
| PO BOX 1996 | PINE RIDGE | SD | 57770 |
| Mailing Address | City | State | ZIP+4 |

4. The name of the South Dakota Registered Agent

Agent Name:    TAWNEY  BRUNSCH

| 108 OGLALA STREET | PINE RIDGE | SD | 57770 |
|---|---|---|---|
| Street Address or Rural Route Box Number in This State and | City | State | ZIP+4 |
| PO BOX 1996 | PINE RIDGE | SD | 57770 |
| Mailing Address in This State, if Different from Street Address | City | State | ZIP+4 |

5. The names and business addresses of its principal officers and directors.  Please place a check mark next to the name if the principal officer serves as a director.  South Dakota Law requires at least three director.

| | | | | | |
|---|---|---|---|---|---|
| X  TANYA  FIDDLER | PO BOX 726 | EAGLE BUTTE | SD | 57625 | |
| President | Street Address | City | State | ZIP+4 | |
| X  TAWNEY BRUNSCH | PO BOX 522 | KYLE | SD | 57752 | |
| Treasurer | Street Address | City | State | ZIP+4 | |
| X  KAREN  POURIER | HC 49 PO BOX 110 | PORCUPINE | SD | 57772 | |
| Secretary | Street Address | City | State | ZIP+4 | |
| X  KADEM  FISHER | PO BOX HC 2 BOX 102 APT 2B | KYLE | SD | 57752 | |
| Vice President | Street Address | City | State | ZIP+4 | |
| | | | | | |
| Director | Street Address | City | State | ZIP+4 | |
| | | | | | |
| Director | Street Address | City | State | ZIP+4 | |
| X  IRVING  PROVOST SR | PO BOX 326 | PINE RIDGE | SD | 57770 | |
| Director | Street Address | City | State | ZIP+4 | |

No person may execute this report knowing it is false in any material aspect.  Any violation is subject to a civil penalty.
By signing this form you agree to have both the fee and the form processed electronically.

Dated  04/06/2015

Signature Accepted Electronically

(Signature of an Authorized Person)

COLLEEN J STEELE

(Printed Name)

4/6/2015 12:22:36 PM

Mazaska Complaint Exhibit 1
047

| 2016 | | ANNUAL REPORT | | FILE DATE | 6/6/2016 |
|---|---|---|---|---|---|

**Enter Filing Year**

Secretary of State Office
500 E Capitol Ave
Pierre, SD 57501
(605)773-4845

## ANNUAL REPORT
### DOMESTIC NONPROFIT CORPORATIONS
#### SDCL 47-24-6; 59-11-24

**Please Type or Print Clearly In Ink**

**FILING FEE: $10.00** Make check payable to SECRETARY OF STATE

FILE DATE     6/6/2016

RECEIPT NO   423203

1. Corporate ID and Name:

NS012594

Enter Corporate ID

MAZASKA OWECASO OTIPI FINANCIAL, INC.

Enter Corporate Name

2. The jurisdiction under whose law it is formed     SOUTH DAKOTA

3. The address of the principal executive office (business address).

| 108 OGLALA STREET | PINE RIDGE | SD | 57770-1996 |
|---|---|---|---|
| Actual Street Address or Rural Route Box Number | City | State | ZIP+4 |
| PO BOX 1996 | PINE RIDGE | SD | 57770 |
| Mailing Address, if Different from Street Address | City | State | ZIP+4 |

4. The name of the South Dakota Registered Agent

Agent Name:     TAWNEY BRUNSCH

| 108 OGLALA STREET | PINE RIDGE | SD | 57770 |
|---|---|---|---|
| Actual Street Address or Rural Route Box Number in This State | City | State | ZIP+4 |
| PO BOX 1996 | PINE RIDGE | SD | 57770 |
| Mailing Address in This State, if Different from Street Address | City | State | ZIP+4 |

5. The names and addresses of its principal officers and directors (governors). South Dakota Law requires at least three directors.

| X | TANYA FIDDLER | PO BOX 726 | EAGLE BUTTE | SD | 57625 |
|---|---|---|---|---|---|
| | President | Actual Street Address | City | State | ZIP+4 |

| X | TAWNEY BRUNSCH | PO BOX 522 | KYLE | SD | 57752 |
|---|---|---|---|---|---|
| | Treasurer | Actual Street Address | City | State | ZIP+4 |

| X | KAREN POURIER | HC 49 PO BOX 110 | PORCUPINE | SD | 57772 |
|---|---|---|---|---|---|
| | Secretary | Actual Street Address | City | State | ZIP+4 |

| X | KADEM FISHER | PO BOX HC 2 BOX 102 APT 2B | KYLE | SD | 57752 |
|---|---|---|---|---|---|
| | Vice President | Actual Street Address | City | State | ZIP+4 |

| | | | | | |
|---|---|---|---|---|---|
| | Director | Actual Street Address | City | State | ZIP+4 |

Mazaska Complaint Exhibit 1
048

| Director | Actual Street Address | City | State | ZIP+4 |
|---|---|---|---|---|
| ☒ IRVING  PROVOST SR | PO BOX 326 | PINE RIDGE | SD | 57770 |
| Director | Actual Street Address | City | State | ZIP+4 |

No person may execute this report knowing it is false in any material aspect.  Any violation is subject to a civil penalty (SDCL 47-1A-129).

Dated   06/06/2016

Signature Accepted Electronically

(Signature of an Authorized Person)

COLLEEN  J STEELE

(Printed Name)

*By signing this form you agree to have both the fee and the form processed electronically.
A fee of up to $40 will be assessed for returned payments.

6/6/2016 1:15:47 PM

Mazaska Complaint Exhibit 1
049

BE-AR

531234717

531234717

# ANNUAL REPORT

## Domestic Nonprofit Corporation
### SDCL 47-24-6, 59-11-24

Secretary of State
500 E. Capitol Ave
Pierre, SD 57501-5070
(605) 773-4845

**2021**
FII INA YFAR

**Please Type or Print Clearly in Ink**
**Please submit one Original**
**Make payable to the SECRETARY OF STATE**

Filing Fee: $10

Total Fee: $10

REC 1-1818  05/17/2021  12:36PM Rec'd by SD SOS

1. Business ID and Name:

   NS012594
   BUSINESS ID

   MAZASKA OWECASO OTIPI FINANCIAL, INC.
   BUSINESS NAME

2. The jurisdiction under whose law it is formed SOUTH DAKOTA

3. The address of the principal executive office (business address):

   Actual Street Address

   108 OGLALA STREET
   PINE RIDGE, SD 57770-1996

   Mailing Address

   PO BOX 1996
   PINE RIDGE, SD 57770

4. The South Dakota Registered Agent's Name:

   South Dakota law permits the registered agent to be either (a) a noncommercial registered agent, (b) a commercial registered agent, or (c) an office holder.

   (a) The South Dakota Noncommercial Registered Agent's name

   Name TAWNEY BRU NSCH

   Actual Street Address in this State

   108 OGLALA STREET
   PINE RIDGE, SD 57770

   Mailing Address in this State

   PO BOX 1996
   PINE RIDGE, SD 57770

5. The names and addresses of its principal officers.

| Title | Name | Address |
|---|---|---|
| Secretary | Irving Provost Sr | PO Box 326, Pine Ridge, SD 57770 |
| Vice President | Kadem Fisher | 617 Tanglewood Lane, Box Elder, SD 57719 |
| Treasurer | TAWNEY BRUNSCH | PO BOX 522, KYLE, SD, 57752 |
| President | TANYA FIDDLER | PO BOX 199, Hermosa, SD 57744 |

6. The names and addresses of its directors (governors).

| Name | Address |
|---|---|
| Kadem Fisher | PO Box 956 Sisseton, SD 57262 |
| Tanya Fiddler | 202 East Nowlin Street, Rapid City SD 57701 |
| Tawney Brunsch | PO Box 522, Kyle, SD 57752 |
| Karen Pourier | HC 49, PO Box 110, Porcupine, SD 57772 |
| Irving Provost Sr | PO Box 326, Pine Ridge, SD, 57770 |

Page 1 of 2

EXHIBIT 2

Mazaska Complaint Exhibit 1
050



7.  Beneficial Owners (optional): A beneficial owner is a person who has or in some manner controls an equity security. Please consult an attorney for legal advice if you have any questions concerning this entry. Any question under this heading is considered a request for legal advice and the secretary of state's office is, by statute, not permitted, to provide legal advice.

No person may execute this report knowing it is false in any material respect.  Any violation may be subject to a civil and/or criminal penalty (SDCL 47-1A-129; 22-39-36).

05/17/2021
_____
Dated

_____
Email (Optional)

*Colleen Steele*
_____
Signature of an Authorized Person

**Colleen Steele**
_____
Printed Name

Mazaska Complaint Exhibit 1
051

B0181-1819 05/17/2021 12:36PM Rec'd by SD SOS

# MORTGAGE
# ONE HUNDRED EIGHTY DAY REDEMPTION

**THIS MORTGAGE** (''Security Instrument") is given on <u>April 19, 2011</u>. The mortgagee (that is, the Borrower):

a)      Is, <u>Lillian  A. Montileaux</u>            or          COPY
b)      are <u>N/A  </u>
c)      and <u>N/A  </u>

("Borrower") This Mortgage is a Security Instrument given to MAZASKA OWECASO OTIPI FINANCIAL, INC., which is organized and existing under the laws of THE STATE OF SOUTH DAKOTA, and whose address is P?O. BOX 1996, PINE RIDGE, SOUTH DAKOTA, 57770 ("Lender").

Borrower owes Lender the principal sum of <u>Sixty Six Thousand-Three Hundred Seventy Dollars and Twenty Five Cents</u> (U.S. <u>$66,370.25</u>). This debt is evidenced by Borrower's note ("Note") dated the same date as this Security Instrument, which provides for monthly payment, with the full debt, if not paid earlier, due and payable on May 10, 2016.

This Security Instrument secures to Lender: <u>Mazaska Owecaso Otipi Financial. Inc</u>

(a)      the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;
(b)      the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and [none]
(c)      the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose. Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in Shannon County, South Dakota, which has the address of: NWl/4SWl/4NEl/4NEl/4,S18-39-41,Shannon County, South Dakota (Property address) 10 acres.

THIS IS A PURCHASE MONEY SECURITY INSTRUMENT
TAX STATEMENTS SHOULD BE SENT TO:

MAZASKA OWECASO OTIPI FINANCIAL, INC, PO BOX 1996
PINE RIDGE, SOUTH DAKOTA, 57770,

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

EXHIBIT 3

Page 1 of 10

Mazaska Complaint Exhibit 1
052

## UNIFORM COVENANTS

**BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:**

1.     **Payment of Principal and Interest; Prepayment and Late Charges**. Borrower shall promptly pay when due the principal of, and interest, on the debt evidenced by the Note and any prepayment and late charges due under the Note. There are no prepayment penalties on this Note.

2.     **Funds for Taxes and Insurance**. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for:

| | |
|---|---|
| (a) | yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, if any; |
| (b) | yearly leasehold payments or ground rents on the Property, if any; |
| (c) | yearly hazard or property insurance premiums; |
| (d) | yearly flood insurance premiums, if any; |
| (e) | yearly mortgage insurance premiums, if any; and |
| (f) | any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. |

These items are called "Escrow items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Page 2 of 10

Mazaska Complaint Exhibit 1
053

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied:

FIRST: to amounts payable under paragraph 2;
SECOND: to interest due;
THIRD: to principal due;
LAST: to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property, which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

(a)      agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender;
(b)      contests in good faith the lien by, or defends against, enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or
(c)      secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

If Lender determines that any part of the Property is subject to a lien that may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval, which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and

Page 3 of 10

Mazaska Complaint Exhibit 1
054

Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provision of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the property. Lender's actions may include paying any sums secured by a lien, which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Mazaska Complaint Exhibit 1
055

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternative mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or in accordance with applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction:

(a)     the total amount of the sums secured immediately before the taking, divided by
(b)     the fair market value of the Property immediately before the taking.

Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemner offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

Page 5 of 10

Mazaska Complaint Exhibit 1
056

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceeding against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:

(a)      is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument;

(b)      is not personally obligated to pay the sums secured by this Security Instrument; and

(c)      agrees that Lender and any other Borrowers may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then:

(a)      any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and

(b)      any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower.

Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law, and tribal law, and the law of the state in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Page 6 of 10

Mazaska Complaint Exhibit 1
057

**17.  Transfer of the Property or a Beneficial Interest in Borrower**. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrowers fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument or applicable laws without further notice or demand on Borrower.

**18.  Borrower's Right to Reinstate**. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:

(a)  5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or

(b)  entry of a judgment enforcing this Security Instrument.

Those conditions are that Borrower:

(a)  pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;

(b)  cures any default of any other covenants or agreements;

(c)  pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' and legal fees; and

(d)  takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.

Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19.  Sale of Note; Change of Loan Servicer**. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The note will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20.  Hazardous Substances**. Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Page 7 of 10

Mazaska Complaint Exhibit 1
058

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS

### BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**21.  Acceleration; Remedies**. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify:

(a)      the default;

(b)      the action required to cure the default;

(c)      a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and

(d)      that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' and legal fees and costs, including costs of title evidence.

In case of foreclosure of this Mortgage by action, the holder of the Certificate of Sale may apply to the Court for a reduction of the redemption period if the property has been abandoned by Mortgagor. If, after notice to the parties as the Court directs, the Court finds the property has been abandoned, the redemption period may be reduced by the Court to not less than sixty days from the date of recording the Certificate of Sale.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender shall sell the Property in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order:

Mazaska Complaint Exhibit 1
059

(a)     to all expenses of the sale, including, but not limited to, reasonable attorneys' and legal fees;

(b)     to all sums secured by this Security Instrument; and

(c)     any excess to the clerk of the court subject to the order of the court.

## NOTICE

**THE PARTIES AGREE THAT THE PROVISIONS OF THE STATE OF SOUTH DAKOTA'S ONE HUNDRED EIGHTY DAY REDEMPTION MORTGAGE ACT GOVERN THIS MORTGAGE**

**22.  Releases.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.  Borrower shall pay any recordation costs.

**23.  Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**24.  Area of the Property.** The Property is forty (40) acres or less in area.

**25.  Rider to this Security Instrument.** If one or more riders are executed by Borrowers and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| X Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

**26.  Deficiency Judgment.** Borrower agrees to pay to Lender, in the event of foreclosure of this Mortgage, the difference between the net proceeds of foreclosure and sale and the total sums secured by this Mortgage, if the net proceeds of sale and foreclosure are less than the total sums then due and outstanding and secured by this Mortgage, and only if the Lender is the successful purchaser at such sale.

**27.  Misrepresentation.** The Borrower understands that the sums secured by the Mortgage are derived from funding pursuant to the U. S. Department of Treasury Community Development Financial Institutions Fund and Regulations pertaining thereto. To induce the Lender to advance these sums, the Borrower has made several representations all as set forth in the Borrower's Mortgagor's Affidavit to even date herewith. If any of these representations are ascertained to be not true, the Lender may at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration. Such notice shall provide a period of not less than 30 days from the date of the notice is mailed within which Borrower may pay the sums declared due.  If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by law.  If Lender waives the right to accelerate hereunder, such a waiver shall not constitute a waiver of the right to rescind, or any other remedy available to Lender.

Mazaska Complaint Exhibit 1
060

**28. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. This assignment of rents shall be effective until the payment of all sums secured by this Mortgage or, in the event of foreclosure, until the period of redemption expires. Regardless of extinguishment of the debt by a foreclosure sale, this assignment shall continue for the benefit of the purchaser at such sale.

Upon acceleration under paragraph 17 hereof accompanied by abandonment of the Property, Lender, in person, by agent, or by its appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Upon such acceleration not accompanied by abandonment, Lender shall be entitled, upon commencement of action for foreclosure or at any time prior to the expiration of any period of redemption following judicial sale, to have a receiver appointed by the Court, which receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receivers' fees, premiums on receiver's bonds and reasonable attorneys' and legal fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only of those or rents actually received.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with the Security Instrument.

_Lillian A McMontileaux_                                              _May 11 2011_

Lillian A Montileaux                           Borrower                   Date

_Colleen Steele_                                                 _May 11, 2011_

Mazaska Owecaso Otipi Financial, Inc.         Lender                   Date

STATE OF SOUTH DAKOTA

                               SS.

COUNTY OF __Shannon____

On this the __11th__ day of __May____, 2011, before me, the undersigned officer, personally appeared_____ on behalf of _____, known to be or satisfactorily proven to be the person(s) whose name is/are subscribed to the within instrument and acknowledged that he/she/they are authorized to do so, and executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Bernadine Blue Bird_

Notary Public

My Commission Expires: __03-20-2013__

[Notary seal: BERNADINE BLUE BIRD / (SEAL) NOTARY / SEAL / PUBLIC / STATE OF SOUTH DAKOTA]

Mazaska Complaint Exhibit 1
061

# NOTE

Date: April 19, 2011

Borrower:          Lillian A. Montileaux

Lender:            Mazaska Owecaso Otipi Financial, Inc.

Property Address:  NW1/4, SW1/4, NE1/4, NE1/4 of Section 18, Township 39 N., Range 41
                   W. Shannon County, SD, 10 Acres.

...........................…………………………….....................………………….....................

## 1. BORROWER'S PROMISE TO PAY
In return for a loan by Lender to Borrower, Borrower promises to pay U.S. $66,370.25 (this
amount will be called "principal"), plus interest, to the order of the Lender. Lender is Mazaska
Owecaso Otipi Financial, Inc. Borrower understands that Lender may transfer this Note. Lender
and anyone who takes this Note by transfer and who is entitled to receive payments under this
Note is called "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid.
Borrower will pay interest at a yearly rate of 7.50%.

## 3. PAYMENTS
Borrower will pay principal and interest by making payments each month of U.S. $553.60. This
includes a monthly insurance escrow amount of $90.33. Borrower will make such payments on
the 10th day of each month beginning on May 10, 2011. Borrower will make these payments
every month until all of the principal and interest and any other charges, described below, that
Borrower may owe under this Note are paid. Borrower's monthly payments will be applied to
interest before principal. If, on May 10, 2016,  Borrower still owes amounts under this Note,
Borrower will pay all those amounts, in full, on that date, which is called the "maturity date."

Borrower will make such monthly payments at Mazaska Owecaso Otipi Financial, Inc. PO Box
1996, Pine Ridge, SD 57770 or at a different place if required in writing by Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments
If Note Holder has not received the full amount of any monthly payment by the end of fifteen
(15) calendar days after the date it is due, Borrower will pay a late charge to Note Holder. The
amount of the charge will be $25.00 Borrower will pay this late charge promptly, but only once
on any late payment.

**Mazaska Complaint Exhibit 1**
**062**

**(B) Default**
If Borrower does not pay the full amount of each monthly payment on the date it is due, Borrower will be in default.

**(C) Notice of Default**
If Borrower is in default, Note Holder may send Borrower notice as provided in Section 8 below telling Borrower that if Borrower does not pay the overdue amount by a certain date, Note Holder may require Borrower to pay immediately the full amount of principal which has not been paid and all the interest that Borrower owes on that amount. That date must be at least 60 days after the date on which the notice is delivered to Borrower.

**(D) No Waiver by Note Holder**
Even if, at a time when Borrower is in default, Note Holder does not require Borrower to pay immediately in full as described above, Note Holder will still have the right to do so if Borrower is in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If Note Holder has required Borrower to pay immediately in full as described above, Note Holder will have the right to be paid back by Borrower for all of its reasonable costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5. THIS NOTE SECURED BY A LEASEHOLD MORTGAGE
In addition to the protections given to Note Holder under this Note, a Leasehold Mortgage of even date herewith protects Note Holder from possible losses that might result if Borrower does not keep the promises made in this Note. That Mortgage describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts that Borrower owes under this Note.

## 6. BORROWER'S RIGHT TO PREPAY
Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When Borrower makes a prepayment, Borrower will tell Note Holder in writing that Borrower is doing so. A prepayment of all unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." Borrower may make a full prepayment or a partial prepayment without any penalty. Note Holder will use all of Borrower's prepayments to reduce the amount of principal that Borrower owes under this Note. If Borrower makes a partial prepayment, there will be no changes in the due dates or changes in the amounts of Borrower's monthly payment unless Note Holder agrees in writing to those changes. Borrower may make a full prepayment at any time. If Borrower chooses to make a partial prepayment, Note Holder may require Borrower to make the prepayment on the same day that one of the monthly payments is due.

## 7. WAIVERS
Borrower waives his or her rights to require Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"). Anyone else who agrees to

**Mazaska Complaint Exhibit 1
063**

keep the promises made in this Note, or who agrees to make payments to Note Holder if Borrower fails to keep his or her promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons may include "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice to Borrower in connection with this Note shall be deemed to have been given to Borrower upon delivering a copy of the notice directly to the Borrower or on the third day after the notice is mailed to Borrower by first class mail, unless the third day is a Saturday, Sunday, or legal holiday, in which case notice shall be deemed to have been given on the next day which is not a Saturday, Sunday or legal holiday as legal holiday is defined in the Federal Rules of Civil Procedure. If any other notice is required under the law governing this Note, the requirements of such governing law concerning notice shall also be complied with. Any notice to Note Holder shall be deemed to have been given to Lender by mailing it by first class mail to Note Holder's address designated herein.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over Borrower's rights or obligations under this Note will have all of Borrower's rights and must keep all of Borrower's promises made in this Note. Note Holder may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of such persons may be required to pay all of the amounts owed under this Note.

## 10. GOVERNING LAW; SEVERABILITY

This Note shall be governed by the law of the Tribe upon which the leasehold interest in the land is located and applicable federal law. The courts of the Tribe shall have sole and exclusive jurisdiction with respect to all controversies or claims relating to or arising out of this Note. In the event that any provision or clause of this Note conflicts with applicable law, such conflict shall not affect other provisions of this Note which can be given effect without the conflicting provision. To this end, the provisions of this Note are declared to be severable.

