| | | |
|---|---|---|
| OGLALA SIOUX TRIBAL COURT<br>OGLALA SIOUX TRIBE<br>PINE RIDGE INDIAN RESERVATION | )<br>)SS<br>) | IN CIRCUIT COURT<br><br>PINE RIDGE |
| **LILIAN "TONI" MONTILEAUX**<br><br>Petitioner,<br><br>vs.<br><br>**MAZASKA OWECASCO OTIPI FINANCIAL, INC.,**<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIV 21-0388<br><br>ORDER AND MEMORANDUM DECISION DENYING RESPONDENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

This Court, having considered the arguments, evidence, and briefs from both parties, hereby holds as follows:

## Facts and Procedural History

This matter is a breach of contract action involving a series of mortgages executed between Lillian Montileaux ("Petitioner Montileaux"), as the mortgagee, and Mazaska Owecaso Otipi Financial, Inc. ("Respondent Mazaska"), as the mortgagor. Pursuant to the mortgages, Petitioner Montileaux received certain cash advances from Respondent Mazaska. As collateral for its loans, Respondent Mazaska received a security interest in leasehold property Petitioner Montileaux holds within the exterior bounds of Pine Ridge Indian Reservation ("Pine Ridge Reservation") in Oglala Lakota County, South Dakota.[1] The majority of the

---

[1] The question of whether the security interest was properly filed and/or perfected is not currently before this Court.

1

Mazaska Complaint Exhibit 2
001

allegations in Petitioner Montileaux's *Complaint and Demand for Jury Trial* ("*Complaint*") appear to stem from alleged financial irregularities with Petitioner Montileaux's account.[2] Given that this Court must first determine whether it possesses jurisdiction over this matter, it recounts only the facts necessary to determine its jurisdiction and leaves the underlying merits for another day.

On December 12, 2021, Petitioner Montileaux served Respondent Mazaska with a *Summons* and *Complaint*, instituting this lawsuit. The *Complaint* raises two, albeit it intertwined, counts: breach of contract and breach of the implied covenant of good faith and fair dealing. Within thirty days of receiving the *Summons*, Respondent Mazaska answered the *Complaint* on the merits and alleged several affirmative defenses. None of the affirmative defenses challenge jurisdiction, subject matter or otherwise.[3]

---

[2] As part of its prayer for relief, Petitioner Montileaux appears to request that this Court order Respondent Mazaska to hire an expert to audit her account. Given that this opinion addresses only jurisdiction, this request is not yet ripe. The Court invites Petitioner Montileaux to file a Motion and supportive belief articulating her basis for her belief that Respondent Mazaska must undertake this expense.

[3] Some courts demand that affirmative defenses be plead affirmatively. *Farmers Coop. Elevator Co. v. Johnson*, 90 S.D. 36, 237 N.W.2d 671 (1976) ("Our law requires that [affirmative defenses] be pleaded as a defense *affirmatively*.") (emphasis in original). However, it is equally well established that alleged defects in subject matter jurisdiction can be raised at any time and even by this Court sua sponte. *Barnes v. Matzner*, 2003 S.D. 42, ¶ 11, 661 N.W.2d 372, 375. For this reason, despite the absence of an affirmative defense on that basis, any defects related to subject matter jurisdiction are properly before this Court. The related question of whether Respondent Mazaska consented to the jurisdiction of this Court under *Montana v. United States* by filing a pleading on the merits and requesting that this Court issue a scheduling order before raising the jurisdictional defect is

Mazaska Complaint Exhibit 2
002

On April 11, 2022, three months after Respondent Mazaska answered the *Complaint*, Respondent Mazaska moved this Court for an order dismissing this action for lack of subject matter jurisdiction. It argued, among other things, that it was a non-Indian and therefore, beyond the adjudicatory authority of this Court. Petitioner Montileaux resisted the *Motion*, contending that Respondent Mazaska's activities on Pine Ridge and certain language in the contracts demonstrate that Respondent Mazaska has consented to the jurisdiction of this Court. For the following reasons, this Court concludes it has jurisdiction over Respondent Mazaska.