## 11. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit: and (ii) any sums already collected from Borrower which exceeded permitted time limits will be refunded to Borrower. Note Holder may choose to make this refund by reducing the principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

Mazaska Complaint Exhibit 1
064

Borrower: Lillian A. Monitleaux

Date May 11, 2011

Colleen Steele, Executive Director
Lender: Mazaska Owecaso Otipi Financial, Inc.

Date May, 11, 2011

Mazaska Complaint Exhibit 1
065

# MORTGAGE
## ONE HUNDRED EIGHTY DAY REDEMPTION

**THIS MORTGAGE** ("Security Instrument") is given on <u>July 7, 2010</u>.  The mortgagee (that is, the Borrower):

a)      Is, <u>Lillian A. Montileaux</u>         or

b)      are  <u>N/A</u>

c)      and  <u>N/A</u>

COPY

("Borrower")   This Mortgage is a Security Instrument given to MAZASKA OWECASO OTIPI FINANCIAL, INC., which is organized and existing under the laws of THE STATE OF SOUTH DAKOTA, and whose address is P.O. BOX 1996, PINE RIDGE, SOUTH DAKOTA, 57770 ("Lender").

Borrower owes Lender the principal sum of <u>Fifty One Thousand Six Hundred thirty four  dollars and no /cents</u> (U.S. $<u>51,634.00</u>). This debt is evidenced by Borrower's note ("Note") dated the same date as this Security Instrument, which provides for monthly payment, with the full debt, if not paid earlier, due and payable on July 7, 2021.

This Security Instrument secures to Lender: <u>Mazaska Owecaso Otipi Financial, Inc</u>

(a)          the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;

(b)          the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and [none]

(c)          the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in Shannon County, South Dakota, which has the address of:  NW1/4SW1/4NE1/4NE1/4,S18-39-41,Shannon County, South Dakota (Property address), 2.5 acres.

### THIS IS A PURCHASE MONEY SECURITY INSTRUMENT
### TAX STATEMENTS SHOULD BE SENT TO:

MAZASKA OWECASO OTIPI FINANCIAL, INC, PO BOX 1996
PINE RIDGE, SOUTH DAKOTA, 57770,

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Mazaska Owecaso Otipi Financial, Inc.                                                       Page 1 of 11

**Mazaska Complaint Exhibit 1
066**

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

## UNIFORM COVENANTS

### BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

1.  **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of, and interest, on the debt evidenced by the Note and any prepayment and late charges due under the Note. There are no prepayment penalties on this Note.

2.  **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for:

(a)     yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, if any;
(b)     yearly leasehold payments or ground rents on the Property, if any;
(c)     yearly hazard or property insurance premiums;
(d)     yearly flood insurance premiums, if any;
(e)     yearly mortgage insurance premiums, if any; and
(f)     any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums.

These items are called "Escrow items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Mazaska Owecaso Otipi Financial, Inc.                                                    Page 2 of 11

Mazaska Complaint Exhibit 1
067

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments**. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied:

FIRST: to amounts payable under paragraph 2;
SECOND: to interest due;
THIRD: to principal due;
LAST: to any late charges due under the Note.

4. **Charges; Liens**. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property, which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

(a)     agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender;

(b)     contests in good faith the lien by, or defends against, enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or

(c)     secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

If Lender determines that any part of the Property is subject to a lien that may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance**. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval, which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

Mazaska Owecaso Otipi Financial, Inc.                                        Page 3 of 11

Mazaska Complaint Exhibit 1
068

lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provision of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the property. Lender's actions may include paying any sums secured by a lien, which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternative mortgage insurer approved by Lender. If

Mazaska Complaint Exhibit 1
069

substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or in accordance with applicable law.

9. **Inspection**. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation**. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction:

(a)          the total amount of the sums secured immediately before the taking, divided by
(b)          the fair market value of the Property immediately before the taking.

Any balance shall be paid to Borrower. In the even of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver**. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceeding against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

Mazaska Owecaso Otipi, Inc.                                                        Page 5 of 11

Mazaska Complaint Exhibit 1
070

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:

(a)       is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument;

(b)       is not personally obligated to pay the sums secured by this Security Instrument; and

(c)       agrees that Lender and any other Borrowers may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then:

(a)       any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and

(b)       any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower.

Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law, and tribal law, and the law of the state in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrowers fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument or applicable laws without further notice or demand on Borrower.

Mazaska Owecaso Otipi Financial, Inc.

Mazaska Complaint Exhibit 1
071

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:

(a)        5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or

(b)        entry of a judgment enforcing this Security Instrument.

Those conditions are that Borrower:

Mazaska Owecaso Otipi Financial, Inc.

Page 7 of 11

Mazaska Complaint Exhibit 1
072

Note as if no acceleration had occurred;

(b)        cures any default of any other covenants or agreements;

(c)        pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' and legal fees; and

(d)        takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.

Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The note will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS

### BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

Page 8 of 11

Mazaska Complaint Exhibit 1
073

UST Partnership for Housing, Inc.
NAHASDA § 506

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify:

(a)     the default;
(b)     the action required to cure the default;
(c)     a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and
(d)     that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' and legal fees and costs, including costs of title evidence.

In case of foreclosure of this Mortgage by action, the holder of the Certificate of Sale may apply to the Court for a reduction of the redemption period if the property has been abandoned by Mortgagor. If, after notice to the parties as the Court directs, the Court finds the property has been abandoned, the redemption period may be reduced by the Court to not less than sixty days from the date of recording the Certificate of Sale.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender shall sell the Property in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order:

(a)     to all expenses of the sale, including, but not limited to, reasonable attorneys' and legal fees;
(b)     to all sums secured by this Security Instrument; and
(c)     any excess to the clerk of the court subject to the order of the court.

## NOTICE

### THE PARTIES AGREE THAT THE PROVISIONS OF THE STATE OF SOUTH DAKOTA'S ONE HUNDRED EIGHTY DAY REDEMPTION MORTGAGE ACT GOVERN THIS MORTGAGE

**22. Releases.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**24. Area of the Property.** The Property is forty (40) acres or less in area.

**25. Rider to this Security Instrument.** If one or more riders are executed by Borrowers and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be

Mazaska Complaint Exhibit 1
074

OST Partnership for Housing, Inc.
NAHASDA § 506

incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Graduated Payment Rider       ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider                  ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ Other(s) [specify]

    **26.  Deficiency Judgment**. Borrower agrees to pay to Lender, in the event of foreclosure of this Mortgage, the difference between the net proceeds of foreclosure and sale and the total sums secured by this Mortgage, if the net proceeds of sale and foreclosure are less than the total sums then due and outstanding and secured by this Mortgage, and only if the Lender is the successful purchaser at such sale.

    **27.  Misrepresentation**. The Borrower understands that the sums secured by the Mortgage are derived from funding pursuant to the U. S. Department of Treasury Community Development Financial Institutions Fund and Regulations pertaining thereto. To induce the Lender to advance these sums, the Borrower has made several representations all as set forth in the Borrower's Mortgagor's Affidavit to even date herewith. If any of these representations are ascertained to be not true, the Lender may at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable.

    If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration. Such notice shall provide a period of not less than 30 days from the date of the notice is mailed within which Borrower may pay the sums declared due.  If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by law.  If Lender waives the right to accelerate hereunder, such a waiver shall not constitute a waiver of the right to rescind, or any other remedy available to Lender.

    **28.  Assignment of Rents; Appointment of Receiver; Lender in Possession**. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. This assignment of rents shall be effective until the payment of all sums secured by this Mortgage or, in the event of foreclosure, until the period of redemption expires.  Regardless of extinguishment of the debt by a foreclosure sale, this assignment shall continue for the benefit of the purchaser at such sale.

    Upon acceleration under paragraph 17 hereof accompanied by abandonment of the Property, Lender, in person, by agent, or by its appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Upon such acceleration not accompanied by abandonment, Lender shall be entitled, upon commencement of action for foreclosure or at any time prior to the expiration of any period of redemption following judicial sale, to have a receiver appointed by the Court, which receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receivers' fees, premiums on receiver's bonds and reasonable attorneys' and legal fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only of those or rents actually received.

Mazaska Complaint Exhibit 1
075

OST Partnership for Housing, Inc.
NAHASDA § 506

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with the Security Instrument.

_____(Seal)          N/A_____(Seal)
Lillian A Montileaux          Borrower          Mazaska Owecaso Otipi Financial          Lender

N/A_____(Seal)
          Borrower


STATE OF SOUTH DAKOTA

                                    SS.
COUNTY OF _Shannon_____

          On this the $n^{th}$ day of _July_, 2010, before me, the undersigned officer, personally appeared _Lillian Montileaux_ on behalf of _herself_____, known to be or satisfactorily proven to be the person(s) whose name is/are subscribed to the within instrument and acknowledged that he/she/they are authorized to do so, and executed the same for the purposes therein contained.

          IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

(SEAL)          ╔══════════════════╗
          ║   SANDRA BETTELYOUN  ║          _____
          ║ (SEAL) NOTARY PUBLIC ║          Notary Public
          ║      SOUTH DAKOTA (SEAL) ║
          ╚══════════════════╝          My _Commission Expires_
                                    _on Oct 04, 2011_

Mazaska Complaint Exhibit 1
076

# NOTE

Date: July 7, 2010

COPY

Borrower:          Lillian Antoinette Montileaux

Lender:            Mazaska Owecaso Otipi Financial, Inc.

Property Address:  NW1/4SW1/4NE1/4NE1/4, S18-39-41
                   Shannon County, South Dakota 2.5 Acres

## 1. BORROWER'S PROMISE TO PAY

In return for a loan by Lender to Borrower, Borrower promises to pay U.S. $51,634.00 (this amount will be called "principal"), plus interest, to the order of the Lender. Lender is Mazaska Owecaso Otipi Financial, Inc. Borrower understands that Lender may transfer this Note. Lender and anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. Borrower will pay interest at a yearly rate of 7.50%.

## 3. PAYMENTS

Borrower will pay principal and interest by making payments each month of U.S. $439.94. This includes a monthly insurance escrow amount of $90.33. Borrower will make such payments on the 7th day of each month beginning on August 6, 2010. Borrower will make these payments every month until all of the principal and interest and any other charges, described below, that Borrower may owe under this Note are paid. Borrower's monthly payments will be applied to interest before principal. If, on July 6, 2020, Borrower still owes amounts under this Note, Borrower will pay all those amounts, in full, on that date, which is called the "maturity date."

Borrower will make such monthly payments at Mazaska Owecaso Otipi Financial, Inc. PO Box 1996, Pine Ridge, SD. 57770 or at a different place if required in writing by Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, Borrower will pay a late charge to Note Holder. The amount of the charge will be $25.00 Borrower will pay this late charge promptly, but only once on any late payment.

### (B) Default

If Borrower does not pay the full amount of each monthly payment on the date it is due, Borrower will be in default.

### (C) Notice of Default

If Borrower is in default, Note Holder may send Borrower notice as provided in Section 8 below telling Borrower that if Borrower does not pay the overdue amount by a certain date, Note Holder may require Borrower to pay immediately the full amount of principal which has not been paid and all the interest that Borrower owes on that amount. That date must be at least 60 days after the date on which the notice is delivered to Borrower.

### (D) No Waiver By Note Holder

Even if, at a time when Borrower is in default, Note Holder does not require Borrower to pay immediately in full as described above, Note Holder will still have the right to do so if Borrower is in default at a later time.

Mazaska Complaint Exhibit 1
077

**(E) Payment of Note Holder's Costs and Expenses**
If Note Holder has required Borrower to pay immediately in full as described above, Note Holder will have the right to be paid back by Borrower for all of its reasonable costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A LEASEHOLD MORTGAGE**
In addition to the protections given to Note Holder under this Note, a Leasehold Mortgage of even date herewith protects Note Holder from possible losses that might result if Borrower does not keep the promises made in this Note. That Mortgage describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts that Borrower owes under this Note.

**6. BORROWER'S RIGHT TO PREPAY**
Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When Borrower makes a prepayment, Borrower will tell Note Holder in writing that Borrower is doing so. A prepayment of all unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." Borrower may make a full prepayment or a partial prepayment without any penalty. Note Holder will use all of Borrower's prepayments to reduce the amount of principal that Borrower owes under this Note. If Borrower makes a partial prepayment, there will be no changes in the due dates or changes in the amounts of Borrower's monthly payment unless Note Holder agrees in writing to those changes. Borrower may make a full prepayment at any time. If Borrower chooses to make a partial prepayment, Note Holder may require Borrower to make the prepayment on the same day that one of the monthly payments is due.

**7. WAIVERS**
Borrower waives his or her rights to require Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to Note Holder if Borrower fails to keep his or her promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons may include "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**
Any notice to Borrower in connection with this Note shall be deemed to have been given to Borrower upon delivering a copy of the notice directly to the Borrower or on the third day after the notice is mailed to Borrower by first class mail, unless the third day is a Saturday, Sunday, or legal holiday, in which case notice shall be deemed to have been given on the next day which is not a Saturday, Sunday or legal holiday as legal holiday is defined in the Federal Rules of Civil Procedure. If any other notice is required under the law governing this Note, the requirements of such governing law concerning notice shall also be complied with. Any notice to Note Holder shall be deemed to have been given to Lender by mailing it by first class mail to Note Holder's address designated herein.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over Borrower's rights or obligations under this Note will have all of Borrower's rights and must keep all of Borrower's promises made in this Note. Note Holder may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of such persons may be required to pay all of the amounts owed under this Note.

**10. GOVERNING LAW; SEVERABILITY**
This Note shall be governed by the law of the Tribe upon which the leasehold interest in the land is located and applicable federal law. The courts of the Tribe shall have sole and exclusive jurisdiction with respect to all controversies or claims relating to or arising out of this Note. In the event that any provision or clause of this Note conflicts with applicable law, such conflict shall not affect other provisions of this Note which can be given effect without the conflicting provision. To this end, the provisions of this Note are declared to be severable.

Mazaska Complaint Exhibit 1
078

**11. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit: and (ii) any sums already collected from Borrower which exceeded permitted time limits will be refunded to Borrower. Note Holder may choose to make this refund by reducing the principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

Borrower: Lillian A. Monitleaux

Date July 7, 2010

Lender: Mazaska Owecaso Otipi Financial, Inc.
By: Pamela Red Cloud, Loan Officer

Mazaska Complaint Exhibit 1
079

# MORTGAGE
# ONE HUNDRED EIGHTY DAY REDEMPTION

**THIS MORTGAGE** ("Security Instrument") is given on <u>December 1, 2010</u>. The mortgagee (that is, the Borrower):

a)      Is, <u>Lillian A. Montileaux</u>          or
b)      are  <u>N/A</u>
c)      and  <u>N/A</u>

("Borrower")  This Mortgage is a Security Instrument given to MAZASKA OWECASO OTIPI FINANCIAL, INC., which is organized and existing under the laws of THE STATE OF SOUTH DAKOTA, and whose address is P.O. BOX 1996, PINE RIDGE, SOUTH DAKOTA, 57770 ("Lender").

Borrower owes Lender the principal sum of <u>Fifty-Four  Thousand Eighty-Four dollars and no /cents</u> (U.S. <u>$54,084.00</u>). This debt is evidenced by Borrower's note ("Note") dated the same date as this Security Instrument, which provides for monthly payment, with the full debt, if not paid earlier, due and payable on July 7, 2015.

This Security Instrument secures to Lender: <u>Mazaska Owecaso Otipi Financial, Inc</u>

(a)      the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;
(b)      the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and [none]
(c)      the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in Shannon County, South Dakota, which has the address of:  NW1/4SW1/4NE1/4NE1/4,S18-39-41,Shannon County, South Dakota (Property address), 2.5 acres.

### THIS IS A PURCHASE MONEY SECURITY INSTRUMENT
### TAX STATEMENTS SHOULD BE SENT TO:

MAZASKA OWECASO OTIPI FINANCIAL, INC, PO BOX 1996
PINE RIDGE, SOUTH DAKOTA, 57770,

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Mazaska Owecaso Otipi Financial, Inc.                                      Page 1 of 11

Mazaska Complaint Exhibit 1
080

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

## UNIFORM COVENANTS

### BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

   1.    **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of, and interest, on the debt evidenced by the Note and any prepayment and late charges due under the Note. There are no prepayment penalties on this Note.

   2.    **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for:

(a)        yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, if any;
(b)        yearly leasehold payments or ground rents on the Property, if any;
(c)        yearly hazard or property insurance premiums;
(d)        yearly flood insurance premiums, if any;
(e)        yearly mortgage insurance premiums, if any; and
(f)        any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums.

These items are called "Escrow items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Mazaska Complaint Exhibit 1
081

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.  **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied:

FIRST: to amounts payable under paragraph 2;
SECOND: to interest due;
THIRD:  to principal due;
LAST: to any late charges due under the Note.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property, which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

(a)       agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender;

(b)       contests in good faith the lien by, or defends against, enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or

(c)       secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

If Lender determines that any part of the Property is subject to a lien that may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval, which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

Mazaska Owecaso Otipi Financial, Inc.                                              Page 3 of 11

Mazaska Complaint Exhibit 1
082

lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provision of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the property. Lender's actions may include paying any sums secured by a lien, which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternative mortgage insurer approved by Lender. If

Mazaska Owecaso Otipi, Inc.                                                                 Page 4 of 11

Mazaska Complaint Exhibit 1
083

substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or in accordance with applicable law.

9. **Inspection**. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation**. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction:

(a)     the total amount of the sums secured immediately before the taking, divided by
(b)     the fair market value of the Property immediately before the taking.

Any balance shall be paid to Borrower. In the even of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver**. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceeding against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

Mazaska Owecaso Otipi, Inc.                                         Page 5 of 11

Mazaska Complaint Exhibit 1
084

**12.   Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:

(a)         is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument;

(b)         is not personally obligated to pay the sums secured by this Security Instrument; and

(c)         agrees that Lender and any other Borrowers may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.   Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then:

(a)         any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and

(b)         any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower.

Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14.   Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15.   Governing Law; Severability.** This Security Instrument shall be governed by federal law, and tribal law, and the law of the state in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16.   Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17.   Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrowers fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument or applicable laws without further notice or demand on Borrower.

Mazaska Owecaso Otipi Financial, Inc.                                                            Page 6 of 11

Mazaska Complaint Exhibit 1
085

**18. Borrower's Right to Reinstate**. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:

(a)     5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or

(b)     entry of a judgment enforcing this Security Instrument.

Those conditions are that Borrower:

Mazaska Owecaso Otipi Financial, Inc.                                    Page 7 of 11

Mazaska Complaint Exhibit 1
086

(a)    pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;

(b)    cures any default of any other covenants or agreements;

(c)    pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' and legal fees; and

(d)    takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.

Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The note will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS

**BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:**

Page 8 of 11

Mazaska Complaint Exhibit 1
087

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify:

(a)      the default;

(b)      the action required to cure the default;

(c)      a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and

(d)      that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' and legal fees and costs, including costs of title evidence.

In case of foreclosure of this Mortgage by action, the holder of the Certificate of Sale may apply to the Court for a reduction of the redemption period if the property has been abandoned by Mortgagor. If, after notice to the parties as the Court directs, the Court finds the property has been abandoned, the redemption period may be reduced by the Court to not less than sixty days from the date of recording the Certificate of Sale.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender shall sell the Property in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order:

(a)      to all expenses of the sale, including, but not limited to, reasonable attorneys' and legal fees;

(b)      to all sums secured by this Security Instrument; and

(c)      any excess to the clerk of the court subject to the order of the court.

## NOTICE

### THE PARTIES AGREE THAT THE PROVISIONS OF THE STATE OF SOUTH DAKOTA'S ONE HUNDRED EIGHTY DAY REDEMPTION MORTGAGE ACT GOVERN THIS MORTGAGE

**22. Releases.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**24. Area of the Property.** The Property is forty (40) acres or less in area.

**25. Rider to this Security Instrument.** If one or more riders are executed by Borrowers and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be

Page 9 of 11

Mazaska Complaint Exhibit 1
088

incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider          ☐ 1-4 Family Rider
☐ Graduated Payment Rider        ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ Balloon Rider                  ☐ Rate Improvement Rider     ☐ Second Home Rider
☐ Other(s) [specify]

    **26. Deficiency Judgment.** Borrower agrees to pay to Lender, in the event of foreclosure of this Mortgage, the difference between the net proceeds of foreclosure and sale and the total sums secured by this Mortgage, if the net proceeds of sale and foreclosure are less than the total sums then due and outstanding and secured by this Mortgage, and only if the Lender is the successful purchaser at such sale.

    **27. Misrepresentation.** The Borrower understands that the sums secured by the Mortgage are derived from funding pursuant to the U. S. Department of Treasury Community Development Financial Institutions Fund and Regulations pertaining thereto. To induce the Lender to advance these sums, the Borrower has made several representations all as set forth in the Borrower's Mortgagor's Affidavit to even date herewith. If any of these representations are ascertained to be not true, the Lender may at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable.

    If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration. Such notice shall provide a period of not less than 30 days from the date of the notice is mailed within which Borrower may pay the sums declared due.  If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by law.  If Lender waives the right to accelerate hereunder, such a waiver shall not constitute a waiver of the right to rescind, or any other remedy available to Lender.

    **28. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. This assignment of rents shall be effective until the payment of all sums secured by this Mortgage or, in the event of foreclosure, until the period of redemption expires. Regardless of extinguishment of the debt by a foreclosure sale, this assignment shall continue for the benefit of the purchaser at such sale.

    Upon acceleration under paragraph 17 hereof accompanied by abandonment of the Property, Lender, in person, by agent, or by its appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Upon such acceleration not accompanied by abandonment, Lender shall be entitled, upon commencement of action for foreclosure or at any time prior to the expiration of any period of redemption following judicial sale, to have a receiver appointed by the Court, which receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receivers' fees, premiums on receiver's bonds and reasonable attorneys' and legal fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only of those or rents actually received.