## Analysis and Decision

The Constitution of the Oglala Sioux Tribe (the "Tribe") provides that this Court "shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus." Article V, Section 2. In accordance with these provisions, generally speaking, this Court is vested with the same judicial powers enjoyed by any other court of general jurisdiction. *Bingham Farms Trust v. City of Belle Fourche*, 2019 S.D. 50, ¶ 14, 932 N.W.2d 916, 920 (holding that courts of general jurisdiction may "hear all civil actions.").[4] Petitioner Montileaux's *Complaint* claims that

---

addressed in Section II, *infra*. *See* 450 U.S. 544, 565, 101 S. Ct. 1245, 1258, 67 L. Ed. 2d 493, 510 (1981).

[4] Although not bound by authority handed down by the South Dakota Supreme Court and other courts, this Court relies upon authorities that it finds persuasive when determining the disposition of this *Motion*.

3

Mazaska Complaint Exhibit 2
003

Defendant Mazaska breached a series of contracts. There can be no question that this Court is competent to preside over a breach of contract action.[5]

The more complex question is whether this Court has adjudicatory jurisdiction over Respondent Mazaska, a South Dakota corporation, under *Montana v. United States*, 450 U.S. 544, 565, 101 S. Ct. 1245, 1258, 67 L. Ed. 2d 493, 510 (1981). Keeping in mind that the Tribe is a sovereignty with a "distinct, independent political communit[y]," the question of whether a tribal court has civil jurisdiction over a party to a lawsuit normally requires consideration of two questions. *See, e.g., Montana*, 450 U.S. at 565, 101 S. Ct. at 1258; *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559, 8 L. Ed. 483 (1832) (acknowledging the inherent nature of tribal sovereignty). The first inquiry is whether Respondent Mazaska is a member-Indian or a non-Indian. *Id.* If Respondent Mazaska is a member-Indian, this Court unquestionably has jurisdiction over it. *Nevada v. Hicks*, 533 U.S. 353, 361-62, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) ("Our cases make clear than the Indians' right to make their own laws and be governed by them.") If Respondent

---

[5] Respondent Mazaska argues that because the promissory note and mortgage might implicate a federal question, this Court has no authority to consider this matter on the merits. Respondent Mazaska makes this argument on the mistaken premise that courts of general jurisdiction are not permitted to analyze or interpret federal laws when considering the merits of a breach of contract action. O.S.T. Const. Art. V., § 2. Importantly, Respondent Mazaska has failed to provide this Court any authority to suggest that the existence of an arguably relevant federal statute renders federal jurisdiction exclusive in this instance. Absent such authority, this Court is not persuaded by this argument.

*[handwritten annotation: 2065(h) preemption statute]*

4

Mazaska is a non-Indian, however, the question becomes whether it has consented to tribal jurisdiction. *Montana*, 450 U.S. at 565, 101 S. Ct. at 1258. Consideration of these factors establishes that this Court has authority to preside over this matter.

### I.   RESPONDENT MAZASKA IS A NON-INDIAN.

This Court begins, as the United States Supreme Court has commanded, with determining whether Respondent Mazaska is a member-Indian or a non-Indian. This inquiry requires an analysis of Respondent's Mazaska's corporate structure. Neither party disputes that Respondent Mazaska is a corporation duly organized and existing under the laws of the State of South Dakota. Nor, however, is there a dispute that it has only four officers and five directors, all of whom appear to be members of the Tribe.[6] In light of this, the question becomes whether a corporation is a member-Indian if it is duly organized under state law but comprises largely—if not exclusively—of tribal members. This Court concludes that Respondent Mazaska is a non-Indian regardless of its member-Indian officers and directors.

It is commonly understood that corporations are considered artificial persons capable of contracting in their own names. *See, e.g., Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001) (corporations

---

[6] More specifically, Respondent Mazaska has the following principal officers: Tanya Fiddler (President); Kadem Fisher (Vice President); Irving Provost Sr. (Secretary); Tawney Brunsch (Treasurer). All of these individuals, along with Karen Pourier, also serve as directors.