Page 10 of 11

Mazaska Complaint Exhibit 1
089

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with the Security Instrument.

_Lillian A Montileaux_ (Seal)        _N/A_____ (Seal)
Lillian A Montileaux        Borrower        Mazaska Owecaso Otipi Financial        Lender

_N/A_____ (Seal)
Borrower

STATE OF SOUTH DAKOTA
                                        SS.
COUNTY OF _Shannun_

On this the 1st day of _Dec._, 2010, before me, the undersigned officer, personally appeared _Lillian Tói Montileaux_ on behalf of _self_____, known to be or satisfactorily proven to be the person(s) whose name is/are subscribed to the within instrument and acknowledged that he/she/they are authorized to do so, and executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_Cherica Cullinson_
Notary Public

My

Expires - 1-22-14

(SEAL) CHERYCA M. CULLINSON
NOTARY
SEAL
PUBLIC
STATE OF SOUTH DAKOTA

Mazaska Complaint Exhibit 1
090

# NOTE

Date: December 1, 2010

COPY

Borrower:      Lillian Antoinette Montileaux

Lender:        Mazaska Owecaso Otipi Financial, Inc.

Property Address:   NW1/4, SW1/4, NE1/4, NE1/4 of Section 18, Township 39 N., Range 41 W. Shannon County, SD, 2.5Acres.

............................……………………………....................……………….....................

## 1. BORROWER'S PROMISE TO PAY
In return for a loan by Lender to Borrower, Borrower promises to pay U.S. $54,084.00 (this amount will be called "principal"), plus interest, to the order of the Lender. Lender is Mazaska Owecaso Otipi Financial, Inc. Borrower understands that Lender may transfer this Note. Lender and anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. Borrower will pay interest at a yearly rate of 7.50%.

## 3. PAYMENTS
Borrower will pay principal and interest by making payments each month of U.S. $439.94. This includes a monthly insurance escrow amount of $90.33. Borrower will make such payments on the 7th day of each month beginning on August 6, 2010. Borrower will make these payments every month until all of the principal and interest and any other charges, described below, that Borrower may owe under this Note are paid. Borrower's monthly payments will be applied to interest before principal. If, on July 6, 2015, Borrower still owes amounts under this Note, Borrower will pay all those amounts, in full, on that date, which is called the "maturity date."

Borrower will make such monthly payments at Mazaska Owecaso Otipi Financial, Inc. PO Box 1996, Pine Ridge, SD. 57770 or at a different place if required in writing by Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments
If Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, Borrower will pay a late charge to Note Holder. The amount of the charge will be $25.00 Borrower will pay this late charge promptly, but only once on any late payment.

### (B) Default

Mazaska Complaint Exhibit 1 091

If Borrower does not pay the full amount of each monthly payment on the date it is due, Borrower will be in default.

**(C) Notice of Default**
If Borrower is in default, Note Holder may send Borrower notice as provided in Section 8 below telling Borrower that if Borrower does not pay the overdue amount by a certain date, Note Holder may require Borrower to pay immediately the full amount of principal which has not been paid and all the interest that Borrower owes on that amount. That date must be at least 60 days after the date on which the notice is delivered to Borrower.

**(D) No Waiver By Note Holder**
Even if, at a time when Borrower is in default, Note Holder does not require Borrower to pay immediately in full as described above, Note Holder will still have the right to do so if Borrower is in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If Note Holder has required Borrower to pay immediately in full as described above, Note Holder will have the right to be paid back by Borrower for all of its reasonable costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A LEASEHOLD MORTGAGE**
In addition to the protections given to Note Holder under this Note, a Leasehold Mortgage of even date herewith protects Note Holder from possible losses that might result if Borrower does not keep the promises made in this Note. That Mortgage describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts that Borrower owes under this Note.

**6. BORROWER'S RIGHT TO PREPAY**
Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When Borrower makes a prepayment, Borrower will tell Note Holder in writing that Borrower is doing so. A prepayment of all unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." Borrower may make a full prepayment or a partial prepayment without any penalty. Note Holder will use all of Borrower's prepayments to reduce the amount of principal that Borrower owes under this Note. If Borrower makes a partial prepayment, there will be no changes in the due dates or changes in the amounts of Borrower's monthly payment unless Note Holder agrees in writing to those changes. Borrower may make a full prepayment at any time. If Borrower chooses to make a partial prepayment, Note Holder may require Borrower to make the prepayment on the same day that one of the monthly payments is due.

**7. WAIVERS**
Borrower waives his or her rights to require Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to Note Holder if

Mazaska Complaint Exhibit 1
092

Borrower fails to keep his or her promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons may include "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice to Borrower in connection with this Note shall be deemed to have been given to Borrower upon delivering a copy of the notice directly to the Borrower or on the third day after the notice is mailed to Borrower by first class mail, unless the third day is a Saturday, Sunday, or legal holiday, in which case notice shall be deemed to have been given on the next day which is not a Saturday, Sunday or legal holiday as legal holiday is defined in the Federal Rules of Civil Procedure. If any other notice is required under the law governing this Note, the requirements of such governing law concerning notice shall also be complied with. Any notice to Note Holder shall be deemed to have been given to Lender by mailing it by first class mail to Note Holder's address designated herein.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over Borrower's rights or obligations under this Note will have all of Borrower's rights and must keep all of Borrower's promises made in this Note. Note Holder may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of such persons may be required to pay all of the amounts owed under this Note.

## 10. GOVERNING LAW; SEVERABILITY

This Note shall be governed by the law of the Tribe upon which the leasehold interest in the land is located and applicable federal law. The courts of the Tribe shall have sole and exclusive jurisdiction with respect to all controversies or claims relating to or arising out of this Note. In the event that any provision or clause of this Note conflicts with applicable law, such conflict shall not affect other provisions of this Note which can be given effect without the conflicting provision. To this end, the provisions of this Note are declared to be severable.

## 11. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit: and (ii) any sums already collected from Borrower which exceeded permitted time limits will be refunded to Borrower. Note Holder may choose to make this refund by reducing the principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

Mazaska Complaint Exhibit 1 093

Borrower: Lillian A. Monitleaux

Date

Lender: Mazaska Owecaso Otipi Financial, Inc.
By: Whitney Zephier, Loan Officer

Mazaska Complaint Exhibit 1
094

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

| | |
|---|---|
| Loan # | 10-0■■■ |
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |
| Term | |

## Loan Details
### Between 7/7/2010, 4/19/2021

Borrower: Montileaux, Lillian Toni    Work ■    Cell ■

### Transactions

| Date | Action | Amount | Interest | Principal | Paid Interest | Paid Fees | Paid Insurance | Out. Principal | Out. Interest | Out. Fees | Out. Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/7/2010 | Commitment | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7/7/2010 | Advance. Principal | 1,084.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,084.00 | 0.00 | 0.00 | 0.00 | 1,084.00 |
| 7/7/2010 | Advance. Principal | 2,167.31 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,251.31 | 0.00 | 0.00 | 0.00 | 3,251.31 |
| 7/7/2010 | Advance. Principal | 24,832.69 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 28,084.00 | 0.00 | 0.00 | 0.00 | 28,084.00 |
| 8/12/2010 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 90.33 | 0.00 | 28,084.00 | 0.00 | 90.33 | 0.00 | 28,174.33 |
| 8/18/2010 | Payment. Regular | 440.00 | 242.37 | 107.30 | 242.37 | 90.33 | 0.00 | 27,976.70 | 0.00 | 0.00 | 0.00 | 27,976.70 |
| 9/12/2010 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 90.33 | 0.00 | 27,976.70 | 0.00 | 90.33 | 0.00 | 28,067.03 |
| 9/12/2010 | Payment. Regular | 220.00 | 80.48 | 49.19 | 80.48 | 90.33 | 0.00 | 27,927.51 | 0.00 | 0.00 | 0.00 | 27,927.51 |
| 9/15/2010 | Payment. Regular | 220.00 | 80.34 | 139.66 | 80.34 | 90.33 | 0.00 | 27,787.85 | 0.00 | 0.00 | 0.00 | 27,787.85 |
| 9/28/2010 | Payment. Regular | 220.00 | 74.23 | 145.77 | 74.23 | 90.33 | 0.00 | 27,642.08 | 0.00 | 0.00 | 0.00 | 27,642.08 |
| 10/1/2010 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 90.33 | 0.00 | 27,642.08 | 0.00 | 90.33 | 0.00 | 27,732.41 |
| 10/14/2010 | Payment. Regular | 220.00 | 90.88 | 38.79 | 90.88 | 90.33 | 0.00 | 27,603.29 | 0.00 | 0.00 | 0.00 | 27,603.29 |
| 10/27/2010 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 90.33 | 0.00 | 27,603.29 | 0.00 | 90.33 | 0.00 | 27,693.62 |
| 11/1/2010 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 90.33 | 0.00 | 27,457.02 | 0.00 | 90.33 | 0.00 | 27,457.02 |
| 11/15/2010 | Payment. Regular | 220.00 | 73.73 | 146.47 | 73.73 | 90.33 | 0.00 | 27,434.55 | 0.00 | 0.00 | 0.00 | 27,434.55 |
| 11/18/2010 | Advance. Principal | 17,647.76 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45,082.31 | 0.00 | 0.00 | 0.00 | 45,082.31 |
| 11/30/2010 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 90.33 | 0.00 | 44,990.38 | 0.00 | 90.33 | 0.00 | 45,000.71 |
| 12/1/2010 | Escrow. Fee | 220.00 | 107.20 | 22.47 | 107.20 | 90.33 | 0.00 | 44,953.16 | 0.00 | 90.33 | 0.00 | 44,953.16 |
| 12/10/2010 | Payment. Regular | 220.00 | 16.91 | 91.93 | 16.91 | 0.00 | 0.00 | 44,953.16 | 16.91 | 0.00 | 0.00 | 45,147.14 |
| 12/31/2010 | Interest | 193.98 | 111.16 | 0.00 | 0.00 | 0.00 | 0.00 | 44,953.16 | 193.98 | 90.33 | 0.00 | 45,147.14 |
| 12/31/2010 | Doubtful | 1,348.59 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,953.16 | 193.98 | 90.33 | 0.00 | 45,237.47 |
| 1/1/2011 | Escrow. Fee | 193.98 | 193.98 | 0.00 | 193.98 | 92.45 | 0.00 | 44,953.16 | 193.98 | 90.33 | 0.00 | 45,237.47 |
| 1/1/2011 | Payment. Regular | 220.00 | 92.45 | 37.22 | 92.45 | 92.45 | 0.00 | 44,990.38 | 0.00 | 90.33 | 0.00 | 45,080.71 |
| 1/7/2011 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 92.45 | 0.00 | 44,990.38 | 0.00 | 90.33 | 0.00 | 45,080.71 |
| 1/25/2011 | Payment. Regular | 220.00 | 165.93 | 54.07 | 165.93 | 90.33 | 0.00 | 44,808.06 | 0.00 | 0.00 | 0.00 | 44,808.06 |
| 2/1/2011 | Payment. Regular | 220.00 | 128.97 | 91.03 | 128.97 | 90.33 | 0.00 | 44,862.13 | 128.97 | 90.33 | 0.00 | 44,862.13 |
| 2/1/2011 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 90.33 | 0.00 | 44,862.13 | 128.97 | 90.33 | 0.00 | 44,898.09 |
| 2/4/2011 | Payment. Regular | 220.00 | 64.66 | 129.67 | 129.67 | 0.00 | 0.00 | 44,808.06 | 0.00 | 90.33 | 0.00 | 44,808.06 |
| 2/16/2011 | Payment. Regular | 220.00 | 92.07 | 37.60 | 92.07 | 90.33 | 0.00 | 44,770.46 | 0.00 | 0.00 | 0.00 | 44,770.46 |
| 2/23/2011 | Payment. Regular | 220.00 | 110.39 | 109.61 | 110.39 | 0.00 | 0.00 | 44,660.85 | 0.00 | 0.00 | 0.00 | 44,660.85 |
| 2/23/2011 | Advance. Principal | 4,084.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,660.85 | 0.00 | 0.00 | 0.00 | 44,660.85 |
| 3/1/2011 | Commitment | 8,352.24 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 53,013.09 | 0.00 | 90.33 | 0.00 | 53,013.09 |
| 3/4/2011 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 90.33 | 0.00 | 53,013.09 | 64.24 | 90.33 | 0.00 | 53,077.33 |
| 3/4/2011 | Payment. Regular | 220.00 | 64.24 | 0.00 | 0.00 | 0.00 | 0.00 | 53,013.09 | 64.24 | 90.33 | 0.00 | 53,167.66 |
| 3/17/2011 | Commitment | 13,357.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 53,013.09 | 32.61 | 90.33 | 0.00 | 53,045.70 |
| 4/1/2011 | Payment. Regular | 220.00 | 141.61 | 45.78 | 174.22 | 129.67 | 0.00 | 52,967.31 | 0.00 | 32.61 | 0.00 | 52,967.31 |
| 4/1/2011 | Escrow. Fee | 90.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 52,967.31 | 0.00 | 32.61 | 0.00 | 53,057.64 |
| 4/1/2011 | Payment. Regular | 220.00 | 98.04 | 129.67 | 129.67 | 90.33 | 0.00 | 52,967.31 | 0.00 | 0.00 | 0.00 | 53,045.70 |
| 4/15/2011 | Escrow. Fee | 90.33 | 163.26 | 34.04 | 0.00 | 90.33 | 0.00 | 53,000.90 | 0.00 | 33.59 | 90.33 | 53,000.90 |
| 4/15/2011 | Payment. Regular | 220.00 | 152.37 | 0.00 | 129.67 | 90.33 | 0.00 | 52,933.27 | 0.00 | 0.00 | 90.33 | 52,933.27 |
| 4/19/2011 | Fee. Admin | 663.70 | 0.00 | 0.00 | 185.96 | 663.70 | 0.00 | 52,933.27 | 0.00 | 663.70 | 0.00 | 53,596.97 |

4/19/2021 4:20:51 PM

EXHIBIT 4

Mazaska Complaint Exhibit 1 095

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

| Loan # | 10-0█████ |
|---|---|
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |
| Term | |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |

## Loan Details
### Between 7/7/2010, 4/19/2021

Borrower: Montileaux, Lillian Toni
Work Cell █████

| Date | Action | Amount | Interest | Principal | Paid Interest | Paid Principal | Paid Fees | Paid Insurance | Out. Principal | Out. Interest | Out. Fees | Out. Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/19/2011 | Payment: Fees | 663.70 | 0.00 | 0.00 | 0.00 | 0.00 | 663.70 | 0.00 | 52,933.27 | 0.00 | 0.00 | 0.00 | 52,933.27 |
| 4/20/2011 | Advance: Principal | 8,000.00 | 54.38 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,933.27 | 54.38 | 0.00 | 0.00 | 60,987.65 |
| 4/28/2011 | Payment: Regular | 220.00 | 100.16 | 65.46 | 154.54 | 65.46 | 0.00 | 0.00 | 60,867.81 | 0.00 | 0.00 | 0.00 | 60,867.81 |
| 5/11/2011 | Escrow: Fee | 90.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.33 | 60,867.81 | 0.00 | 90.33 | 0.00 | 60,958.14 |
| 5/3/2011 | Advance: Principal | 2,678.58 | 62.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 63,546.39 | 62.54 | 90.33 | 0.00 | 63,699.26 |
| 5/3/2011 | Advance: Principal | 2,678.58 | 62.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 66,224.97 | 62.54 | 90.33 | 0.00 | 66,377.84 |
| 5/13/2011 | Payment: Regular | 220.00 | 136.08 | 20.54 | 129.67 | 20.54 | 90.33 | 0.00 | 66,204.43 | 68.95 | 0.00 | 0.00 | 66,293.92 |
| 5/27/2011 | Payment: Regular | 280.00 | 190.51 | 0.00 | 259.46 | 0.00 | 0.00 | 0.00 | 66,204.43 | 0.00 | 0.00 | 0.00 | 66,204.43 |
| 6/1/2011 | Escrow: Fee | 90.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.33 | 66,204.43 | 0.00 | 90.33 | 0.00 | 66,294.76 |
| 6/8/2011 | Payment: Regular | 280.00 | 163.24 | 26.43 | 163.24 | 26.43 | 90.33 | 0.00 | 66,178.00 | 0.00 | 0.00 | 0.00 | 66,178.00 |
| 6/22/2011 | Payment: Regular | 280.00 | 190.38 | 99.62 | 190.38 | 99.62 | 0.00 | 0.00 | 66,078.38 | 0.00 | 0.00 | 0.00 | 66,078.38 |
| 7/11/2011 | Payment: Regular | 290.00 | 257.98 | 32.02 | 257.98 | 32.02 | 0.00 | 0.00 | 66,046.36 | 0.00 | 0.00 | 0.00 | 66,046.36 |
| 7/22/2011 | Payment: Regular | 290.00 | 149.28 | 140.72 | 149.28 | 140.72 | 0.00 | 0.00 | 65,905.64 | 0.00 | 0.00 | 0.00 | 65,905.64 |
| 8/3/2011 | Payment: Regular | 290.00 | 162.51 | 127.49 | 162.51 | 127.49 | 0.00 | 0.00 | 65,778.15 | 0.00 | 0.00 | 0.00 | 65,778.15 |
| 8/24/2011 | Escrow: Fee | 90.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.33 | 65,778.15 | 0.00 | 90.33 | 0.00 | 65,868.48 |
| 8/24/2011 | Payment: Regular | 290.00 | 283.84 | 0.00 | 199.67 | 0.00 | 90.33 | 0.00 | 65,778.15 | 84.17 | 0.00 | 0.00 | 65,862.32 |
| 9/2/2011 | Escrow: Fee | 90.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.33 | 65,778.15 | 84.17 | 90.33 | 0.00 | 65,952.65 |
| 9/2/2011 | Payment: Regular | 290.00 | 121.64 | 0.00 | 199.67 | 0.00 | 90.33 | 0.00 | 65,778.15 | 6.14 | 0.00 | 0.00 | 65,784.29 |
| 9/14/2011 | Payment: Regular | 290.00 | 0.00 | 31.34 | 0.00 | 31.34 | 90.33 | 0.00 | 65,746.81 | 6.14 | 0.00 | 0.00 | 65,784.62 |
| 9/27/2011 | Escrow: Fee | 90.33 | 162.19 | 0.00 | 168.33 | 0.00 | 0.00 | 0.00 | 65,746.81 | 84.77 | 90.33 | 0.00 | 65,746.81 |
| 9/27/2011 | Payment: Regular | 290.00 | 0.00 | 24.04 | 0.00 | 0.00 | 0.00 | 0.00 | 65,722.77 | 0.00 | 90.33 | 0.00 | 65,837.14 |
| 10/1/2011 | Escrow: Fee | 90.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 90.33 | 65,722.77 | 0.00 | 90.33 | 0.00 | 65,822.17 |
| 10/12/2011 | Payment: Regular | 290.00 | 202.57 | 0.00 | 191.64 | 0.00 | 90.33 | 0.00 | 65,722.77 | 10.93 | 0.00 | 0.00 | 65,781.13 |
| 11/1/2011 | Escrow: Fee | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 98.36 | 65,722.77 | 10.93 | 98.36 | 0.00 | 65,848.70 |
| 11/2/2011 | Payment: Regular | 290.00 | 0.00 | 0.00 | 114.92 | 0.00 | 0.00 | 0.00 | 65,722.77 | 10.93 | 114.92 | 0.00 | 65,842.22 |
| 11/8/2011 | Payment: Regular | 290.00 | 283.60 | 0.00 | 175.08 | 0.00 | 114.92 | 0.00 | 65,633.25 | 119.45 | 0.00 | 0.00 | 65,633.25 |
| 11/28/2011 | Payment: Regular | 290.00 | 81.03 | 88.52 | 200.48 | 88.52 | 0.00 | 0.00 | 65,633.25 | 0.00 | 0.00 | 0.00 | 65,633.25 |
| 12/1/2011 | Escrow: Fee | 114.92 | 269.73 | 20.27 | 269.73 | 20.27 | 0.00 | 114.92 | 65,612.98 | 0.00 | 114.92 | 0.00 | 65,612.98 |
| 12/7/2011 | Payment: Regular | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 65,612.98 | 0.00 | 114.92 | 0.00 | 65,727.90 |
| 12/27/2011 | Payment: Regular | 290.00 | 121.34 | 53.74 | 121.34 | 53.74 | 114.92 | 0.00 | 65,559.24 | 0.00 | 0.00 | 0.00 | 65,559.24 |
| 1/1/2012 | Escrow: Fee | 114.92 | 269.42 | 20.58 | 269.42 | 20.58 | 0.00 | 114.92 | 65,538.66 | 0.00 | 114.92 | 0.00 | 65,538.66 |
| 1/4/2012 | Payment: Regular | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 0.00 | 65,538.66 | 0.00 | 0.00 | 0.00 | 65,653.58 |
| 1/23/2012 | Payment: Regular | 290.00 | 254.91 | 35.09 | 254.91 | 35.09 | 0.00 | 0.00 | 65,471.02 | 0.00 | 0.00 | 0.00 | 65,471.02 |
| 2/1/2012 | Escrow: Fee | 114.92 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 65,435.93 | 0.00 | 114.92 | 0.00 | 65,435.93 |
| 2/2/2012 | Payment: Regular | 290.00 | 134.09 | 40.99 | 134.09 | 40.99 | 114.92 | 0.00 | 65,394.94 | 0.00 | 0.00 | 0.00 | 65,394.94 |
| 2/13/2012 | Payment: Regular | 290.00 | 147.41 | 142.59 | 147.41 | 142.59 | 0.00 | 0.00 | 65,252.35 | 0.00 | 0.00 | 0.00 | 65,252.35 |
| 3/1/2012 | Payment: Regular | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 65,252.35 | 0.00 | 0.00 | 0.00 | 65,252.35 |
| 3/1/2012 | Escrow: Fee | 114.92 | 280.80 | 0.00 | 175.08 | 0.00 | 114.92 | 114.92 | 65,367.27 | 105.72 | 114.92 | 0.00 | 65,367.27 |
| 3/5/2012 | Payment: Regular | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 65,358.07 | 0.00 | 0.00 | 0.00 | 65,358.07 |
| 3/12/2012 | Payment: Regular | 290.00 | 93.60 | 90.68 | 199.32 | 90.68 | 0.00 | 0.00 | 65,161.67 | 0.00 | 0.00 | 0.00 | 65,161.67 |