5

are artificial persons). They can be fined. 18 U.S.C. 3571(c). They can be placed on probation. *United States v. J. C. Ehrlich Co.*, 372 F. Supp. 768 (D. Md. 1974). They can be ordered to pay restitution. *FTC v. E.M.A. Nationwide Inc.*, 767 F.3d 611, 619, 636-37 (6th Cir. 2014) (affirming restitution against multiple corporate defendants). Corporations are also able to continue to exist separate from the individuals who compose them. *Maimondies Med. Ctr. v. United States*, 809 F.3d 85, 87 (2d Cir. 2015). Because it is universally understood that corporations are not equal to the sum of their parts, this Court concludes that Respondent Mazaska is a citizen of the State of South Dakota regardless of the tribal membership of its officers, directors, and shareholders. Therefore, Respondent Mazaska is a non-Indian.

This Court does not break new ground in handing down this ruling. Courts in at least two jurisdictions—the state of North Dakota and the United States District Court for the District of South Dakota—have reached the same conclusion. *See, e.g., Airvator, Inc. v. Turtle Mountain Mfg, Co.*, 329 N.W.2d 596, 602–03 (N.D. 1983); *FTC v. Payday Fin., LLC*, 935 F. Supp. 2d 926, 2013 U.S. Dist. LEXIS 44151, 2013 WL 1309437 (holding that Indian owned LLCs were South Dakota companies). *See also Arrow Midstream Holdings, LLC v. 3 Bears Constr., LLC.*, 873 N.W.2d 16, 20 (N.D. 2015) (applying the same holding to a North Dakotan LLC). The analysis that the North Dakota Supreme Court conducted in *Airvator* is instructive.

Mazaska Complaint Exhibit 2
006

In *Airvator*, the plaintiff sued Turtle Mountain Manufacturing Co. ("Turtle Mountain"), a North Dakota corporation, in state court for breach of contract. 329 N.W.2d at 597. Turtle Mountain promptly moved the trial court to dismiss, arguing that 51% of its shareholders comprised of member-Indians, making it a member-Indian and therefore, not subject to the jurisdiction of North Dakota state courts. *Id.* at 599. Turtle Mountain advanced this argument even though it was incorporated under the laws of the State of North Dakota. *Id.* at 597.

Following a lengthy analysis related to the independent identity of corporations, the North Dakota Supreme Court rejected Turtle Mountain's argument that it should be considered a member-Indian simply because a majority of its shareholders were tribal members. *Id.* at 602. Similar to the analysis engaged in by this Court, the North Dakota Supreme Court reflected on the broad authority corporations have to conduct business independent of their officers, directors, and shareholders. *Id.* at 603. For instance, the court noted corporations can transfer and acquire property in their own names. *Id.* It also observed that not only can corporations be sued, they can affirmatively maintain lawsuits. *Id.* For these reasons and several others, the court ultimately classified the corporation as a non-Indian.[7]

---

[7] *But see Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 157, n.13, 93 S. Ct. 1267, 36 L.Ed.2d 114 (1973). In that action, the United States Supreme Court held, in an unrelated context, that "the question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business[.]" *Id.* This case is distinct from *Mescalero* because it neither involves taxation nor a tribal entity.

Mazaska Complaint Exhibit 2
007

This Court finds the North Dakota Supreme Court's analysis in *Airvator* instructive and follows its lead. *Airvator*, 329 N.W.2d at 602–03. *See also Payday Fin., LLC*, 935 F. Supp. 2d at 926. Therefore, Respondent Mazaska is a non-Indian even though many, if not all, of its officers, directors, and shareholders are member-Indians.

II. **RESPONDENT MAZASKA CONSENTED TO TRIBAL JURISDICTION UNDER THE FIRST *MONTANA* EXCEPTION.**

Given that Respondent Mazaska is a non-Indian, the next question is whether this Court has civil jurisdiction over it. Generally, "[t]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Montana*, 450 U.S. at 565, 101 S. Ct. at 1258, 67 L. Ed. 2d at 510. This ordinarily means tribal courts are without authority to hear disputes in which a non-Indian is a named defendant. *Id.* There are, however, two exceptions to this principle, colloquially referred to as the "*Montana* exceptions." First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.*[8] Second, "[a]

---

Although somewhat unclear, a tribal entity might be afforded more latitude to conduct business in the name of a corporation due to the inherent sovereignty of tribes.