Mazaska Complaint Exhibit 1 096

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

## Loan Details
### Between 7/7/2010, 4/19/2021

| | |
|---|---|
| Loan # | 10-0■■■■ |
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |
| Term | |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |

Borrower: Montileaux, Lillian Toni
Work ■■■■   Cell ■■■■

| Date | Action | Amount | Interest | Principal | Paid Interest | Paid Principal | Paid Fees | Paid Insurance | Out. Principal | Out. Interest | Out. Fees | Out. Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/1/2012 | Escrow: Fee | 114.92 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 0.00 | 65,161.67 | 0.00 | 114.92 | 0.00 | 65,276.59 |
| 4/10/2012 | Payment: Regular | 290.00 | 387.23 | 0.00 | 175.08 | 114.92 | 0.00 | 0.00 | 65,161.67 | 212.15 | 114.92 | 0.00 | 65,373.82 |
| 4/23/2012 | Escrow: Fee | 114.92 | 173.59 | 0.00 | 0.00 | 0.00 | 114.92 | 0.00 | 65,161.67 | 95.74 | 114.92 | 0.00 | 65,257.41 |
| 5/1/2012 | Escrow: Fee | 114.92 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 0.00 | 65,161.67 | 95.74 | 114.92 | 0.00 | 65,372.33 |
| 5/7/2012 | Payment: Regular | 290.00 | 166.94 | 0.00 | 175.08 | 114.92 | 0.00 | 0.00 | 65,161.67 | 107.60 | 114.92 | 0.00 | 65,269.27 |
| 5/22/2012 | Payment: Regular | 290.00 | 200.29 | 0.00 | 290.00 | 0.00 | 0.00 | 0.00 | 65,161.67 | 17.89 | 114.92 | 0.00 | 65,161.95 |
| 6/1/2012 | Escrow: Fee | 114.92 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 0.00 | 65,161.67 | 17.89 | 114.92 | 0.00 | 65,294.48 |
| 6/11/2012 | Payment: Regular | 290.00 | 106.82 | 0.00 | 216.69 | 73.31 | 0.00 | 0.00 | 65,088.36 | 109.87 | 114.92 | 0.00 | 65,271.54 |
| 6/19/2012 | Payment: Regular | 290.00 | 73.31 | 0.00 | 175.00 | 114.92 | 0.00 | 114.92 | 65,088.36 | 17.89 | 114.92 | 0.00 | 65,204.48 |
| 7/1/2012 | Escrow: Fee | 114.92 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 0.00 | 65,088.36 | 17.89 | 114.92 | 0.00 | 65,203.28 |
| 7/2/2012 | Payment: Regular | 290.00 | 173.39 | 0.00 | 173.39 | 0.00 | 0.00 | 0.00 | 65,088.36 | 0.00 | 114.92 | 0.00 | 65,203.28 |
| 7/18/2012 | Payment: Regular | 290.00 | 1.69 | 0.00 | 216.69 | 0.00 | 0.00 | 114.92 | 65,086.67 | 0.00 | 114.92 | 0.00 | 65,086.67 |
| 7/31/2012 | Payment: Regular | 290.00 | 173.40 | 0.00 | 173.40 | 0.00 | 0.00 | 0.00 | 65,086.67 | 0.00 | 114.92 | 0.00 | 65,086.87 |
| 8/1/2012 | Escrow: Fee | 114.92 | 213.40 | 0.00 | 213.40 | 0.00 | 0.00 | 114.92 | 65,086.67 | 0.00 | 114.92 | 0.00 | 65,010.07 |
| 8/13/2012 | Payment: Regular | 290.00 | 76.60 | 0.00 | 76.60 | 0.00 | 0.00 | 0.00 | 64,893.25 | 0.00 | 114.92 | 0.00 | 64,893.25 |
| 8/21/2012 | Payment: Regular | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 64,891.04 | 0.00 | 114.92 | 0.00 | 64,891.04 |
| 9/1/2012 | Escrow: Fee | 114.92 | 116.82 | 0.00 | 173.18 | 0.00 | 0.00 | 114.92 | 64,891.04 | 0.00 | 114.92 | 0.00 | 64,891.04 |
| 9/4/2012 | Payment: Regular | 290.00 | 173.18 | 0.00 | 173.18 | 0.00 | 0.00 | 0.00 | 64,811.58 | 0.00 | 114.92 | 0.00 | 64,811.58 |
| 9/11/2012 | Payment: Regular | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 64,734.08 | 0.00 | 114.92 | 0.00 | 64,734.08 |
| 9/27/2012 | Payment: Regular | 290.00 | 172.87 | 0.00 | 172.87 | 0.00 | 0.00 | 0.00 | 64,734.08 | 0.00 | 114.92 | 0.00 | 64,734.08 |
| 10/1/2012 | Escrow: Fee | 114.92 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 0.00 | 64,891.04 | 0.00 | 114.92 | 0.00 | 64,848.00 |
| 10/11/2012 | Payment: Regular | 290.00 | 292.54 | 2.21 | 175.08 | 212.50 | 114.92 | 0.00 | 64,891.04 | 117.46 | 114.92 | 0.00 | 65,008.50 |
| 10/12/2012 | Payment: Regular | 290.00 | 93.08 | 79.46 | 210.54 | 212.50 | 0.00 | 0.00 | 64,811.58 | 0.00 | 114.92 | 0.00 | 65,008.96 |
| 11/1/2012 | Escrow: Fee | 114.92 | 0.00 | 77.50 | 212.50 | 0.00 | 0.00 | 114.92 | 64,734.08 | 0.00 | 114.92 | 0.00 | 64,891.04 |
| 11/5/2012 | Payment: Regular | 290.00 | 212.50 | 0.00 | 212.50 | 0.00 | 0.00 | 0.00 | 64,734.08 | 0.00 | 114.92 | 0.00 | 64,811.58 |
| 11/19/2012 | Payment: Regular | 290.00 | 0.00 | 106.82 | 183.00 | 106.82 | 0.00 | 114.92 | 64,627.16 | 10.63 | 114.92 | 0.00 | 65,005.96 |
| 12/1/2012 | Escrow: Fee | 114.92 | 185.71 | 0.00 | 175.08 | 114.92 | 0.00 | 0.00 | 64,627.16 | 0.00 | 114.92 | 0.00 | 64,734.08 |
| 12/3/2012 | Payment: Regular | 290.00 | 172.45 | 0.00 | 188.00 | 0.00 | 0.00 | 114.92 | 64,627.16 | 0.00 | 114.92 | 0.00 | 64,744.71 |
| 12/17/2012 | Payment: Regular | 290.00 | 172.00 | 106.82 | 158.92 | 16.16 | 0.00 | 114.92 | 64,611.00 | 0.00 | 114.92 | 0.00 | 64,627.16 |
| 1/8/2013 | Payment: Regular | 290.00 | 0.00 | 16.16 | 158.92 | 16.16 | 0.00 | 114.92 | 64,611.00 | 0.00 | 114.92 | 0.00 | 64,274.00 |
| 1/14/2013 | Payment: Regular | 290.00 | 158.92 | 0.00 | 158.92 | 0.00 | 0.00 | 0.00 | 64,611.00 | 0.00 | 114.92 | 0.00 | 64,611.00 |
| 1/29/2013 | Payment: Regular | 290.00 | 0.00 | 104.64 | 185.36 | 104.64 | 0.00 | 114.92 | 64,506.36 | 0.00 | 114.92 | 0.00 | 64,508.36 |
| 2/1/2013 | Escrow: Fee | 114.92 | 185.36 | 0.00 | 185.36 | 0.00 | 0.00 | 114.92 | 64,506.36 | 9.98 | 114.92 | 0.00 | 64,621.28 |
| 2/11/2013 | Payment: Regular | 290.00 | 0.00 | 0.00 | 175.08 | 114.92 | 0.00 | 114.92 | 64,506.36 | 0.00 | 114.92 | 0.00 | 64,516.34 |
| 2/26/2013 | Payment: Regular | 290.00 | 185.06 | 0.00 | 175.08 | 195.04 | 0.00 | 0.00 | 64,411.40 | 0.00 | 114.92 | 0.00 | 64,411.40 |
| 3/1/2013 | Escrow: Fee | 114.92 | 0.00 | 94.96 | 195.04 | 0.00 | 0.00 | 114.92 | 64,411.40 | 0.00 | 114.92 | 0.00 | 64,411.40 |
| 3/12/2013 | Payment: Regular | 290.00 | 0.00 | 0.00 | 175.08 | 114.92 | 0.00 | 114.92 | 64,411.40 | 116.09 | 114.92 | 0.00 | 64,527.49 |
| 3/12/2013 | Payment: Regular | 290.00 | 291.17 | 0.00 | 175.08 | 114.92 | 0.00 | 0.00 | 64,316.90 | 0.00 | 114.92 | 0.00 | 64,340.06 |
| 3/25/2013 | Payment: Regular | 290.00 | 79.41 | 92.06 | 197.94 | 114.92 | 0.00 | 114.92 | 64,225.14 | 0.00 | 114.92 | 0.00 | 64,225.14 |
| 4/1/2013 | Escrow: Fee | 114.92 | 198.24 | 91.76 | 198.24 | 0.00 | 114.92 | 0.00 | 64,225.14 | 0.00 | 114.92 | 0.00 | 64,340.06 |
| 4/8/2013 | Payment: Regular | 290.00 | 171.56 | 3.52 | 171.56 | 0.00 | 0.00 | 0.00 | 64,221.62 | 0.00 | 114.92 | 0.00 | 64,225.14 |

Mazaska Complaint Exhibit 1 097

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

| Loan # | 10-█ | | Loan Date | 7/7/2010 | | **Loan Details** | | |
|---|---|---|---|---|---|---|---|---|
| Account Name | Montileaux, Lillian | | Maturity Date | 5/10/2021 | | Between 7/7/2010, 4/19/2021 | | |
| Loan Type | | Term | Interest Rate | 6.00 % | Fixed Rate | | | |
| Product | HCO | | | | | | | |

Borrower: Montileaux, Lillian Toni   [Work ██]   [Cell ██]

| Date | Action | Amount | Interest | Principal | Paid Interest | Paid Principal | Paid Fees | Paid Insurance | Out. Principal | Out. Interest | Out. Fees | Out. Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/25/2013 | Payment: Regular | 290.00 | 223.63 | 57.28 | 232.72 | 0.00 | 0.00 | 0.00 | 63,962.98 | 0.00 | 0.00 | 0.00 | 63,962.98 |
| 5/1/2013 | Escrow: Fee | 114.92 | 0.00 | 0.00 | 0.00 | 0.00 | 114.92 | 0.00 | 63,962.98 | 0.00 | 114.92 | 0.00 | 64,077.90 |
| 5/1/2013 | Payment: Regular | 290.00 | 157.72 | 17.36 | 157.72 | 0.00 | 114.92 | 0.00 | 63,945.62 | 0.00 | 0.00 | 0.00 | 63,945.62 |
| 5/7/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,945.62 | 77.91 | 0.00 | 151.75 | 64,023.53 |
| 6/4/2013 | Payment: Regular | 290.00 | 367.91 | 0.00 | 290.00 | 0.00 | 0.00 | 0.00 | 63,945.62 | 77.91 | 0.00 | 151.75 | 64,175.28 |
| 6/4/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,945.62 | 4.42 | 0.00 | 151.75 | 64,056.09 |
| 6/7/2013 | Payment: Regular | 290.00 | 170.81 | 138.25 | 138.25 | 0.00 | 151.75 | 0.00 | 63,945.62 | 4.42 | 0.00 | 151.75 | 63,950.04 |
| 6/17/2013 | Payment: Regular | 290.00 | 183.95 | 0.00 | 290.00 | 0.00 | 0.00 | 0.00 | 63,945.62 | 0.00 | 0.00 | 151.75 | 64,101.79 |
| 6/17/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,945.62 | 110.47 | 0.00 | 151.75 | 63,995.62 |
| 7/1/2013 | Payment: Regular | 290.00 | 197.09 | 55.93 | 138.25 | 0.00 | 151.75 | 0.00 | 63,889.69 | 4.42 | 0.00 | 151.75 | 64,000.88 |
| 7/1/2013 | Payment: Regular | 290.00 | 170.81 | 0.00 | 234.07 | 0.00 | 151.75 | 0.00 | 63,889.69 | 0.00 | 0.00 | 0.00 | 63,889.69 |
| 7/16/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,889.69 | 63.26 | 0.00 | 151.75 | 64,041.44 |
| 7/29/2013 | Payment: Regular | 290.00 | 223.18 | 0.00 | 138.25 | 0.00 | 151.75 | 0.00 | 63,889.69 | 0.00 | 0.00 | 151.75 | 63,974.62 |
| 8/7/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,889.69 | 0.00 | 0.00 | 151.75 | 63,889.69 |
| 8/15/2013 | Payment: Regular | 290.00 | 170.66 | 34.41 | 255.59 | 0.00 | 151.75 | 0.00 | 63,855.28 | 84.93 | 0.00 | 151.75 | 64,041.44 |
| 8/28/2013 | Payment: Regular | 290.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 63,855.28 | 0.00 | 0.00 | 0.00 | 63,855.28 |
| 9/7/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,855.28 | 45.44 | 0.00 | 151.75 | 63,900.72 |
| 9/11/2013 | Payment: Regular | 290.00 | 183.69 | 0.00 | 138.25 | 0.00 | 151.75 | 0.00 | 63,855.28 | 0.00 | 0.00 | 151.75 | 63,900.72 |
| 9/24/2013 | Payment: Regular | 290.00 | 170.57 | 73.99 | 216.01 | 0.00 | 151.75 | 0.00 | 63,781.29 | 0.00 | 0.00 | 151.75 | 63,781.29 |
| 10/7/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,781.29 | 58.34 | 0.00 | 151.75 | 63,933.04 |
| 10/9/2013 | Payment: Regular | 290.00 | 196.59 | 0.00 | 138.25 | 0.00 | 151.75 | 0.00 | 63,781.29 | 0.00 | 0.00 | 151.75 | 63,839.63 |
| 10/23/2013 | Payment: Regular | 290.00 | 183.48 | 48.18 | 241.82 | 0.00 | 151.75 | 0.00 | 63,733.11 | 48.18 | 0.00 | 151.75 | 63,733.11 |
| 10/31/2013 | Payment: Regular | 290.00 | 104.77 | 185.23 | 104.77 | 0.00 | 151.75 | 0.00 | 63,733.11 | 0.00 | 0.00 | 151.75 | 63,733.11 |
| 11/7/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,855.28 | 185.23 | 0.00 | 151.75 | 63,855.28 |
| 11/14/2013 | Payment: Regular | 290.00 | 182.81 | 0.00 | 154.25 | 0.00 | 151.75 | 0.00 | 63,547.88 | 0.00 | 0.00 | 151.75 | 63,699.63 |
| 11/25/2013 | Payment: Regular | 306.00 | 143.64 | 133.80 | 172.20 | 0.00 | 151.75 | 0.00 | 63,547.88 | 28.56 | 0.00 | 151.75 | 63,576.44 |
| 12/7/2013 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,547.88 | 67.26 | 0.00 | 151.75 | 63,414.08 |
| 12/27/2013 | Payment: Regular | 306.00 | 221.51 | 156.00 | 150.00 | 0.00 | 151.75 | 0.00 | 63,414.08 | 0.00 | 0.00 | 151.75 | 63,485.34 |
| 12/28/2013 | Payment: Regular | 306.00 | 181.42 | 249.68 | 249.68 | 0.00 | 151.75 | 0.00 | 63,357.76 | 0.00 | 0.00 | 151.75 | 63,357.76 |
| 1/7/2014 | Escrow: Fee | 306.00 | 0.00 | 56.32 | 56.32 | 0.00 | 151.75 | 0.00 | 63,357.76 | 58.34 | 0.00 | 151.75 | 63,509.51 |
| 1/9/2014 | Payment: Regular | 306.00 | 182.26 | 0.00 | 154.25 | 0.00 | 151.75 | 0.00 | 63,357.76 | 28.01 | 0.00 | 151.75 | 63,385.77 |
| 1/23/2014 | Payment: Regular | 306.00 | 182.26 | 95.73 | 210.27 | 0.00 | 151.75 | 0.00 | 63,262.03 | 0.00 | 0.00 | 151.75 | 63,262.03 |
| 2/6/2014 | Payment: Regular | 306.00 | 181.99 | 124.01 | 181.99 | 0.00 | 151.75 | 0.00 | 63,138.02 | 0.00 | 0.00 | 151.75 | 63,138.02 |
| 2/7/2014 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,138.02 | 27.38 | 0.00 | 151.75 | 63,165.40 |
| 2/20/2014 | Payment: Regular | 306.00 | 181.63 | 0.00 | 154.25 | 0.00 | 151.75 | 0.00 | 63,041.03 | 0.00 | 0.00 | 151.75 | 63,041.03 |
| 3/6/2014 | Payment: Regular | 306.00 | 181.63 | 0.00 | 209.01 | 0.00 | 151.75 | 0.00 | 63,041.03 | 27.10 | 0.00 | 151.75 | 63,192.78 |
| 3/7/2014 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 63,041.03 | 0.00 | 0.00 | 151.75 | 63,064.03 |
| 3/20/2014 | Payment: Regular | 306.00 | 181.35 | 97.55 | 154.25 | 0.00 | 151.75 | 0.00 | 62,943.48 | 0.00 | 0.00 | 151.75 | 63,086.13 |
| 4/3/2014 | Payment: Regular | 306.00 | 181.35 | 0.00 | 208.45 | 0.00 | 151.75 | 0.00 | 62,943.48 | 0.00 | 0.00 | 151.75 | 63,095.23 |
| 4/7/2014 | Escrow: Fee | 306.00 | 181.35 | 0.00 | 154.25 | 0.00 | 151.75 | 0.00 | 62,943.48 | 0.00 | 0.00 | 151.75 | 62,943.48 |
| 4/17/2014 | Payment: Regular | 306.00 | 181.07 | 0.00 | 154.25 | 0.00 | 151.75 | 0.00 | 62,970.30 | 26.82 | 0.00 | 0.00 | 62,970.30 |
| 5/1/2014 | Payment: Regular | 306.00 | 181.07 | 98.11 | 207.89 | 0.00 | 151.75 | 0.00 | 62,845.37 | 0.00 | 0.00 | 0.00 | 62,845.37 |
| 5/7/2014 | Escrow: Fee | 151.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 151.75 | 62,845.37 | 0.00 | 0.00 | 151.75 | 62,997.12 |