[8] While this Court is mindful of Respondent Mazaska's general point that ordinarily a court cannot create jurisdiction where it otherwise would not exist, the *Montana* decision is more akin to personal jurisdiction and explicitly holds that in the context

8

tribe may . . . retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* As it concerns the first exception—i.e., the "consent" exception—the Eighth Circuit Court of Appeals has instructed that "the operative question . . . is whether the [Plaintiff's or Petitioner's] claim has a sufficient nexus to the consensual relationship" created between the non-Indian and the Tribe or its members. *Attorney's Process and Investigation Services, Inc. v. Sac & Fox Tribe of Mississippi in Iowa*, 609 F.3d 927, 941 (8th Cir. 2010).[9]

With these standards in mind, this Court concludes that Respondent Mazaska has consented to tribal court jurisdiction in three ways: (i) contractually; (ii) through its litigation conduct; and (iii) through its decision to conduct substantially all of its business on tribal territory with tribal members. Beginning with the first

---

of federal Indian law, non-Indians can consent to the jurisdiction of tribal courts. *Montana*, 450 U.S. at 565, 101 S. Ct. at 1258. *Smith v. Salish Kootenai College*, 434 F.3d 1127, 1138 (9th Cir. 2006) (acknowledging similarities between personal jurisdiction and the *Montana* analysis).

[9] Respondent Mazaska also argues that the first *Montana* exception cannot apply because, in its mind, the "Tribe is not alleged to have regulated any aspect of the financing arrangement between Petitioner and Mazaska through taxation, licensing, or other means." Respondent Mazaska misunderstand the *Montana* test, which explicitly provides "[a] tribe may regulate, through taxation, licensing, or <u>other means</u>, the <u>activities of *nonmembers who enter consensual relationships with*</u> the tribe or *its members*." *Montana*, 450 U.S. at 565, 101 S. Ct. at 1258, 67 L. Ed. 2d at 510. The Tribe need not regulate the financial documents for Respondent Mazaska to consent to tribal adjudicatory jurisdiction.

9

Mazaska Complaint Exhibit 2
009

reason, there is no question that Respondent Mazaska contractually consented to tribal jurisdiction; it executed three promissory notes that contain language explicitly subjecting it to this Court's jurisdiction. These notes—executed on July 7, 2010, December 1, 2010, and May 11, 2011, respectively—explicitly provide that "[t]he courts of the Tribe shall have sole and exclusive jurisdiction with respect to all controversies or claims *related to or arising out of* this Note."[10] Likewise, the mortgage agreements—also dated July 7, 2010, December 1, 2010, and May 11, 2011—explicitly reference each promissory note and state, "This Security Instrument shall be governed by federal law, and tribal law, and the law of the state in which the Property is located."

It is difficult to imagine a stronger connection between the allegations in the *Complaint* and Respondent Mazaska's consent to jurisdiction than the one that is presented here. *See Sac & Fox Tribe*, 609 F.3d at 941. Petitioner Montileaux has claimed that Respondent Mazaska has breached financial contracts it executed with her. These alleged breaches stem from the very financial documents that include clauses that explicitly submit Respondent Mazaska to tribal jurisdiction. There is little question that this scenario comfortably fits within the Eighth Circuit test,

---

[10] It is presumed that Respondent Mazaska, as the financial institution, drafted these provisions, further strengthening this Court's belief that Respondent Mazaska has consented to this Court's jurisdiction.

10

namely, that "the claim [have] a sufficient nexus to the consensual relationship." *Id.*

It is also quite likely that the contractual language at issue here is the precise circumstance that the United States Supreme Court had in mind when crafting the first *Montana* exception. By *Montana's* own terms, tribal courts are allowed to exercise jurisdiction over non-Indians when they "enter consensual relationships with the tribe or <u>its members</u>, <u>through</u> commercial dealing, <u>contracts</u>, leases, or other arrangements." *Montana*, 450 U.S. at 565, 101 S. Ct. at 1258, 67 L. Ed. 2d at 510 (emphasis added). *See, e.g., Warn v. Eastern Band of Cherokee Indians*, 858 F. Supp. 524 (W.D. N.C. 1994) (holding that because a lease agreement between the parties provided that disputes would be resolved in tribal court, non-Indians had consented to jurisdiction). For this reason alone, it is apparent to this Court that it may proceed to adjudicate this matter on the merits.