Mazaska Complaint Exhibit 1 098

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

## Loan Details
### Between 7/7/2010, 4/19/2021

| Loan # | 10-0 |
| --- | --- |
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |

| Term | |
| --- | --- |
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |

Borrower: Montileaux, Lillian Toni

| Date | Action | Amount | Paid Interest | Paid Principal | Paid Interest | Paid Fees | Paid Insurance | Out. Principal | Out. Interest | Out. Fees | Out. Insurance | Total Balance |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 5/15/2014 | Payment: Regular | 306.00 | 180.79 | 0.00 | 164.25 | 151.75 | 0.00 | 62,845.37 | 26.54 | 0.00 | 0.00 | 62,871.91 |
| 5/29/2014 | Payment: Regular | 306.00 | 180.79 | 98.67 | 207.33 | 0.00 | 0.00 | 62,746.70 | 0.00 | 0.00 | 0.00 | 62,746.70 |
| 5/29/2014 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 62,746.70 | 0.00 | 165.00 | 0.00 | 62,911.70 |
| 6/12/2014 | Payment: Regular | 306.00 | 180.50 | 141.00 | 165.00 | 0.00 | 0.00 | 62,746.70 | 0.00 | 39.50 | 0.00 | 62,786.20 |
| 6/12/2014 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 165.00 | 0.00 | 0.00 | 62,660.70 | 0.00 | 0.00 | 165.00 | 62,660.70 |
| 6/26/2014 | Payment: Regular | 306.00 | 180.50 | 86.00 | 220.00 | 0.00 | 0.00 | 62,660.70 | 0.00 | 32.26 | 0.00 | 62,825.70 |
| 6/26/2014 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 62,660.70 | 0.00 | 165.00 | 0.00 | 62,692.96 |
| 7/8/2014 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 62,660.70 | 0.00 | 165.00 | 0.00 | 62,560.22 |
| 7/10/2014 | Payment: Regular | 313.00 | 180.26 | 100.48 | 148.00 | 0.00 | 0.00 | 62,560.22 | 0.00 | 0.00 | 0.00 | 62,560.22 |
| 7/24/2014 | Payment: Regular | 313.00 | 180.26 | 212.52 | 0.00 | 0.00 | 0.00 | 62,427.19 | 0.00 | 0.00 | 0.00 | 62,427.19 |
| 8/7/2014 | Payment: Regular | 313.00 | 179.97 | 133.03 | 179.97 | 0.00 | 0.00 | 62,427.19 | 0.00 | 0.00 | 0.00 | 62,427.19 |
| 8/8/2014 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 62,427.19 | 0.00 | 165.00 | 0.00 | 62,592.19 |
| 8/21/2014 | Payment: Regular | 313.00 | 179.59 | 0.00 | 148.00 | 0.00 | 0.00 | 62,427.19 | 31.59 | 0.00 | 0.00 | 62,458.78 |
| 9/4/2014 | Payment: Regular | 313.00 | 179.59 | 101.82 | 211.18 | 0.00 | 0.00 | 62,325.37 | 0.00 | 0.00 | 0.00 | 62,325.37 |
| 9/8/2014 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 62,325.37 | 0.00 | 165.00 | 0.00 | 62,490.37 |
| 9/18/2014 | Payment: Regular | 313.00 | 179.29 | 0.00 | 148.00 | 0.00 | 0.00 | 62,325.37 | 31.29 | 0.00 | 0.00 | 62,356.66 |
| 10/2/2014 | Payment: Regular | 313.00 | 179.29 | 102.42 | 210.58 | 0.00 | 0.00 | 62,222.95 | 0.00 | 0.00 | 0.00 | 62,222.95 |
| 10/8/2014 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 62,222.95 | 0.00 | 165.00 | 0.00 | 62,387.95 |
| 10/16/2014 | Payment: Regular | 313.00 | 179.00 | 0.00 | 148.00 | 0.00 | 0.00 | 62,222.95 | 31.00 | 0.00 | 0.00 | 62,253.95 |
| 10/30/2014 | Payment: Regular | 313.00 | 179.00 | 103.00 | 210.00 | 0.00 | 0.00 | 62,119.95 | 0.00 | 0.00 | 0.00 | 62,119.95 |
| 11/8/2014 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 62,119.95 | 0.00 | 165.00 | 0.00 | 62,284.95 |
| 11/13/2014 | Payment: Regular | 313.00 | 178.70 | 0.00 | 148.00 | 0.00 | 0.00 | 62,119.95 | 30.70 | 0.00 | 0.00 | 62,150.65 |
| 11/27/2014 | Payment: Regular | 313.00 | 178.70 | 103.60 | 209.40 | 0.00 | 0.00 | 62,016.35 | 0.00 | 0.00 | 0.00 | 62,016.35 |
| 12/15/2014 | Payment: Regular | 313.00 | 178.40 | 0.00 | 18.00 | 165.00 | 0.00 | 62,016.35 | 30.40 | 165.00 | 0.00 | 62,181.35 |
| 12/31/2014 | Payment: Regular | 313.00 | 178.40 | 104.20 | 208.80 | 0.00 | 0.00 | 61,912.15 | 0.00 | 0.00 | 0.00 | 62,046.75 |
| 1/8/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 61,912.15 | 0.00 | 165.00 | 0.00 | 61,912.15 |
| 1/8/2015 | Payment: Regular | 313.00 | 178.10 | 0.00 | 148.00 | 0.00 | 0.00 | 61,912.15 | 30.10 | 0.00 | 0.00 | 61,942.25 |
| 1/22/2015 | Payment: Regular | 313.00 | 178.10 | 104.80 | 208.20 | 0.00 | 0.00 | 61,807.35 | 0.00 | 0.00 | 0.00 | 61,807.35 |
| 2/5/2015 | Payment: Regular | 313.00 | 177.80 | 135.20 | 177.80 | 0.00 | 0.00 | 61,672.15 | 0.00 | 0.00 | 0.00 | 61,972.35 |
| 2/19/2015 | Payment: Regular | 313.00 | 177.80 | 0.00 | 148.00 | 165.00 | 0.00 | 61,672.15 | 0.00 | 165.00 | 0.00 | 61,672.15 |
| 3/5/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 61,672.15 | 29.41 | 165.00 | 0.00 | 61,701.56 |
| 3/8/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 61,672.15 | 0.00 | 165.00 | 0.00 | 61,565.97 |
| 3/19/2015 | Payment: Regular | 313.00 | 177.41 | 0.00 | 148.00 | 0.00 | 0.00 | 61,565.97 | 29.41 | 0.00 | 0.00 | 61,565.97 |
| 4/2/2015 | Payment: Regular | 313.00 | 177.41 | 106.18 | 206.82 | 0.00 | 0.00 | 61,459.19 | 0.00 | 0.00 | 0.00 | 61,730.97 |
| 4/8/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 61,459.19 | 29.11 | 165.00 | 0.00 | 61,565.97 |
| 4/16/2015 | Payment: Regular | 313.00 | 176.78 | 0.00 | 106.78 | 165.00 | 0.00 | 61,459.19 | 0.00 | 165.00 | 0.00 | 59,508.00 |
| 4/30/2015 | Payment: Regular | 313.00 | 176.80 | 0.00 | 208.22 | 0.00 | 0.00 | 61,459.19 | 28.80 | 0.00 | 0.00 | 61,624.19 |
| 5/8/2015 | Escrow: Fee | 165.00 | 0.00 | 107.40 | 148.00 | 165.00 | 0.00 | 61,459.19 | 0.00 | 165.00 | 0.00 | 61,487.99 |
| 5/11/2015 | Payment: Regular | 313.00 | 176.80 | 205.60 | 0.00 | 0.00 | 0.00 | 61,351.79 | 0.00 | 0.00 | 0.00 | 61,807.25 |
| 5/28/2015 | Payment: Regular | 138.67 | 0.00 | 9.33 | 214.28 | 165.00 | 0.00 | 61,342.46 | 0.00 | 165.00 | 0.00 | 61,516.79 |
| 5/28/2015 | Payment: Regular | 313.00 | 214.28 | 98.72 | 214.28 | 0.00 | 0.00 | 61,243.74 | 0.00 | 0.00 | 0.00 | 61,243.74 |

4/19/2021 4:20:51 PM

Mazaska Complaint Exhibit 1
099

**Mazaska Owecaso Otipi Financial Inc.**
P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

| | |
|---|---|
| Loan # | 10-0■■ |
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |
| Term | |

## Loan Details
### Between 7/7/2010, 4/19/2021

Borrower: Montileaux, Lillian Toni   Work ■■  Cell ■■

| Date | Action | Amount | Paid | | | | | Outstanding | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Interest | Principal | Interest | Fees | Insurance | Principal | Interest | Fees | Insurance | Total Balance |
| 6/8/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 61,243.74 | 0.00 | 165.00 | 0.00 | 61,408.74 |
| 6/8/2015 | Payment: Regular | 313.00 | 138.43 | 9.57 | 138.43 | 0.00 | 0.00 | 61,234.17 | 0.00 | 0.00 | 0.00 | 61,234.17 |
| 6/22/2015 | Payment: Regular | 313.00 | 136.15 | 136.85 | 136.15 | 0.00 | 0.00 | 61,097.32 | 0.00 | 0.00 | 0.00 | 61,097.32 |
| 7/6/2015 | Payment: Regular | 313.00 | 175.76 | 137.24 | 175.76 | 0.00 | 0.00 | 60,960.08 | 0.00 | 0.00 | 0.00 | 60,960.08 |
| 7/10/2015 | Payment: Regular | 313.00 | 137.79 | 175.21 | 137.79 | 0.00 | 0.00 | 60,784.87 | 0.00 | 0.00 | 0.00 | 60,784.87 |
| 7/17/2015 | Payment: Regular | 313.00 | 212.33 | 100.67 | 212.33 | 0.00 | 0.00 | 60,684.20 | 0.00 | 0.00 | 0.00 | 60,684.20 |
| 8/3/2015 | Payment: Regular | 313.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,684.20 | 28.57 | 0.00 | 0.00 | 60,684.20 |
| 8/8/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 60,684.20 | 0.00 | 165.00 | 0.00 | 60,849.20 |
| 8/8/2015 | Payment: Regular | 313.00 | 174.57 | 148.00 | 174.57 | 0.00 | 0.00 | 60,684.20 | 0.00 | 0.00 | 0.00 | 60,849.20 |
| 8/17/2015 | Payment: Regular | 313.00 | 174.57 | 111.86 | 201.14 | 0.00 | 0.00 | 60,572.34 | 0.00 | 0.00 | 0.00 | 60,710.77 |
| 8/31/2015 | Payment: Regular | 313.00 | 174.25 | 138.75 | 174.25 | 0.00 | 0.00 | 60,433.59 | 0.00 | 0.00 | 0.00 | 60,572.34 |
| 9/14/2015 | Payment: Regular | 313.00 | 0.00 | 139.15 | 0.00 | 0.00 | 0.00 | 60,294.44 | 0.00 | 0.00 | 0.00 | 60,433.59 |
| 9/28/2015 | Payment: Regular | 313.00 | 173.85 | 11.72 | 173.85 | 0.00 | 0.00 | 60,294.44 | 0.00 | 0.00 | 0.00 | 60,294.44 |
| 10/8/2015 | Escrow: Fee | 165.00 | 0.00 | 102.42 | 0.00 | 165.00 | 0.00 | 60,282.72 | 0.00 | 165.00 | 0.00 | 60,459.44 |
| 10/8/2015 | Payment: Regular | 313.00 | 136.28 | 0.00 | 136.28 | 0.00 | 0.00 | 60,282.72 | 0.00 | 0.00 | 0.00 | 60,282.72 |
| 10/9/2015 | Payment: Regular | 313.00 | 210.58 | 77.66 | 210.58 | 0.00 | 0.00 | 60,180.30 | 0.00 | 0.00 | 0.00 | 60,180.30 |
| 10/26/2015 | Payment: Regular | 313.00 | 0.00 | 235.34 | 0.00 | 0.00 | 0.00 | 60,180.30 | 0.00 | 0.00 | 0.00 | 60,345.30 |
| 11/9/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 60,345.30 | 0.00 | 165.00 | 0.00 | 60,205.42 |
| 11/9/2015 | Payment: Regular | 313.00 | 173.12 | 0.00 | 0.00 | 0.00 | 0.00 | 60,205.42 | 0.00 | 0.00 | 0.00 | 60,205.42 |
| 11/26/2015 | Payment: Regular | 313.00 | 210.22 | 0.00 | 0.00 | 0.00 | 0.00 | 60,152.04 | 0.00 | 0.00 | 0.00 | 60,152.04 |
| 11/30/2015 | Interest | 49.40 | 49.40 | 0.00 | 0.00 | 0.00 | 0.00 | 60,102.64 | 49.40 | 0.00 | 0.00 | 60,152.04 |
| 12/8/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 60,102.64 | 0.20 | 165.00 | 0.00 | 60,317.04 |
| 12/8/2015 | Payment: Regular | 313.00 | 136.28 | 148.00 | 136.28 | 0.00 | 0.00 | 60,102.64 | 0.00 | 0.00 | 0.00 | 60,102.64 |
| 12/24/2015 | Escrow: Fee | 165.00 | 0.00 | 0.00 | 0.00 | 165.00 | 0.00 | 60,317.04 | 49.40 | 165.00 | 0.00 | 60,102.64 |
| 12/24/2015 | Payment: Regular | 313.00 | 210.58 | 0.00 | 210.58 | 0.00 | 0.00 | 60,102.64 | 0.20 | 0.00 | 0.00 | 60,267.84 |
| 1/5/2016 | Escrow: Fee | 165.00 | 0.00 | 148.00 | 148.00 | 165.00 | 0.00 | 60,267.84 | 0.00 | 165.00 | 0.00 | 60,152.44 |
| 1/5/2016 | Payment: Regular | 313.00 | 147.79 | 115.41 | 197.59 | 0.00 | 0.00 | 60,152.44 | 49.80 | 0.00 | 0.00 | 59,987.23 |
| 1/19/2016 | Escrow: Fee | 59.08 | 0.00 | 0.00 | 0.00 | 59.08 | 0.00 | 59,987.23 | 0.20 | 59.08 | 0.00 | 59,987.23 |
| 1/19/2016 | Payment: Regular | 313.00 | 172.09 | 81.83 | 172.09 | 0.00 | 0.00 | 59,987.23 | 0.00 | 0.00 | 0.00 | 60,046.31 |
| 2/4/2016 | Payment: Regular | 313.00 | 196.41 | 116.69 | 196.41 | 0.00 | 0.00 | 59,046.31 | 0.00 | 0.00 | 0.00 | 59,795.40 |
| 2/8/2016 | Escrow: Fee | 59.08 | 0.00 | 0.00 | 0.00 | 59.08 | 0.00 | 59,795.40 | 0.00 | 59.08 | 0.00 | 59,795.40 |
| 2/8/2016 | Payment: Regular | 313.00 | 172.09 | 0.00 | 172.09 | 0.00 | 0.00 | 59,795.40 | 25.12 | 0.00 | 0.00 | 59,848.81 |
| 3/3/2016 | Payment: Regular | 313.00 | 171.53 | 82.39 | 171.53 | 0.00 | 0.00 | 59,848.81 | 0.00 | 0.00 | 0.00 | 59,848.81 |
| 3/8/2016 | Payment: Regular | 313.00 | 171.53 | 141.71 | 171.53 | 0.00 | 0.00 | 59,706.42 | 0.00 | 0.00 | 0.00 | 59,706.42 |
| 3/17/2016 | Escrow: Fee | 59.08 | 0.00 | 171.29 | 171.29 | 59.08 | 0.00 | 59,564.71 | 0.00 | 59.08 | 0.00 | 59,564.71 |
| 3/17/2016 | Payment: Regular | 313.00 | 171.29 | 0.00 | 0.00 | 0.00 | 0.00 | 59,564.71 | 0.00 | 0.00 | 0.00 | 59,623.79 |
| 3/18/2016 | Payment: Regular | 313.00 | 170.88 | 83.04 | 170.88 | 59.08 | 0.00 | 59,481.67 | 0.00 | 59.08 | 0.00 | 59,481.67 |
| 3/31/2016 | Escrow: Fee | 59.08 | 0.00 | 170.88 | 170.88 | 0.00 | 0.00 | 59,481.67 | 0.00 | 0.00 | 0.00 | 59,540.75 |
| 3/31/2016 | Payment: Regular | 313.00 | 170.88 | 83.28 | 170.88 | 59.08 | 0.00 | 59,481.67 | 0.00 | 59.08 | 0.00 | 59,481.67 |
| 4/1/2016 | Payment: Regular | 313.00 | 170.64 | 170.64 | 170.64 | 0.00 | 0.00 | 59,540.75 | 0.00 | 0.00 | 0.00 | 59,540.75 |
| 4/14/2016 | Payment: Regular | 313.00 | 0.00 | 83.51 | 0.00 | 59.08 | 0.00 | 59,457.47 | 0.00 | 59.08 | 0.00 | 59,457.47 |
| 4/15/2016 | Payment: Regular | 313.00 | 170.41 | 170.41 | 170.41 | 0.00 | 0.00 | 59,314.88 | 0.00 | 0.00 | 0.00 | 59,314.88 |
| 4/28/2016 | Payment: Regular | 313.00 | 170.17 | 83.75 | 170.17 | 0.00 | 0.00 | 59,373.96 | 0.00 | 0.00 | 0.00 | 59,373.96 |
| 5/1/2016 | Escrow: Fee | 59.08 | 0.00 | 0.00 | 0.00 | 59.08 | 0.00 | 59,231.13 | 0.00 | 59.08 | 0.00 | 59,231.13 |
| 5/1/2016 | Payment: Regular | 313.00 | 170.17 | 170.17 | 170.17 | 0.00 | 0.00 | 59,231.13 | 0.00 | 0.00 | 0.00 | 59,290.21 |
| 5/10/2016 | Interest | 145.65 | 145.65 | 0.00 | 0.00 | 0.00 | 0.00 | 59,290.21 | 145.65 | 0.00 | 0.00 | 59,435.86 |
| 5/12/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 59,435.86 | 145.65 | 89.65 | 0.00 | 59,466.43 |

4/19/2021 4:20:51 PM

Mazaska Complaint Exhibit 1 100

# Mazaska Owecaso Otipi Financial, Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

| | |
|---|---|
| Loan # | 10-0 |
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |

## Loan Details
Between 7/7/2010, 4/19/2021

Borrower: Montileaux, Lillian Toni

Work Cell ▮

| Date | Action | Amount | Paid Interest | Paid Principal | Paid Interest | Paid Fees | Paid Insurance | Outstanding Principal | Outstanding Interest | Outstanding Fees | Outstanding Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/12/2016 | Payment: Regular | 313.00 | 19.42 | 58.28 | 165.07 | 89.65 | 0.00 | 59,172.85 | 0.00 | 0.00 | 0.00 | 59,172.85 |
| 5/26/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 59,172.85 | 0.00 | 30.57 | 0.00 | 59,203.42 |
| 5/26/2016 | Payment: Regular | 313.00 | 135.61 | 146.62 | 0.00 | 30.57 | 0.00 | 59,026.23 | 0.00 | 0.00 | 0.00 | 59,026.23 |
| 6/9/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 59,026.23 | 0.00 | 30.57 | 0.00 | 59,056.80 |
| 6/9/2016 | Payment: Regular | 313.00 | 135.47 | 146.96 | 0.00 | 30.57 | 0.00 | 58,879.27 | 0.00 | 0.00 | 0.00 | 58,879.27 |
| 6/23/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 58,879.27 | 0.00 | 30.57 | 0.00 | 58,909.84 |
| 6/23/2016 | Payment: Regular | 313.00 | 135.13 | 147.30 | 0.00 | 30.57 | 0.00 | 58,731.97 | 0.00 | 0.00 | 0.00 | 58,731.97 |
| 7/7/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 58,731.97 | 0.00 | 30.57 | 0.00 | 58,762.54 |
| 7/7/2016 | Payment: Regular | 313.00 | 134.79 | 147.64 | 0.00 | 30.57 | 0.00 | 58,584.33 | 0.00 | 0.00 | 0.00 | 58,584.33 |
| 7/21/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 58,584.33 | 0.00 | 30.57 | 0.00 | 58,614.90 |
| 7/21/2016 | Payment: Regular | 313.00 | 134.46 | 147.97 | 0.00 | 30.57 | 0.00 | 58,436.36 | 0.00 | 0.00 | 0.00 | 58,436.36 |
| 8/4/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 58,436.36 | 0.00 | 30.57 | 0.00 | 58,466.93 |
| 8/4/2016 | Payment: Regular | 313.00 | 134.12 | 148.31 | 0.00 | 30.57 | 0.00 | 58,288.05 | 0.00 | 0.00 | 0.00 | 58,288.05 |
| 8/18/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 58,288.05 | 0.00 | 30.57 | 0.00 | 58,318.62 |
| 8/18/2016 | Payment: Regular | 313.00 | 133.78 | 148.65 | 0.00 | 30.57 | 0.00 | 58,139.40 | 0.00 | 0.00 | 0.00 | 58,139.40 |
| 8/31/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 58,139.40 | 0.00 | 30.57 | 0.00 | 58,169.97 |
| 8/31/2016 | Payment: Regular | 313.00 | 123.90 | 158.53 | 0.00 | 30.57 | 0.00 | 57,980.87 | 0.00 | 0.00 | 0.00 | 57,980.87 |
| 9/15/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,980.87 | 0.00 | 30.57 | 0.00 | 58,011.44 |
| 9/15/2016 | Payment: Regular | 313.00 | 142.58 | 139.85 | 0.00 | 30.57 | 0.00 | 57,841.02 | 0.00 | 0.00 | 0.00 | 57,841.02 |
| 9/29/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,841.02 | 0.00 | 30.57 | 0.00 | 57,871.59 |
| 9/29/2016 | Payment: Regular | 313.00 | 132.75 | 149.68 | 0.00 | 30.57 | 0.00 | 57,691.34 | 0.00 | 0.00 | 0.00 | 57,691.34 |
| 10/13/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,691.34 | 0.00 | 30.57 | 0.00 | 57,721.91 |
| 10/13/2016 | Payment: Regular | 313.00 | 132.41 | 150.02 | 0.00 | 30.57 | 0.00 | 57,541.32 | 0.00 | 0.00 | 0.00 | 57,541.32 |
| 10/27/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,541.32 | 0.00 | 30.57 | 0.00 | 57,571.89 |
| 10/27/2016 | Payment: Regular | 313.00 | 132.06 | 150.37 | 0.00 | 30.57 | 0.00 | 57,390.95 | 0.00 | 0.00 | 0.00 | 57,390.95 |
| 11/10/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,390.95 | 0.00 | 30.57 | 0.00 | 57,421.52 |
| 11/10/2016 | Payment: Regular | 313.00 | 131.72 | 150.71 | 0.00 | 30.57 | 0.00 | 57,240.24 | 0.00 | 0.00 | 0.00 | 57,240.24 |
| 11/24/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,240.24 | 0.00 | 30.57 | 0.00 | 57,270.81 |
| 11/24/2016 | Payment: Regular | 313.00 | 131.37 | 151.06 | 0.00 | 30.57 | 0.00 | 57,089.18 | 0.00 | 0.00 | 0.00 | 57,089.18 |
| 12/8/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57,089.18 | 0.00 | 30.57 | 0.00 | 57,119.75 |
| 12/8/2016 | Payment: Regular | 313.00 | 131.02 | 151.41 | 0.00 | 30.57 | 0.00 | 56,937.77 | 0.00 | 0.00 | 0.00 | 56,937.77 |
| 12/22/2016 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56,937.77 | 0.00 | 30.57 | 0.00 | 56,968.34 |
| 12/22/2016 | Payment: Regular | 313.00 | 130.68 | 151.75 | 0.00 | 30.57 | 0.00 | 56,786.02 | 0.00 | 0.00 | 0.00 | 56,786.02 |
| 1/5/2017 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56,786.02 | 0.00 | 30.57 | 0.00 | 56,816.59 |
| 1/5/2017 | Payment: Regular | 313.00 | 130.69 | 151.74 | 0.00 | 30.57 | 0.00 | 56,634.28 | 0.00 | 0.00 | 0.00 | 56,634.28 |
| 1/19/2017 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56,634.28 | 0.00 | 30.57 | 0.00 | 56,664.85 |
| 1/19/2017 | Payment: Regular | 313.00 | 130.34 | 152.09 | 0.00 | 30.57 | 0.00 | 56,482.19 | 0.00 | 0.00 | 0.00 | 56,482.19 |
| 2/2/2017 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56,482.19 | 0.00 | 30.57 | 0.00 | 56,512.76 |
| 2/2/2017 | Payment: Regular | 313.00 | 129.99 | 152.44 | 0.00 | 30.57 | 0.00 | 56,329.75 | 0.00 | 0.00 | 0.00 | 56,329.75 |
| 2/16/2017 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56,329.75 | 0.00 | 30.57 | 0.00 | 56,360.32 |