There is a second reason why this Court has jurisdiction; namely, Respondent Mazaska's litigation conduct. As noted previously, Respondent Mazaska did not challenge jurisdiction in its initial pleadings; rather, it answered the *Complaint* on its merits and proceeded to request that this Court afford it affirmative relief, i.e., requesting entry of a scheduling order. As one court observed, the "'consensual relationship' analysis under *Montana* resembles the Court's Due Process Clause analysis for purposes of personal jurisdiction." *Smith v. Salish Kootenai College*, 434 F.3d 1127, 1138 (9th Cir. 2006). Therefore, if the "defendant *himself* [takes

11

Mazaska Complaint Exhibit 2
011

action] that creates a 'substantial connection'" with the forum, the first *Montana* exception is deemed satisfied. *Id. (emphasis in original).*

This Court concludes that Defendant Mazaska's decision to answer the Complaint on its merits and file a *Stipulation and Proposed Scheduling Order* requesting entry of a scheduling order amounted to Respondent Mazaska taking action that "create[d] a substantial connection" with this forum. Indeed, in reliance on Plaintiff Montileaux's and Defendant Mazaska's joint request, this Court executed the *Order Granting Joint Stipulation for Scheduling Order*. By requesting that this Court enter such an order, Respondent Mazaska implicitly agreed to abide by the adjudicatory authority of this Court to enforce that order. This, in the Court's mind, is also enough to establish a consensual relationship with the Tribe. *Montana*, 450 U.S. at 565, 101 S. Ct. at 1258, 67 L. Ed. 2d at 510.[11]

Finally, in concluding that civil jurisdiction exists, this Court considers Respondent Mazaska's substantial connection to the Tribe and its members persuasive. This is not a situation in which "a defendant who [is] not [a] tribal member" is being asked "to defendant themselves against ordinary claims in an

---

[11] The Court is aware of the authority that suggests that certain types of defensive litigation conduct are insufficient to create consent under the first *Montana* exception. *See, e.g., Town Pump, Inc. v. LaPlante*, 394 Fed. Appx. 425, 2010 U.S. App. LEXIS 18607. To the extent that this unpublished case, and the cases on which it relies, are arguably applicable, this Court concludes that they are unpersuasive. Even if persuasive, the clauses in the contracts, standing alone, vest this Court with jurisdiction.

12

Mazaska Complaint Exhibit 2
012

unfamiliar court." *Smith*, 434 F.3d at 1131. Respondent Mazaska is familiar with tribal protocols—it conducts substantially all, if not all, of its business on tribal territory. Not only is its sole office located within the confines of the Pine Ridge Reservation, but it also specifically requested that the Executive Committee of the Tribal Council pass a resolution to set aside a building in Pine Ridge where the corporation could conduct business.[12] Equally noteworthy, as noted previously, Respondent Mazaska made the conscious choice to enter into contracts with a member of the Tribe. In those contracts, it explicitly agreed to be bound by this Court's authority. As a financial institution with advanced contractual bargaining power, it is possible that it drafted the very provisions it now seeks to repudiate. Additionally, it does not escape this Court's notice that the subject of the mortgage is Petitioner Montileaux's leasehold interest in tribal trust land. For these reasons, this Court has no pause in holding that it has jurisdiction to consider this matter on its merits.

---

[12] In that same resolution, the Executive Committee defined Respondent Mazaska as "a mortgage lending agency" providing "services on the Pine Ridge Indian Reservation."

Mazaska Complaint Exhibit 2
013

## Conclusion

[¶19.]   For the foregoing reasons, it is hereby **ORDERED** that the

*Respondent's Motion to Dismiss for Lack of Subject Matter Jurisdiction is* **DENIED.**

Dated this 10th day of August, 2022.

BY THE COURT:

David Dillon, Chief Judge
Oglala Sioux Tribal Court

ATTEST:

Clerk of Court/Deputy Clerk
(SEAL)

14

Mazaska Complaint Exhibit 2
014