4/19/2021 4:20:51 PM

Mazaska Complaint Exhibit 1
101

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

| | |
|---|---|
| Loan # | 10-0■■■ |
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |
| Term | |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %  Fixed Rate |

## Loan Details
### Between 7/7/2010, 4/19/2021

Borrower: Montileaux, Lillian Toni

Work / Cell: ■■■■■

| Date | Action | Amount | Paid Interest | Paid Principal | Paid Fees | Paid Insurance | Outstanding Principal | Outstanding Interest | Outstanding Fees | Outstanding Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/16/2017 | Payment Regular | 313.00 | 129.64 | 152.79 | 30.57 | 0.00 | 56,176.96 | 0.00 | 0.00 | 0.00 | 56,176.96 |
| 3/2/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 56,176.96 | 0.00 | 30.57 | 0.00 | 56,207.53 |
| 3/2/2017 | Payment Regular | 313.00 | 129.28 | 153.15 | 30.57 | 0.00 | 56,023.81 | 0.00 | 0.00 | 0.00 | 56,023.81 |
| 3/16/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 56,023.81 | 0.00 | 30.57 | 0.00 | 56,054.38 |
| 3/16/2017 | Payment Regular | 313.00 | 128.93 | 153.50 | 30.57 | 0.00 | 55,870.31 | 0.00 | 0.00 | 0.00 | 55,870.31 |
| 3/16/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 55,870.31 | 0.00 | 30.57 | 0.00 | 55,900.88 |
| 3/30/2017 | Payment Regular | 313.00 | 128.58 | 153.85 | 30.57 | 0.00 | 55,716.46 | 0.00 | 0.00 | 0.00 | 55,716.46 |
| 3/30/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 55,716.46 | 0.00 | 30.57 | 0.00 | 55,747.03 |
| 3/30/2017 | Payment Regular | 313.00 | 128.22 | 154.21 | 30.57 | 0.00 | 55,562.25 | 0.00 | 0.00 | 0.00 | 55,562.25 |
| 4/13/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 55,562.25 | 0.00 | 30.57 | 0.00 | 55,592.82 |
| 4/13/2017 | Payment Regular | 313.00 | 127.87 | 154.56 | 30.57 | 0.00 | 55,407.69 | 0.00 | 0.00 | 0.00 | 55,407.69 |
| 4/27/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 55,407.69 | 0.00 | 30.57 | 0.00 | 55,438.26 |
| 4/27/2017 | Payment Regular | 313.00 | 127.51 | 154.92 | 30.57 | 0.00 | 55,252.77 | 0.00 | 0.00 | 0.00 | 55,252.77 |
| 4/27/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 55,252.77 | 0.00 | 30.57 | 0.00 | 55,283.34 |
| 5/11/2017 | Payment Regular | 184.34 | 127.16 | 26.61 | 30.57 | 0.00 | 55,226.16 | 0.00 | 0.00 | 0.00 | 55,226.16 |
| 5/25/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 55,226.16 | 0.00 | 30.57 | 0.00 | 55,256.73 |
| 5/25/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 55,226.16 | 0.00 | 61.14 | 0.00 | 55,287.30 |
| 6/22/2017 | Payment Regular | 561.67 | 254.19 | 246.34 | 61.14 | 0.00 | 54,979.82 | 0.00 | 0.00 | 0.00 | 54,979.82 |
| 6/22/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 54,979.82 | 0.00 | 30.57 | 0.00 | 55,010.39 |
| 7/6/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 54,979.82 | 0.00 | 61.14 | 0.00 | 55,040.96 |
| 7/6/2017 | Payment Regular | 561.67 | 126.53 | 404.57 | 30.57 | 0.00 | 54,575.25 | 0.00 | 30.57 | 0.00 | 54,605.82 |
| 7/20/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 54,575.25 | 0.00 | 61.14 | 0.00 | 54,636.39 |
| 7/20/2017 | Payment Regular | 313.00 | 125.60 | 156.83 | 30.57 | 0.00 | 54,418.42 | 0.00 | 30.57 | 0.00 | 54,448.99 |
| 8/3/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 54,418.42 | 0.00 | 61.14 | 0.00 | 54,281.23 |
| 8/3/2017 | Payment Regular | 313.00 | 125.24 | 157.19 | 30.57 | 0.00 | 54,261.23 | 0.00 | 30.57 | 0.00 | 54,261.23 |
| 8/17/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 54,261.23 | 0.00 | 61.14 | 0.00 | 54,131.60 |
| 8/17/2017 | Payment Regular | 313.00 | 124.88 | 157.55 | 30.57 | 0.00 | 54,103.68 | 0.00 | 30.57 | 0.00 | 54,134.26 |
| 8/31/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 54,103.68 | 0.00 | 61.14 | 0.00 | 53,945.76 |
| 8/31/2017 | Payment Regular | 313.00 | 124.51 | 157.92 | 30.57 | 0.00 | 53,945.76 | 0.00 | 30.57 | 0.00 | 53,976.33 |
| 9/14/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 53,945.76 | 0.00 | 30.57 | 0.00 | 53,945.76 |
| 9/14/2017 | Payment Regular | 313.00 | 124.15 | 158.28 | 30.57 | 0.00 | 53,787.48 | 0.00 | 30.57 | 0.00 | 53,787.48 |
| 9/28/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 53,787.48 | 0.00 | 30.57 | 0.00 | 53,818.05 |
| 9/28/2017 | Payment Regular | 313.00 | 123.78 | 158.65 | 30.57 | 0.00 | 53,628.83 | 0.00 | 30.57 | 0.00 | 53,628.83 |
| 9/28/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 53,628.83 | 0.00 | 30.57 | 0.00 | 53,659.40 |
| 10/12/2017 | Payment Regular | 313.00 | 123.42 | 159.01 | 30.57 | 0.00 | 53,469.82 | 0.00 | 30.57 | 0.00 | 53,469.82 |
| 10/12/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 53,469.82 | 0.00 | 30.57 | 0.00 | 53,500.39 |
| 10/26/2017 | Payment Regular | 313.00 | 123.05 | 159.38 | 30.57 | 0.00 | 53,310.44 | 0.00 | 30.57 | 0.00 | 53,310.44 |
| 10/26/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 53,310.44 | 0.00 | 30.57 | 0.00 | 53,310.44 |
| 11/9/2017 | Payment Regular | 313.00 | 122.69 | 159.74 | 30.57 | 0.00 | 53,150.70 | 0.00 | 30.57 | 0.00 | 53,181.27 |
| 11/9/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 53,150.70 | 0.00 | 30.57 | 0.00 | 53,150.70 |
| 11/9/2017 | Payment Regular | 313.00 | 122.69 | 159.74 | 30.57 | 0.00 | 53,150.70 | 0.00 | 0.00 | 0.00 | 53,150.70 |
| 11/23/2017 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 53,150.70 | 0.00 | 30.57 | 0.00 | 53,181.27 |
| 11/23/2017 | Payment Regular | 313.00 | 122.32 | 160.11 | 30.57 | 0.00 | 52,990.59 | 0.00 | 0.00 | 0.00 | 52,990.59 |

4/19/2021 4:20:51 PM

Mazaska Complaint Exhibit 1
102

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

## Loan Details
Between 7/7/2010, 4/19/2021

| | |
|---|---|
| Loan # | 10-0[redacted] |
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %  Fixed Rate |

| | |
|---|---|
| Borrower | Montileaux, Lillian Toni |
| Work Cell | [redacted] |

| Date | Action | Amount | Interest | Principal | Paid Interest | Paid Fees | Paid Insurance | Outstanding Principal | Outstanding Interest | Outstanding Fees | Outstanding Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/7/2017 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 52,990.59 | 0.00 | 30.57 | 0.00 | 53,021.16 |
| 12/7/2017 | Payment: Regular | 313.00 | 121.95 | 160.48 | 121.95 | 30.57 | 0.00 | 52,830.11 | 0.00 | 0.00 | 0.00 | 52,830.11 |
| 12/21/2017 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 52,830.11 | 0.00 | 30.57 | 0.00 | 52,860.68 |
| 12/21/2017 | Payment: Regular | 313.00 | 121.58 | 160.85 | 121.58 | 30.57 | 0.00 | 52,669.26 | 0.00 | 0.00 | 0.00 | 52,669.26 |
| 1/4/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 52,669.26 | 0.00 | 30.57 | 0.00 | 52,699.83 |
| 1/4/2018 | Payment: Regular | 313.00 | 121.21 | 161.22 | 121.21 | 30.57 | 0.00 | 52,508.04 | 0.00 | 0.00 | 0.00 | 52,508.04 |
| 1/18/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 52,508.04 | 0.00 | 30.57 | 0.00 | 52,538.61 |
| 1/18/2018 | Payment: Regular | 313.00 | 120.84 | 161.59 | 120.84 | 30.57 | 0.00 | 52,346.45 | 0.00 | 0.00 | 0.00 | 52,346.45 |
| 2/1/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 52,346.45 | 0.00 | 30.57 | 0.00 | 52,377.02 |
| 2/1/2018 | Payment: Regular | 313.00 | 120.47 | 161.96 | 120.47 | 30.57 | 0.00 | 52,184.49 | 0.00 | 0.00 | 0.00 | 52,184.49 |
| 2/15/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 52,184.49 | 0.00 | 30.57 | 0.00 | 52,215.06 |
| 2/15/2018 | Payment: Regular | 313.00 | 120.10 | 162.33 | 120.10 | 30.57 | 0.00 | 52,022.16 | 0.00 | 0.00 | 0.00 | 52,022.16 |
| 3/1/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 52,022.16 | 0.00 | 30.57 | 0.00 | 52,052.73 |
| 3/1/2018 | Payment: Regular | 313.00 | 119.72 | 162.71 | 119.72 | 30.57 | 0.00 | 51,859.45 | 0.00 | 0.00 | 0.00 | 51,859.45 |
| 3/15/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,859.45 | 0.00 | 30.57 | 0.00 | 51,890.02 |
| 3/15/2018 | Payment: Regular | 313.00 | 119.35 | 163.08 | 119.35 | 30.57 | 0.00 | 51,696.37 | 0.00 | 0.00 | 0.00 | 51,696.37 |
| 3/29/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,696.37 | 0.00 | 30.57 | 0.00 | 51,726.94 |
| 3/29/2018 | Payment: Regular | 313.00 | 118.97 | 163.46 | 118.97 | 30.57 | 0.00 | 51,532.91 | 0.00 | 0.00 | 0.00 | 51,532.91 |
| 4/12/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,532.91 | 0.00 | 30.57 | 0.00 | 51,563.48 |
| 4/12/2018 | Payment: Regular | 313.00 | 118.60 | 163.83 | 118.60 | 30.57 | 0.00 | 51,369.08 | 0.00 | 0.00 | 0.00 | 51,369.08 |
| 4/26/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,369.08 | 0.00 | 30.57 | 0.00 | 51,399.65 |
| 4/26/2018 | Payment: Regular | 313.00 | 118.22 | 164.21 | 118.22 | 30.57 | 0.00 | 51,204.87 | 0.00 | 0.00 | 0.00 | 51,204.87 |
| 5/10/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,204.87 | 0.00 | 30.57 | 0.00 | 51,235.44 |
| 5/10/2018 | Payment: Regular | 313.00 | 117.84 | 164.59 | 117.84 | 30.57 | 0.00 | 51,040.28 | 0.00 | 0.00 | 0.00 | 51,040.28 |
| 5/24/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,040.28 | 0.00 | 30.57 | 0.00 | 51,070.85 |
| 5/24/2018 | Payment: Regular | 313.00 | 117.46 | 164.97 | 117.46 | 30.57 | 0.00 | 50,875.31 | 0.00 | 0.00 | 0.00 | 50,875.31 |
| 6/7/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,875.31 | 0.00 | 30.57 | 0.00 | 50,905.88 |
| 6/7/2018 | Payment: Regular | 313.00 | 117.08 | 165.35 | 117.08 | 30.57 | 0.00 | 50,709.96 | 0.00 | 0.00 | 0.00 | 50,709.96 |
| 6/21/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,709.96 | 0.00 | 30.57 | 0.00 | 50,740.53 |
| 6/21/2018 | Payment: Regular | 313.00 | 116.70 | 165.73 | 116.70 | 30.57 | 0.00 | 50,544.23 | 0.00 | 0.00 | 0.00 | 50,544.23 |
| 7/5/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,544.23 | 0.00 | 30.57 | 0.00 | 50,574.80 |
| 7/5/2018 | Payment: Regular | 313.00 | 116.32 | 166.11 | 116.32 | 30.57 | 0.00 | 50,378.12 | 0.00 | 0.00 | 0.00 | 50,378.12 |
| 7/19/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,378.12 | 0.00 | 30.57 | 0.00 | 50,408.69 |
| 7/19/2018 | Payment: Regular | 313.00 | 115.94 | 166.49 | 115.94 | 30.57 | 0.00 | 50,211.63 | 0.00 | 0.00 | 0.00 | 50,211.63 |
| 8/2/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,211.63 | 0.00 | 30.57 | 0.00 | 50,242.20 |
| 8/2/2018 | Payment: Regular | 313.00 | 115.56 | 166.87 | 115.56 | 30.57 | 0.00 | 50,044.76 | 0.00 | 0.00 | 0.00 | 50,044.76 |
| 8/16/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,044.76 | 0.00 | 30.57 | 0.00 | 50,075.33 |
| 8/16/2018 | Payment: Regular | 313.00 | 115.17 | 167.26 | 115.17 | 30.57 | 0.00 | 49,877.50 | 0.00 | 0.00 | 0.00 | 49,877.50 |
| 8/30/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,877.50 | 0.00 | 30.57 | 0.00 | 49,908.07 |
| 8/30/2018 | Payment: Regular | 313.00 | 114.79 | 167.64 | 114.79 | 30.57 | 0.00 | 49,709.86 | 0.00 | 0.00 | 0.00 | 49,709.86 |

4/19/2021 4:20:51 PM

Mazaska Complaint Exhibit 1
103

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

Loan # 10-0█████
Account Name: Montileaux, Lillian
Loan Type:
Product: HCO

Loan Date: 7/7/2010
Maturity Date: 5/10/2021
Interest Rate: 6.00 %   Fixed Rate

## Loan Details
Between 7/7/2010, 4/19/2021

Borrower: Montileaux, Lillian Toni      Work Cell: █████

| Date | Action | Amount | Interest | Principal | Paid Interest | Paid Principal | Paid Fees | Paid Insurance | Outstanding Principal | Outstanding Interest | Outstanding Fees | Outstanding Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/13/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,709.86 | 0.00 | 30.57 | 0.00 | 49,740.43 |
| 9/13/2018 | Payment: Regular | 313.00 | 114.40 | 168.03 | 114.40 | 168.03 | 30.57 | 0.00 | 49,541.83 | 0.00 | 0.00 | 0.00 | 49,541.83 |
| 9/27/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,541.83 | 0.00 | 30.57 | 0.00 | 49,572.40 |
| 9/27/2018 | Payment: Regular | 313.00 | 114.01 | 168.42 | 114.01 | 168.42 | 30.57 | 0.00 | 49,373.41 | 0.00 | 0.00 | 0.00 | 49,373.41 |
| 9/30/2018 | Interest | 24.35 | 24.35 | 0.00 | 24.35 | 0.00 | 0.00 | 0.00 | 49,373.41 | 24.35 | 0.00 | 0.00 | 49,397.76 |
| 10/11/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,373.41 | 24.35 | 30.57 | 0.00 | 49,428.33 |
| 10/11/2018 | Payment: Regular | 313.00 | 113.63 | 168.80 | 113.63 | 168.80 | 30.57 | 0.00 | 49,204.61 | 0.00 | 0.00 | 0.00 | 49,204.61 |
| 10/25/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,204.61 | 0.00 | 30.57 | 0.00 | 49,235.18 |
| 10/25/2018 | Payment: Regular | 313.00 | 113.24 | 169.19 | 113.24 | 169.19 | 30.57 | 0.00 | 49,035.42 | 0.00 | 0.00 | 0.00 | 49,035.42 |
| 11/8/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,035.42 | 0.00 | 30.57 | 0.00 | 49,065.99 |
| 11/8/2018 | Payment: Regular | 313.00 | 112.85 | 169.58 | 112.85 | 169.58 | 30.57 | 0.00 | 48,865.84 | 0.00 | 0.00 | 0.00 | 48,865.84 |
| 11/21/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,865.84 | 0.00 | 30.57 | 0.00 | 48,896.41 |
| 11/21/2018 | Payment: Regular | 313.00 | 104.43 | 178.00 | 104.43 | 178.00 | 30.57 | 0.00 | 48,687.84 | 0.00 | 0.00 | 0.00 | 48,687.84 |
| 12/4/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,687.84 | 0.00 | 30.57 | 0.00 | 48,718.41 |
| 12/4/2018 | Payment: Regular | 313.00 | 104.05 | 178.38 | 104.05 | 178.38 | 30.57 | 0.00 | 48,509.46 | 0.00 | 0.00 | 0.00 | 48,509.46 |
| 12/20/2018 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,509.46 | 0.00 | 30.57 | 0.00 | 48,540.03 |
| 12/20/2018 | Payment: Regular | 313.00 | 127.59 | 154.84 | 127.59 | 154.84 | 30.57 | 0.00 | 48,354.62 | 0.00 | 0.00 | 0.00 | 48,354.62 |
| 12/31/2018 | Interest | 87.44 | 87.44 | 0.00 | 87.44 | 0.00 | 0.00 | 0.00 | 48,354.62 | 87.44 | 0.00 | 0.00 | 48,442.06 |
| 1/3/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,354.62 | 87.44 | 30.57 | 0.00 | 48,472.63 |
| 1/3/2019 | Payment: Regular | 313.00 | 111.28 | 171.15 | 111.28 | 171.15 | 30.57 | 0.00 | 48,183.47 | 0.00 | 0.00 | 0.00 | 48,183.47 |
| 1/17/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,183.47 | 0.00 | 30.57 | 0.00 | 48,214.04 |
| 1/17/2019 | Payment: Regular | 313.00 | 110.89 | 171.54 | 110.89 | 171.54 | 30.57 | 0.00 | 48,011.93 | 0.00 | 0.00 | 0.00 | 48,011.93 |
| 1/31/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,011.93 | 0.00 | 30.57 | 0.00 | 48,042.50 |
| 1/31/2019 | Payment: Regular | 313.00 | 110.49 | 171.94 | 110.49 | 171.94 | 30.57 | 0.00 | 47,839.99 | 0.00 | 0.00 | 0.00 | 47,839.99 |
| 2/14/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 47,839.99 | 0.00 | 30.57 | 0.00 | 47,870.56 |
| 2/14/2019 | Payment: Regular | 313.00 | 110.10 | 172.33 | 110.10 | 172.33 | 30.57 | 0.00 | 47,667.66 | 0.00 | 0.00 | 0.00 | 47,667.66 |
| 2/28/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 47,667.66 | 0.00 | 30.57 | 0.00 | 47,698.23 |
| 2/28/2019 | Payment: Regular | 313.00 | 109.70 | 172.73 | 109.70 | 172.73 | 30.57 | 0.00 | 47,494.93 | 0.00 | 0.00 | 0.00 | 47,494.93 |
| 3/14/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 47,494.93 | 0.00 | 30.57 | 0.00 | 47,525.50 |
| 3/14/2019 | Payment: Regular | 313.00 | 109.30 | 173.13 | 109.30 | 173.13 | 30.57 | 0.00 | 47,321.80 | 0.00 | 0.00 | 0.00 | 47,321.80 |
| 3/28/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 47,321.80 | 0.00 | 30.57 | 0.00 | 47,352.37 |
| 3/28/2019 | Payment: Regular | 313.00 | 108.90 | 173.53 | 108.90 | 173.53 | 30.57 | 0.00 | 47,148.27 | 0.00 | 0.00 | 0.00 | 47,148.27 |
| 4/11/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 47,148.27 | 0.00 | 30.57 | 0.00 | 47,178.84 |
| 4/11/2019 | Payment: Regular | 313.00 | 108.51 | 173.92 | 108.51 | 173.92 | 30.57 | 0.00 | 46,974.35 | 0.00 | 0.00 | 0.00 | 46,974.35 |
| 4/25/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46,974.35 | 0.00 | 30.57 | 0.00 | 47,004.92 |
| 4/25/2019 | Payment: Regular | 313.00 | 108.11 | 174.32 | 108.11 | 174.32 | 30.57 | 0.00 | 46,800.03 | 0.00 | 0.00 | 0.00 | 46,800.03 |
| 5/9/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46,800.03 | 0.00 | 30.57 | 0.00 | 46,830.60 |
| 5/9/2019 | Payment: Regular | 313.00 | 107.70 | 174.73 | 107.70 | 174.73 | 30.57 | 0.00 | 46,625.30 | 0.00 | 0.00 | 0.00 | 46,625.30 |
| 5/23/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46,625.30 | 0.00 | 30.57 | 0.00 | 46,655.87 |
| 5/23/2019 | Payment: Regular | 313.00 | 107.30 | 175.13 | 107.30 | 175.13 | 30.57 | 0.00 | 46,450.17 | 0.00 | 0.00 | 0.00 | 46,450.17 |

Mazaska Complaint Exhibit 1 104

# Mazaska Oweceaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

## Loan Details
### Between 7/7/2010, 4/19/2021

| | | |
|---|---|---|
| Loan # | 10-0 ▓▓▓ | |
| Account Name | Montileaux, Lillian | |
| Loan Type | Term | |
| Product | HCO | |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |

Borrower: Montileaux, Lillian Toni   Work ▓▓▓   Cell ▓▓▓

| Date | Action | Amount | Interest | Principal | Paid Interest | Paid Principal | Paid Fees | Paid Insurance | Out. Principal | Out. Interest | Out. Fees | Out. Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/6/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46,450.17 | 0.00 | 30.57 | 0.00 | 46,480.74 |
| 6/6/2019 | Payment: Regular | 313.00 | 106.90 | 175.53 | 106.90 | 175.53 | 30.57 | 0.00 | 46,274.64 | 0.00 | 0.00 | 0.00 | 46,274.64 |
| 6/20/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46,274.64 | 0.00 | 30.57 | 0.00 | 46,305.21 |
| 6/20/2019 | Payment: Regular | 313.00 | 106.50 | 175.93 | 106.50 | 175.93 | 30.57 | 0.00 | 46,098.71 | 0.00 | 0.00 | 0.00 | 46,098.71 |
| 7/4/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46,098.71 | 0.00 | 30.57 | 0.00 | 46,129.28 |
| 7/4/2019 | Payment: Regular | 313.00 | 106.09 | 176.34 | 106.09 | 176.34 | 30.57 | 0.00 | 45,922.37 | 0.00 | 0.00 | 0.00 | 45,922.37 |
| 7/18/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45,922.37 | 0.00 | 30.57 | 0.00 | 45,952.94 |
| 7/18/2019 | Payment: Regular | 313.00 | 105.68 | 176.75 | 105.68 | 176.75 | 30.57 | 0.00 | 45,745.62 | 0.00 | 0.00 | 0.00 | 45,745.62 |
| 8/1/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45,745.62 | 0.00 | 30.57 | 0.00 | 45,776.19 |
| 8/1/2019 | Payment: Regular | 313.00 | 105.28 | 177.15 | 105.28 | 177.15 | 30.57 | 0.00 | 45,568.47 | 0.00 | 0.00 | 0.00 | 45,568.47 |
| 8/15/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45,568.47 | 0.00 | 30.57 | 0.00 | 45,599.04 |
| 8/15/2019 | Payment: Regular | 313.00 | 104.87 | 177.56 | 104.87 | 177.56 | 30.57 | 0.00 | 45,390.91 | 0.00 | 0.00 | 0.00 | 45,390.91 |
| 8/29/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45,390.91 | 0.00 | 30.57 | 0.00 | 45,421.48 |
| 8/29/2019 | Payment: Regular | 313.00 | 104.46 | 177.97 | 104.46 | 177.97 | 30.57 | 0.00 | 45,212.94 | 0.00 | 0.00 | 0.00 | 45,212.94 |
| 9/12/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45,212.94 | 0.00 | 30.57 | 0.00 | 45,243.51 |
| 9/12/2019 | Payment: Regular | 313.00 | 104.05 | 178.38 | 104.05 | 178.38 | 30.57 | 0.00 | 45,034.56 | 0.00 | 0.00 | 0.00 | 45,034.56 |
| 9/26/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45,034.56 | 0.00 | 30.57 | 0.00 | 45,065.13 |
| 9/26/2019 | Payment: Regular | 313.00 | 103.64 | 178.79 | 103.64 | 178.79 | 30.57 | 0.00 | 44,855.77 | 0.00 | 0.00 | 0.00 | 44,855.77 |
| 10/10/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,855.77 | 0.00 | 30.57 | 0.00 | 44,886.34 |
| 10/10/2019 | Payment: Regular | 313.00 | 103.23 | 179.20 | 103.23 | 179.20 | 30.57 | 0.00 | 44,676.57 | 0.00 | 0.00 | 0.00 | 44,676.57 |
| 10/24/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,676.57 | 0.00 | 30.57 | 0.00 | 44,707.14 |
| 10/24/2019 | Payment: Regular | 313.00 | 102.82 | 179.61 | 102.82 | 179.61 | 30.57 | 0.00 | 44,496.96 | 0.00 | 0.00 | 0.00 | 44,496.96 |
| 11/7/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,496.96 | 0.00 | 30.57 | 0.00 | 44,527.53 |
| 11/7/2019 | Payment: Regular | 313.00 | 102.40 | 180.03 | 102.40 | 180.03 | 30.57 | 0.00 | 44,316.93 | 0.00 | 0.00 | 0.00 | 44,316.93 |
| 11/21/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,316.93 | 0.00 | 30.57 | 0.00 | 44,347.50 |
| 11/21/2019 | Payment: Regular | 313.00 | 101.99 | 180.44 | 101.99 | 180.44 | 30.57 | 0.00 | 44,136.49 | 0.00 | 0.00 | 0.00 | 44,136.49 |
| 12/5/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,136.49 | 0.00 | 30.57 | 0.00 | 44,167.06 |
| 12/5/2019 | Payment: Regular | 313.00 | 101.57 | 180.86 | 101.57 | 180.86 | 30.57 | 0.00 | 43,955.63 | 0.00 | 0.00 | 0.00 | 43,955.63 |
| 12/19/2019 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,955.63 | 0.00 | 30.57 | 0.00 | 43,986.20 |
| 12/19/2019 | Payment: Regular | 313.00 | 101.16 | 181.27 | 101.16 | 181.27 | 30.57 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 12/31/2019 | Escrow: Release | 1,004.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 12/31/2019 | Escrow: Release | 1,379.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 12/31/2019 | Escrow: Release | 1,423.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 12/31/2019 | Escrow: Release | 1,821.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 12/31/2019 | Escrow: Release | 1,975.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 12/31/2019 | Escrow: Release | 709.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 12/31/2019 | Escrow: Release | 1,975.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 12/31/2019 | Escrow: Release | 795.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 0.00 | 0.00 | 43,774.36 |
| 1/2/2020 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 30.57 | 0.00 | 43,804.93 |
| 1/2/2020 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,774.36 | 0.00 | 30.57 | 0.00 | 43,804.93 |
| 1/2/2020 | Payment: Regular | 313.00 | 100.47 | 181.96 | 100.47 | 181.96 | 30.57 | 0.00 | 43,592.40 | 0.00 | 0.00 | 0.00 | 43,592.40 |
| 1/16/2020 | Escrow: Fee | 30.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 43,592.40 | 0.00 | 30.57 | 0.00 | 43,592.97 |

Mazaska Complaint Exhibit 1 105

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

| | |
|---|---|
| Loan # | 10-0███ |
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |
| Term | |

| | |
|---|---|
| Loan Date | 7/7/2010 |
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |

## Loan Details
### Between 7/7/2010, 4/19/2021

Borrower: Montileaux, Lillian Toni
Work: ███
Cell: ███

| Date | Action | Amount | Paid | | | | | Outstanding | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Interest | Principal | Interest | Fees | Insurance | Principal | Interest | Fees | Insurance | Total Balance |
| 1/16/2020 | Payment Regular | 313.00 | 100.05 | 182.38 | 100.05 | 30.57 | 0.00 | 43,410.02 | 0.00 | 0.00 | 0.00 | 43,410.02 |
| 1/30/2020 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 30.57 | 0.00 | 43,410.02 | 0.00 | 30.57 | 0.00 | 43,440.59 |
| 2/13/2020 | Payment Regular | 313.00 | 99.63 | 182.80 | 99.63 | 30.57 | 0.00 | 43,227.22 | 0.00 | 0.00 | 0.00 | 43,227.22 |
| 2/13/2020 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 30.57 | 0.00 | 43,227.22 | 0.00 | 30.57 | 0.00 | 43,257.79 |
| 2/27/2020 | Payment Regular | 313.00 | 99.21 | 183.22 | 99.21 | 30.57 | 0.00 | 43,044.00 | 0.00 | 0.00 | 0.00 | 43,044.00 |
| 2/27/2020 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 30.57 | 0.00 | 43,044.00 | 0.00 | 30.57 | 0.00 | 43,074.57 |
| 3/12/2020 | Payment Regular | 313.00 | 98.79 | 183.64 | 98.79 | 30.57 | 0.00 | 42,860.36 | 0.00 | 0.00 | 0.00 | 42,860.36 |
| 3/12/2020 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 30.57 | 0.00 | 42,860.36 | 0.00 | 30.57 | 0.00 | 42,890.93 |
| 3/26/2020 | Payment Regular | 313.00 | 98.37 | 184.06 | 98.37 | 30.57 | 0.00 | 42,676.30 | 0.00 | 0.00 | 0.00 | 42,676.30 |
| 3/26/2020 | Interest* | 48.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 42,676.30 | 48.97 | 0.00 | 0.00 | 42,725.27 |
| 3/26/2020 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 30.57 | 0.00 | 42,676.30 | 48.97 | 30.57 | 0.00 | 42,755.84 |
| 4/9/2020 | Payment Regular | 313.00 | 97.95 | 184.48 | 97.95 | 30.57 | 0.00 | 42,491.82 | 0.00 | 0.00 | 0.00 | 42,491.82 |
| 4/9/2020 | Interest* | 34.83 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 42,491.82 | 34.83 | 0.00 | 0.00 | 42,526.65 |
| 4/9/2020 | Interest* | 41.79 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 42,491.82 | 76.62 | 0.00 | 0.00 | 42,568.44 |
| 4/9/2020 | Escrow Fee | 30.57 | 0.00 | 0.00 | 0.00 | 30.57 | 0.00 | 42,491.82 | 76.62 | 30.57 | 0.00 | 42,599.01 |
| 4/23/2020 | Payment Regular | 313.00 | 97.52 | 184.91 | 97.52 | 30.57 | 0.00 | 42,306.91 | 0.00 | 0.00 | 0.00 | 42,306.91 |
| 4/23/2020 | Escrow Fee | 36.42 | 0.00 | 0.00 | 0.00 | 36.42 | 0.00 | 42,306.91 | 0.00 | 36.42 | 0.00 | 42,343.33 |
| 5/7/2020 | Payment Regular | 313.00 | 97.10 | 179.48 | 97.10 | 36.42 | 0.00 | 42,127.43 | 0.00 | 0.00 | 0.00 | 42,127.43 |
| 5/7/2020 | Escrow Fee | 36.42 | 0.00 | 0.00 | 0.00 | 36.42 | 0.00 | 42,127.43 | 0.00 | 36.42 | 0.00 | 42,163.85 |
| 5/21/2020 | Payment Regular | 313.00 | 96.69 | 179.89 | 96.69 | 36.42 | 0.00 | 41,947.54 | 0.00 | 0.00 | 0.00 | 41,947.54 |
| 5/21/2020 | Escrow Fee | 36.42 | 0.00 | 0.00 | 0.00 | 36.42 | 0.00 | 41,947.54 | 0.00 | 36.42 | 0.00 | 41,983.96 |
| 6/4/2020 | Payment Regular | 313.00 | 96.27 | 180.31 | 96.27 | 36.42 | 0.00 | 41,767.23 | 0.00 | 0.00 | 0.00 | 41,767.23 |
| 6/4/2020 | Escrow Fee | 36.42 | 0.00 | 0.00 | 0.00 | 36.42 | 0.00 | 41,767.23 | 0.00 | 36.42 | 0.00 | 41,803.65 |
| 6/18/2020 | Payment Regular | 313.00 | 95.86 | 180.72 | 95.86 | 36.42 | 0.00 | 41,586.51 | 0.00 | 0.00 | 0.00 | 41,586.51 |
| 6/18/2020 | Escrow Fee | 36.42 | 0.00 | 0.00 | 0.00 | 36.42 | 0.00 | 41,586.51 | 0.00 | 36.42 | 0.00 | 41,622.93 |
| 7/2/2020 | Payment Regular | 313.00 | 95.44 | 181.14 | 95.44 | 36.42 | 0.00 | 41,405.37 | 0.00 | 0.00 | 0.00 | 41,405.37 |
| 7/2/2020 | Escrow Fee | 36.42 | 0.00 | 0.00 | 0.00 | 36.42 | 0.00 | 41,405.37 | 0.00 | 36.42 | 0.00 | 41,441.79 |
| 7/16/2020 | Payment Regular | 313.00 | 95.03 | 181.55 | 95.03 | 36.42 | 0.00 | 41,223.82 | 0.00 | 0.00 | 0.00 | 41,223.82 |
| 7/16/2020 | Escrow Fee | 37.54 | 0.00 | 0.00 | 0.00 | 37.54 | 0.00 | 41,223.82 | 0.00 | 37.54 | 0.00 | 41,261.36 |
| 7/30/2020 | Payment Regular | 313.00 | 94.61 | 180.85 | 94.61 | 37.54 | 0.00 | 41,042.97 | 0.00 | 0.00 | 0.00 | 41,042.97 |
| 7/30/2020 | Escrow Fee | 37.54 | 0.00 | 0.00 | 0.00 | 37.54 | 0.00 | 41,042.97 | 0.00 | 37.54 | 0.00 | 41,080.51 |
| 8/13/2020 | Payment Regular | 313.00 | 94.20 | 181.26 | 94.20 | 37.54 | 0.00 | 40,861.71 | 0.00 | 0.00 | 0.00 | 40,861.71 |
| 8/13/2020 | Escrow Fee | 37.54 | 0.00 | 0.00 | 0.00 | 37.54 | 0.00 | 40,861.71 | 0.00 | 37.54 | 0.00 | 40,899.25 |
| 8/24/2020 | Payment Regular | 313.00 | 93.78 | 181.68 | 93.78 | 37.54 | 0.00 | 40,680.03 | 0.00 | 0.00 | 0.00 | 40,680.03 |
| 8/24/2020 | Escrow Fee | 37.54 | 0.00 | 0.00 | 0.00 | 37.54 | 0.00 | 40,680.03 | 0.00 | 37.54 | 0.00 | 40,717.57 |
| 8/24/2020 | Payment Regular | 313.00 | 73.36 | 202.10 | 73.36 | 37.54 | 0.00 | 40,477.93 | 0.00 | 0.00 | 0.00 | 40,477.93 |
| 8/24/2020 | Escrow Fee | 37.54 | 0.00 | 0.00 | 0.00 | 37.54 | 0.00 | 40,477.93 | 0.00 | 37.54 | 0.00 | 40,515.47 |
| 9/10/2020 | Payment Regular | 313.00 | 112.81 | 162.65 | 112.81 | 37.54 | 0.00 | 40,315.28 | 0.00 | 0.00 | 0.00 | 40,315.28 |
| 9/10/2020 | Escrow Fee | 37.54 | 0.00 | 0.00 | 0.00 | 37.54 | 0.00 | 40,315.28 | 0.00 | 37.54 | 0.00 | 40,352.82 |
| 9/24/2020 | Payment Regular | 313.00 | 92.53 | 182.93 | 92.53 | 37.54 | 0.00 | 40,132.35 | 0.00 | 0.00 | 0.00 | 40,132.35 |

Mazaska Complaint Exhibit 1
106

# Mazaska Owecaso Otipi Financial Inc.

P.O. Box 1996
Pine Ridge, SD 57770
Work: (605)867-1018
Fax: (605)867-1002

## Loan Details
Between 7/7/2010, 4/19/2021

| Loan # | 10-0▮▮▮▮ |
|---|---|
| Account Name | Montileaux, Lillian |
| Loan Type | |
| Product | HCO |
| Term | |

| Loan Date | 7/7/2010 |
|---|---|
| Maturity Date | 5/10/2021 |
| Interest Rate | 6.00 %   Fixed Rate |

| Borrower | Montileaux, Lillian Toni |
|---|---|
| Work | ▮▮▮▮ |
| Cell | ▮▮▮▮ |

| Date | Action | Amount | Interest | Principal | Paid Interest | Paid Principal | Paid Fees | Paid Insurance | Outstanding Principal | Outstanding Interest | Outstanding Fees | Outstanding Insurance | Total Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/8/2020 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40,132.35 | 0.00 | 37.54 | 0.00 | 40,169.89 |
| 10/8/2020 | Payment: Regular | 313.00 | 92.11 | 183.35 | 92.11 | 183.35 | 37.54 | 0.00 | 39,949.00 | 0.00 | 0.00 | 0.00 | 39,949.00 |
| 10/22/2020 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,949.00 | 0.00 | 37.54 | 0.00 | 39,986.54 |
| 10/22/2020 | Payment: Regular | 313.00 | 91.69 | 183.77 | 91.69 | 183.77 | 37.54 | 0.00 | 39,765.23 | 0.00 | 0.00 | 0.00 | 39,765.23 |
| 11/5/2020 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,765.23 | 0.00 | 37.54 | 0.00 | 39,802.77 |
| 11/5/2020 | Payment: Regular | 313.00 | 91.26 | 184.20 | 91.26 | 184.20 | 37.54 | 0.00 | 39,581.03 | 0.00 | 0.00 | 0.00 | 39,581.03 |
| 11/19/2020 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,581.03 | 0.00 | 37.54 | 0.00 | 39,618.57 |
| 11/19/2020 | Payment: Regular | 313.00 | 90.84 | 184.62 | 90.84 | 184.62 | 37.54 | 0.00 | 39,396.41 | 0.00 | 0.00 | 0.00 | 39,396.41 |
| 12/3/2020 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,396.41 | 0.00 | 37.54 | 0.00 | 39,433.95 |
| 12/3/2020 | Payment: Regular | 313.00 | 90.42 | 185.04 | 90.42 | 185.04 | 37.54 | 0.00 | 39,211.37 | 0.00 | 0.00 | 0.00 | 39,211.37 |
| 12/17/2020 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,211.37 | 0.00 | 37.54 | 0.00 | 39,248.91 |
| 12/17/2020 | Payment: Regular | 313.00 | 89.99 | 185.47 | 89.99 | 185.47 | 37.54 | 0.00 | 39,025.90 | 0.00 | 0.00 | 0.00 | 39,025.90 |
| 12/31/2020 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 39,025.90 | 0.00 | 37.54 | 0.00 | 39,063.44 |
| 12/31/2020 | Payment: Regular | 313.00 | 89.57 | 185.89 | 89.57 | 185.89 | 37.54 | 0.00 | 38,840.01 | 0.00 | 0.00 | 0.00 | 38,840.01 |
| 1/14/2021 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,840.01 | 0.00 | 37.54 | 0.00 | 38,877.55 |
| 1/14/2021 | Payment: Regular | 313.00 | 89.39 | 186.07 | 89.39 | 186.07 | 37.54 | 0.00 | 38,653.94 | 0.00 | 0.00 | 0.00 | 38,653.94 |
| 1/28/2021 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,653.94 | 0.00 | 37.54 | 0.00 | 38,691.48 |
| 1/28/2021 | Payment: Regular | 313.00 | 88.96 | 186.50 | 88.96 | 186.50 | 37.54 | 0.00 | 38,467.44 | 0.00 | 0.00 | 0.00 | 38,467.44 |
| 2/11/2021 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,467.44 | 0.00 | 37.54 | 0.00 | 38,504.98 |
| 2/11/2021 | Payment: Regular | 313.00 | 88.53 | 186.93 | 88.53 | 186.93 | 37.54 | 0.00 | 38,280.51 | 0.00 | 0.00 | 0.00 | 38,280.51 |
| 2/25/2021 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,280.51 | 0.00 | 37.54 | 0.00 | 38,318.05 |
| 2/25/2021 | Payment: Regular | 313.00 | 88.10 | 187.36 | 88.10 | 187.36 | 37.54 | 0.00 | 38,093.15 | 0.00 | 0.00 | 0.00 | 38,093.15 |
| 3/11/2021 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,093.15 | 0.00 | 37.54 | 0.00 | 38,130.69 |
| 3/11/2021 | Payment: Regular | 313.00 | 87.67 | 187.79 | 87.67 | 187.79 | 37.54 | 0.00 | 37,905.36 | 0.00 | 0.00 | 0.00 | 37,905.36 |
| 3/25/2021 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 37,905.36 | 0.00 | 37.54 | 0.00 | 37,942.90 |
| 3/25/2021 | Payment: Regular | 313.00 | 87.23 | 188.23 | 87.23 | 188.23 | 37.54 | 0.00 | 37,717.13 | 0.00 | 0.00 | 0.00 | 37,717.13 |
| 4/8/2021 | Escrow: Fee | 37.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 37,717.13 | 0.00 | 37.54 | 0.00 | 37,754.67 |
| 4/8/2021 | Payment: Regular | 313.00 | 86.80 | 188.66 | 86.80 | 188.66 | 37.54 | 0.00 | 37,528.47 | 0.00 | 0.00 | 0.00 | 37,528.47 |
| **Loan Totals** | | 40,656.61 | 29,912.69 | 40,656.61 | | 40,656.61 | 13,623.08 | 0.00 | | | | | |

4/19/2021 4:20:51 PM

Mazaska Complaint Exhibit 1
107



**PO Box 1996, Pine Ridge, SD 57770**
Tel (605) 867-1018   Fax (605) 867-1002   www.mazaskacdfi.org

## Maturity Notice

April 14, 2021

Re: Loan 10-0019

Dear Lillian,

We are contacting you to let you know that your mortgage loan with Mazaska is maturing on **May 10, 2021. At this time, the full amount of your outstanding loan will be due in full.**

As of April 14, 2021, your **current loan balance is $37,878.67** (Principal $37,717.13, Interest $124.00, Escrow $37.54) If you recently have made a payment, this amount may differ.

Below are the original terms of your loan:

> Origination Date: 04/19/2011
> Loan Amount: $66,370.25
> Interest Rate: 6%
> Term: 5 years with Balloon Due at Maturity
> Balloon Date: 05/10/2016

Please give me a call at (605) 867-1018 or email me at amanda   mazaskacdfi.or as soon as you receive this letter so we can review your loan and discuss how we can help you move forward into a conventional loan product.

Sincerely,

Amanda Standing Bear
Housing Specialist

**EXHIBIT 5**

CC:

# STEVEN D. SANDVEN
L A W   O F F I C E   P C

**PRINCIPAL**
Steven D. Sandven

*Admitted in South Dakota,*
*Minnesota & Washington D.C.*

12294 Gold Mountain Loop
Hill City, South Dakota 57745
605 206-7400 (w)
605 206-7588 (f)
SDSandven@gmail.com
www.SandvenLaw.com

*VIA EMAIL: AMANDA@MAZASKACDFI.ORG*

May 19, 2021

Amanda Standing Bear
Mazaska
Owecaso Otipi Financial, Inc.
P.O. Box 1996
Pine Ridge, SD 57770

     Re:    Lillian Toni Montileaux (Loan 10-0019)

Dear Ms. Standing Bear:

My law office represents Ms. Montileaux who asked us to review the payment history on Loan 10-0019 as promulgated by your institution. Your correspondence dated April 14, 2021, claims that Ms. Montileaux has an outstanding loan balance of $37,717.13 due in full on May 10, 2021. As this memorandum will explain, our accounting does not reconcile with Mazaska's calculations.

### Miscellaneous Matters

As a matter of respect for your institution, my client would like to point out several issues that Mazaska should consider remedying.

First, according to Patti YellowBoy, Bureau of Indian Affairs ("BIA"), a number of Mazaska's mortgages, including Ms. Montileaux's, have not been recorded with the BIA.

Second, Ms. Montileaux's relationship with the bank involves three promissory notes and three mortgages. None of these loan documents give any indication that they supersede or renew a previous existing note or mortgage. Accordingly, it appears that Ms. Montileaux received three different loans representing a sum total of $155,882.92 when in fact she only received $67,441.16. In the future, Mazaska should consider modifying the original note and mortgage so that its documentation accurately reflects the transaction.

### Records Are Inconsistent

On July 7, 2010, Ms. Montileaux executed a mortgage and promissory note for $51,634.00 with a maturity date of July 7, 2021. Mazaska's records note a commitment in the amount of $50,000

EXHIBIT 6

Mazaska Complaint Exhibit 1
109

under the first note with an advance to Ms. Montileaux in the amount of $45,731.76. Records indicate that Ms. Montileaux paid principal in the amount of $778.62, $969.75 in interest, and $451.65 for escrow – all under the first note.

On December 1, 2010, a second note was executed for the amount of $54,084 with a maturity date now reduced by six years to July 6, 2015. Records indicate a new commitment of $17,441.16 with an advance to Ms. Montileaux for $8,352.24. Records indicate that Ms. Montileaux paid principal in the amount of $372.13, $1,246.55 in interest, and $361.32 for escrow under the second note.

On April 19, 2011, a third note was executed evidencing a debt in the amount of $66,370.25 with a maturity date of May 10, 2016. Records indicate no new commitment was issued but advances were made in the amount of $13,357.16. Under the third note, Ms. Montileaux paid principal in the amount of $28,761.94, $38,440.11 in interest, and $12,810.11 for escrow. The maturity date on the final note has long since passed.

In contrast to Mazaska's records, Ms. Montileaux's records show she has made $85,047.68 in payments. According to the Loan documents, payments are to be applied in the following order: (1) escrow; (2) interest; and then (3) principal. Ms. Montileaux received $67,441.16 in advances originating on July 7, 2010. She consistently made scheduled payments and oftentimes paid more than what was due.[1] As explained more fully in the following section, escrow payments were miscalculated which in turn meant Mazaska did not deduct the correct amounts from the loan principal.

***Escrow Payments***

According to Section 2 of the Loan Agreement, funds were to be set aside in escrow to cover the following expenses:

1. Yearly taxes and assessments;
2. Yearly leasehold payments or ground rents;
3. Yearly hazard or property insurance premiums;
4. Yearly flood insurance premiums;
5. Yearly mortgage insurance premiums; and
6. Loss reserve payments as provided by Section 8 of the mortgage.

The promissory note dated July 7, 2010, provides that a monthly payment of $90.33 would be set aside for escrow. The notes dated December 1, 2010, and April 19, 2021, do not amend this amount.

There are several issues with Mazaska's handling of Ms. Montileaux's escrow account.

First, if you look at Mazaska's payment history, the amounts set aside for escrow payments were never $90.33 after October 12, 2011. As such, all amounts above and beyond that amount should have been applied to interest and principal.

---

[1] Prepayments are to be applied directly to principal.

Mazaska Complaint Exhibit 1
110

Secondly, commencing on March 1, 2016, Mazaska deducted escrow fees bi-weekly instead of monthly as required by the promissory note.[2]

Thirdly, for approximately a year, Mazaska deducted $114.92 per month for escrow, the following year the amount was raised to $151.75 and then raised again to $165.00 per month. The promissory note does not authorize Mazaska to unilaterally increase the escrow amount to anything beyond $90.33 per month. The proper procedure, as contemplated by the parties' written agreement, was to make the appropriate deduction each month. If, at the end of the year, the amount in escrow was insufficient to cover outstanding balances, Mazaska was mandated to notify the borrower of the deficit and arrange for payment. *See* Section 2 of the Mortgage. No one from Mazaska ever contacted Ms. Montileaux as to such a deficit.

Next, as there is no property tax on the real estate subject to the mortgage, escrow funds would solely be used to cover insurance. Premiums from 2015 through 2022 were as follows:

| | |
|---|---|
| 2015-2016 | $709.00 |
| 2016-2017 | $795.00 |
| 2017-2018 | $815.00 |
| 2018-2019 | $840.00 |
| 2019-2020 | $947.00 |
| 2020-2021 | $976.00 |
| 2021-2022 | $1,067.00 |

Assume Mazaska had properly collected escrow funds at $90.33 per month in 2015-2016.[3] Ms. Montileaux would have paid $1,083.96 for the year – $374.96 more than the actual cost of the 2015-2016 premium. Ms. Montileaux is requesting information as to where the excess payments were applied.

Finally, on December 31, 2019, your records noted several "escrow releases" totaling $9,186.00. The outstanding balance due on the loan did not change. Ms. Montileaux is requesting an explanation as to why this notation was made.

### *Loan Documents Do Not Authorize Imposition of Administrative Fees*

None of the promissory notes or the mortgages authorize Mazaska to impose administrative fees on the transaction, and yet, an amount of $663.11 for such fees was added to Ms. Montileaux's outstanding balance on April 19, 2011, and then deducted that same day. Further, on December 31, 2010, Mazaska's payment history notates a "Doubtful" action in the amount of $1,348.59 which did not affect the outstanding balance. Ms. Montileaux is requesting information on the purpose of these transactions.

### *Conclusion*

---

[2] According to Section 2 of the mortgage agreement, Ms. Montileaux was entitled to receive, at no charge, an annual accounting of the escrow funds. This accounting has not been provided.

[3] Since Mazaska rarely collected $90.33 per month, the illustration must be changed to reflect the actual amount collected in order to calculate the excess.

Mazaska Complaint Exhibit 1
111

Based upon the foregoing irregularities, Ms. Montileaux is requesting that Mazaska stay all action until a full accounting has been conducted. During the stay, Ms. Montileaux will continue to make scheduled payments.

Please contact me if there are any questions.

Sincerely,

Steven Sandven

4

Mazaska Complaint Exhibit 1
112

**From:** Yellowboy, Patti <Patti.YellowBoy@bia.gov>
**Sent:** Wednesday, December 2, 2020 12:24 PM
**To:** Stephanie Provost <stephanie@mazaskacdfi.org>; Toni Montileaux ▮▮▮▮▮▮▮▮▮▮
**Cc:** Weston, Marlon D <Marlon.Weston@bia.gov>; Colleen Steele <csteele@mazaskacdfi.org>
**Subject:** Re: [EXTERNAL] Recorded Mortgage

I believe so. I don't think I have ever seen anybody up in that office the entire time we have been closed to the public though.

*Patti Yellow Boy*
*Realty Officer*
*Pine Ridge Agency*

*PO BOX 1203*
*Pine Ridge, SD 57770*
*(605)867-1001 office*
*(605)407-1001 cell*

**From:** Stephanie Provost <stephanie@mazaskacdfi.org>
**Sent:** Wednesday, December 2, 2020 12:20 PM
**To:** Yellowboy, Patti <Patti.YellowBoy@bia.gov>; Toni Montileaux <t.montileaux@hotmail.com>
**Cc:** Weston, Marlon D <Marlon.Weston@bia.gov>; Colleen Steele <csteele@mazaskacdfi.org>
**Subject:** Re: [EXTERNAL] Recorded Mortgage

Patti is the all the offices in the BIA Building closed?

Get Outlook for iOS

**From:** Yellowboy, Patti <Patti.YellowBoy@bia.gov>
**Sent:** Wednesday, December 2, 2020 12:18:17 PM
**To:** Stephanie Provost <stephanie@mazaskacdfi.org>; Toni Montileaux ▮▮▮▮▮▮▮▮▮▮
**Cc:** Weston, Marlon D <Marlon.Weston@bia.gov>; Colleen Steele <csteele@mazaskacdfi.org>
**Subject:** Re: [EXTERNAL] Recorded Mortgage

There is a lease but no mortgage. I know a lot of mortgages were not completed when they were with financial services. Then when the process switched to us because that office closed, we never received any paperwork or had access to those mortgage files.

Thanks,

*Patti Yellow Boy*
*Realty Officer*
*Pine Ridge Agency*

EXHIBIT 7

Mazaska Complaint Exhibit 1
113

*PO BOX 1203*
*Pine Ridge, SD 57770*
*(605)867-1001 office*
*(605)407-1001 cell*

---

**From:** Stephanie Provost <stephanie@mazaskacdfi.org>
**Sent:** Wednesday, December 2, 2020 12:14 PM
**To:** Toni Montileaux ██████████████████ Yellowboy, Patti <Patti.YellowBoy@bia.gov>
**Cc:** Weston, Marlon D <Marlon.Weston@bia.gov>; Colleen Steele <csteele@mazaskacdfi.org>
**Subject:** Re: [EXTERNAL] Recorded Mortgage

Patti I can send the mortgage we have in her file, I am trying to get ahold of Courtney Two Lance cause the mortgages were going through her office for the recording.

Get Outlook for iOS

---

**From:** Toni Montileaux ████████████████
**Sent:** Wednesday, December 2, 2020 11:58:21 AM
**To:** Yellowboy, Patti <patti.yellowboy@bia.gov>
**Cc:** Stephanie Provost <stephanie@mazaskacdfi.org>; Weston, Marlon D <Marlon.Weston@bia.gov>; Colleen Steele <csteele@mazaskacdfi.org>
**Subject:** Re: [EXTERNAL] Recorded Mortgage

Patti:

Please check all my names-
Lillian Toni Richards Montileaux

Sent from my iPhone

On Dec 2, 2020, at 11:07 AM, Yellowboy, Patti <patti.yellowboy@bia.gov> wrote:

**Morning Steph,**

**I am not seeing a mortgage for Lillian. I looked at all her land holdings and nothing. Does she have a mortgage on a different allotment that she doesn't own in?**

**Let me know.**

**Thanks,**

*Patti Yellow Boy*

Mazaska Complaint Exhibit 1
114

*Realty Officer*
*Pine Ridge Agency*

*PO BOX 1203*
*Pine Ridge, SD 57770*
*(605)867-1001 office*
*(605)407-1001 cell*

**From:** Stephanie Provost <stephanie@mazaskacdfi.org>
**Sent:** Tuesday, December 1, 2020 3:57 PM
**To:** Yellowboy, Patti <Patti.YellowBoy@bia.gov>; Weston, Marlon D <Marlon.Weston@bia.gov>
**Cc:** Colleen Steele <csteele@mazaskacdfi.org>; Toni Montileaux ██████████████████
**Subject:** [EXTERNAL] Recorded Mortgage

> **This email has been received from outside of DOI - Use caution before clicking on links, opening attachments, or responding.**

Good Afternoon,
Could you please look up a recorded mortgage for Lillian Montileaux?

**Stephanie Provost**
Loan Officer
MAZĂSKĂ
OWECASO OTIPI FINANCIAL
Phone: 605-867-1018
Fax: 605-867-1002

**Bobbi Doerfler <bobbidoerfler@aol.com>**                    Tue, Jun 1, 10:28 AM

to amanda@mazaskacdfi.org, t.montileaux@hotmail.com, sdsandven@gmail.com

Good morning Ms. Standing Bear:

Just checking in to see if Mazaska has made a decision as to the attached correspondence from Steven Sandven?

BOBBI DOERFLER, ESQ.
Steven D. Sandven Law Office PC
12294 Gold Mountain Loop - Hill City SD 57745
(w) 605 206-7400  (f) 605 206-7588
Licensed in Minnesota, South Dakota and Washington DC
- www.sandvenlaw.com

EXHIBIT 8

## COSTELLO, PORTER, HILL, HEISTERKAMP,
## BUSHNELL & CARPENTER, LLP

ATTORNEYS AT LAW

KENNETH L. HEISTERKAMP
GENE R. BUSHNELL
EDWARD C. CARPENTER
DONALD A. PORTER
JOSEPH R. LUX
HEATHER LAMMERS BOGARD†
JESS M. PEKARSKI

†Also available at Spearfish office
115 N. 7ᵗʰ Street, Suite 3
Spearfish, SD 57783
+ Also admitted in North Dakota
^ Also admitted in Wyoming
^Also admitted in Nebraska

200 SECURITY BUILDING
704 ST. JOSEPH STREET
MAILING ADDRESS P. O. BOX 290
RAPID CITY, SD 57709

Telephone: (605) 343-2410
Fax: (605) 343-4262

PHILLIP R. STILES
JONATHAN P. McCOY*
MICHAEL F. STEVE^+
KRISTEN E. BASHAM
REECE R. WEBER

J.M. COSTELLO
1923-2007

WILLIAM G. PORTER
1926-2004

June 4, 2021

*Via email only to sdsandven@gmail.com*

Steven D. Sandven
12294 Gold Mountain Loop
Hill City, SD 57745

        Re:    Lillian Tony Montileaux
               Our file no. 132354

Dear Mr. Sandven:

    My office represents Mazaska Owecaso Otipi Financial, Inc. ("Mazaska") and we are in receipt of your letter dated May 19, 2021, and appreciate the concern communicated. However, the loan documents appear to be valid, which allow for a brief response here.

    As you know, there is a balloon rider to the April 19, 2011, loan documents which authorized 1% origination fees. Those fees were $663.70 and are accounted for accurately.

    In addition, the loans are in the nature of collateral real estate mortgages, for a total face value of $66,370.25, but may also fluctuate in total amount loaned. Mazaska has agreed there is only a single loan and each of the mortgages and notes dated December 1, 2010, and April 19, 2011, should be treated as extensions to the July 7, 2010 loan.

    Ms. Montileaux has been a good customer and Mazaska looks forward to receipt of Ms. Montileaux's payments and will consider extending the loan.

                         Respectfully,

                         Jonathan P. McCoy

CC:    Client

## EXHIBIT 9

# STEVEN D. SANDVEN
## L A W   O F F I C E   P C

**PRINCIPAL**
Steven D. Sandven

*Admitted in South Dakota,*
*Minnesota & Washington D.C.*

12294 Gold Mountain Loop
Hill City, South Dakota 57745
605 206-7400 (w)
605 206-7588 (f)
SDSandven@gmail.com
www.SandvenLaw.com

*Via Email at* jmccoy@costelloporter.com

June 8, 2021

Jonathan P. McCoy
200 Security Building
704 St. Joseph Street
P.O. Box 290
Rapid City SD 57709

Re:     Notice of Intent to File Lawsuit - Lillian Toni Montileaux

Dear Mr. McCoy:

This letter of intent to sue shall serve as formal notice my client intends to commence a lawsuit against your client, Mazaska Owecaso Otipi Financial, Inc. ("Mazaska"), due your client's failure to provide an accounting of escrow funds as required by Section 2 of the Mortgage Agreement dated April 19, 2011 and as requested in our correspondence dated May 19, 2021.

Ms. Montileaux has paid $85,360.68 toward her mortgage, and your client is requesting that she make a final payment in the amount of $37,717.13. In the end, she will have paid $123,077.81 for a $66,370.25 mortgage. This amount does not correspond with Ms. Montileaux's accounting. Accordingly, she requests that Mazaska immediately initiate an accounting as required by the Mortgage. She will continue making bi-weekly payments during this period.

This offer to cure and/or settle this matter outside of court and avoid a lawsuit is valid for fourteen (14) days.

If your client fails to respond, Ms. Montileaux intends to file suit in the Oglala Sioux Tribal Court and will be requesting the title to her home, damages, and attorneys' fees.

Please contact me if there are any questions.

Sincerely,

Steven Sandven

**EXHIBIT 10**

1

Mazaska Complaint Exhibit 1
118

COSTELLO, PORTER, HILL, HEISTERKAMP,
BUSHNELL & CARPENTER, LLP

ATTORNEYS AT LAW

KENNETH L. HEISTERKAMP
GENE R. BUSHNELL
EDWARD C. CARPENTER
DONALD A. PORTER
JOSEPH R. LUX
HEATHER LAMMERS BOGARD†
JESS M. PEKARSKI

†Also available at Spearfish office
115 N. 7th Street, Suite 3
Spearfish, SD 57783
+ Also admitted in North Dakota
* Also admitted in Wyoming
^Also admitted in Nebraska

200 SECURITY BUILDING
704 ST. JOSEPH STREET
MAILING ADDRESS P. O. BOX 290
RAPID CITY, SD 57709

Telephone: (605) 343-2410
Fax: (605) 343-4262

PHILLIP R. STILES
JONATHAN P. McCOY*
MICHAEL F. STEVE*+
KRISTEN E. BASHAM
REECE R. WEBER

J.M. COSTELLO
1923-2007

WILLIAM G. PORTER
1926-2004

June 15, 2021

*Via email only to sdsandven@gmail.com*

Steven D. Sandven
12294 Gold Mountain Loop
Hill City, SD 57745

Re:    Lillian Tony Montileaux
Our file no. 132354

Dear Mr. Sandven:

We are in receipt of your notice of intent to file a lawsuit and have forwarded the same to our client. In that regard, your letter dated May 19 merely requested that Mazaska stay all action until a full accounting of the escrow had been conducted. Mazaska has complied with that request.

In regard to your letter dated June 8, to which I now respond, it is unclear what settlement your client is seeking. Please clarify your client's settlement offer. Nonetheless, I am working with Mazaska to finish compiling the necessary documents, yet we have been delayed due to my schedule.

In that regard, please note I will be in trial the week of June 21 and request that any follow up settlement offer that your client presents be allowed 30 days to respond from the date of this letter.

Respectfully,

Jonathan P. McCoy

CC:    Client

EXHIBIT 11

Mazaska Complaint Exhibit 1
119

**Bobbi Doerfler <bobbidoerfler@aol.com>**                                Thu, Jul 22,
                                                                            6:07 PM
to jmccoy@costelloporter.com, sdsandven@gmail.com, t.montileaux@hotmail.com

Mr. McCoy:

Can you please give us an update on when we can expect the final accounting on
Toni Montileaux's payments?


BOBBI DOERFLER, ESQ.
Steven D. Sandven Law Office PC
12294 Gold Mountain Loop - Hill City SD 57745
(w) 605 206-7400  (f) 605 206-7588
Licensed in Minnesota, South Dakota and Washington DC
- www.sandvenlaw.com

EXHIBIT 12

COSTELLO, PORTER, HILL, HEISTERKAMP,
BUSHNELL & CARPENTER, LLP

ATTORNEYS AT LAW

KENNETH L. HEISTERKAMP
GENE R. BUSHNELL
EDWARD C. CARPENTER
DONALD A. PORTER
JOSEPH R. LUX
HEATHER LAMMERS BOGARD†
JESS M. PEKARSKI

†Also available at Spearfish office
115 N. 7ᵗʰ Street, Suite 3
Spearfish, SD 57783
+ Also admitted in North Dakota
* Also admitted in Wyoming
^Also admitted in Nebraska

200 SECURITY BUILDING
704 ST. JOSEPH STREET
MAILING ADDRESS P. O. BOX 290
RAPID CITY, SD 57709

Telephone: (605) 343-2410
Fax: (605) 343-4262

PHILLIP R. STILES
JONATHAN P. McCOY*
MICHAEL F. STEVE^+
KRISTEN E. BASHAM
REECE R. WEBER
GARRETT J. KEEGAN

J.M. COSTELLO
1923-2007

WILLIAM G. PORTER
1926-2004

September 30, 2021

*Via email only to sdsandven@gmail.com*
Steven D. Sandven
12294 Gold Mountain Loop
Hill City, SD 57745

        Re:    Lillian Tony Montileaux
               Our file no. 132354

Dear Mr. Sandven:

      Enclosed please find the insurance declarations for the period of Ms. Montileaux's loan with Mazaska, pursuant to your request. Additionally, enclosed please find documents pursuant to section 2 of the mortgage, which were provided to your client. As such, we believe Ms. Montileaux had notice of all changes in the escrow either from Mazaska or from her insurance company, as she also receives annual notices from her insurance company.

      It is our understanding your client seeks to settle, but as of this letter we have not received any offer and accept her continued payments on the loan. As you are aware, the balloon payment is due. Please advise whether Ms. Montileaux is interested in extending the loan or making payment in full.

      Alternatively, Mazaska has authorized us to offer Ms. Montileaux the opportunity re-finance balloon loan into a traditional mortgage. If Ms. Montileaux would like to pursue a traditional mortgage, Mazaska agrees that there would be no closing costs or fees and that she can retain her current interest rate of six percent (6%). However, Ms. Montileaux must agree to continue making monthly payment in the same amount as she has been paying under the balloon payment. Additionally, she will be responsible for her obtaining and paying for own insurance as that will not be paid through an escrow account. If Ms. Montileaux is agreeable to these terms, it is anticipated this mortgage would be satisfied in five years.

EXHIBIT 13

Mazaska Complaint Exhibit 1
121

Mr. Steven D. Sandven
September 30, 2021
Page 2


        Please let us know how Ms. Montileaux would like to proceed.

                                        Respectfully,

                                        Jonathan P. McCoy

JPM/alw
Enclosures

Mazaska Complaint Exhibit 1
122