UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| MAZASKA OWECASO OTIPI FINANCIAL, INC., A SOUTH DAKOTA NONPROFIT CORPORATION, | 5:25-CV-05013-CCT |
| Plaintiff, | |
| | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| LILLIAN "TONI" MONTILEAUX, | |
| Defendant. | |

This case concerns whether the action commenced by Lillian "Toni" Montileaux (Montileaux) against Mazaska Owecaso Otipi Financial Inc. (Mazaska) in the Oglala Sioux Tribal Court (tribal court), Docket 1-1, must be litigated in federal district court, Docket 1. The Court held a hearing on September 15, 2025, Docket 38, and having now considered the parties' briefs, the record, and the evidence and argument from the hearing, the Court enters the following order.

## BACKGROUND

Mazaska is a South Dakota registered corporation. Docket 1 ¶ 8. Mazaska is also a Community Development Fund Institution that provides low interest credit loans to Oglala Sioux Tribal members. Docket 18 at 1[1]; Docket 1 ¶ 27. It claims that "[i]ts programs are administered by the United States

---

[1] The page numbers cited are in reference to those in the document itself.

Department of Treasury pursuant to federal law" and that "[i]t receives monies from the Department of the Treasury and provides grants to tribal members to improve their quality of living and their homes." Docket 1 ¶¶ 28, 29. Mazaska also asserts that "[t]hese loans are secured by fee land mortgages or leasehold mortgages of tribal trust land." *Id.* ¶ 29.

Montileaux is a registered member of the Tribe and resides on the Pine Ridge Indian Reservation. *Id.* ¶ 10. Her homesite is on two tracts of trust land. Docket 13-1 at 2; Docket 30 at 8. One tract comprises land held in trust by the United States for the Tribe, and Montileaux leases 2.5 acres of this tract from the Tribe. Docket 30 at 8. The lease runs through 2040. *Id.* The other tract, on which Montileaux's home is located, is held in trust by the United States for the benefit of Montileaux and her mother. Docket 13-1 at 2; Docket 30 at 9. Montileaux holds a 25% undivided interest in this tract, while her mother holds the remaining undivided interest. Docket 30 at 9–10; Docket 13-1 at 2.

Mazaska and Montileaux executed three loans between 2010 and 2011. Docket 1-3 at 29–71; Docket 1 ¶ 34. Montileaux issued a promissory note for each loan ($51,634.00, $54,084.00, and $66,370.25, respectively), and the notes were each secured by separate mortgages. Docket 1 ¶ 34; Docket 13-1 at 3. Mazaska explains that "[t]hese loans were structured as balloon loans and secured by a leasehold mortgage—the later loans consolidating the earlier." Docket 18 at 1; *see also* Docket 30 at 10 ("All three loans were balloon loans, meaning monthly payments were based on an amortization schedule longer than the term of the loan and the final (balloon) payment represented the

2

remaining balance due and owing at maturity of the loan."). The maturity date on the third mortgage was May 10, 2016. Docket 1-1 ¶ 23.

According to Montileaux's tribal court complaint, Mazaska issued a notice on April 14, 2021, that her loan would mature on May 10, 2021, and that her loan balance was $37,878.67. Docket 1-1 ¶¶ 32, 33. Montileaux claimed that she did not agree to a maturity date beyond May 10, 2016. *Id.* ¶ 50. She also questioned the propriety of Mazaska's numbers and conducted her own calculations. *Id.* ¶¶ 33–42. On May 19, 2021, she requested an accounting of her loan history, but her attempt was unsuccessful. *Id.* ¶¶ 34, 40. On June 1, 2021, Montileaux's attorney requested an update from Mazaska on the accounting. *Id.* ¶ 44. Counsel for Mazaska provided a response on June 4, 2021, but counsel did not indicate in his letter whether an accounting would be provided. *Id.* ¶ 45.

Eventually, on November 30, 2021, Montileaux commenced a lawsuit against Mazaska in the Oglala Sioux Tribal Court. *See generally* Docket 1-1. She asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 51–59. She requested compensatory and punitive damages and a full accounting of her loan history. *Id.* (prayer for relief).

In April 2022, Mazaska filed a motion in tribal court to dismiss Montileaux's action for lack of subject matter jurisdiction. Docket 1 ¶ 18; Docket 1-2. It asserted that the tribal court is without jurisdiction because Mazaska is non-Indian and Montileaux's means for relief arise only under

3

federal law, in particular the Real Estate Settlement Procedures Act (RESPA). Docket 1-2 at 3; Docket 1-4 at 4. The tribal court denied the motion, and that decision was affirmed by the Ogalala Sioux Nation Supreme Court (tribal supreme court) in a decision dated May 30, 2024. Docket 1 ¶¶ 19–26; *see also* Dockets 1-2 and 1-4. The tribal supreme court rejected Mazaska's argument that RESPA precludes tribal court jurisdiction, noting that Mazaska "does not cite to a single case involving an Indian, Indian lands and the RESPA to support its argument." Docket 1-4 at 4.

The tribal supreme court further concluded that "tribal subject matter jurisdiction over Mazaska appears available under several alternate theories." *Id.* at 7 (emphasis omitted); *see also id.* 1–2. In particular, the court concluded that the Tribe has regulatory authority over Mazaska's conduct under the consensual relationship exception recognized in *Montana v. United States*, 450 U.S. 544 (1981), and that the conduct the Tribe seeks to regulate arises out of the consensual business relationship with Montileaux and Mazaska. Docket 1-4 at 3. The court noted that Mazaska is located on tribal fee land and "appears to have purposefully located in an area to serve the Oglala Sioux Community[.]" *Id.* at 3–4. Two additional theories, according to the tribal supreme court, support jurisdiction because Mazaska expressly consented to tribal jurisdiction in the three promissory notes it drafted relevant to its contractual relationship with Montileaux, and Mazaska should have anticipated that its conduct would fall within the Tribe's regulatory jurisdiction. *Id.* at 4–5. The tribal supreme court ultimately denied Mazaska's appeal and remanded the matter for further

proceedings. *Id.* at 7. The tribal supreme court also denied Mazaska's motion for reconsideration. Docket 41 at 192.

On February 14, 2025, Mazaska filed a complaint and petition for removal in South Dakota federal district court pursuant to 28 U.S.C. § 1331 and 12 U.S.C. §§ 2609 and 2614, and for an injunction enjoining further adjudication of Montileaux's tribal court action. Docket 1 at 1, 3. Montileaux moved to dismiss Mazaska's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim. Docket 13. While the motion to dismiss was pending, Mazaska filed a renewed motion for a temporary restraining order (TRO).[2] Docket 17. The Tribe requested leave to file an amicus curiae brief, which the Court granted over Mazaska's objection. *See* Dockets 22, 27, 29, and 30. Thereafter, the Court scheduled a hearing on both the motion to dismiss and the motion for a TRO, Docket 31, and granted the Tribe permission to participate in a limited fashion, Dockets 35, 37.

At the beginning of the hearing on September 15, 2025, Mazaska requested that the Court hold in abeyance any ruling on its renewed motion for a TRO, leaving only Montileaux's motion to dismiss to be decided.[3] Montileaux

---

[2] Shortly after filing its complaint in this Court, Mazaska filed an ex parte motion for a preliminary injunction and temporary restraining order, Docket 4, and an ex parte motion requesting the Court direct the United States Marshals Service to serve the summons upon Montileaux, Docket 3. The Court denied both ex parte motions for Mazaska's failure to comply with or meet the requirements of the rules governing such requests for relief. Dockets 10 and 11.

[3] No transcript has been prepared of this hearing. The references to the testimony and arguments from the hearing are from an audio recording and the Court's memory.

did not oppose Mazaska's request, but she requested the ability to present evidence, noting that she was unaware prior to the hearing that Mazaska would not be pursuing its TRO and a number of witnesses had driven multiple hours to testify on the issue of the tribal court's jurisdiction and her loans with Mazaska. Mazaska objected and emphasized in particular its opposition to Montileaux presenting evidence related to the validity of the subject mortgages.

The Court granted Mazaska's request to hold in abeyance any ruling on the renewed motion for a TRO and sustained the objection to the presentation of evidence attendant to the underlying mortgages' validity. However, the Court overruled Mazaska's objection to the presentation of evidence on the jurisdictional question.[4] *See Osborn v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990) (noting that a court may hold an evidentiary hearing on the question of jurisdiction).

## LEGAL STANDARDS

### 1. Motion to dismiss pursuant to Rule 12(b)(1) for lack of jurisdiction

"Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto." *Winnebago Tribe of Neb. v. Babbitt*, 915 F. Supp. 157, 162 (D.S.D. 1996) (quoting *Marine Equip. Mgmt. Co. v. United*

---

[4] Many of the exhibits entered into evidence at the hearing are attached to Mazaska's complaint, including Montileaux's tribal court complaint, the tribal court decisions, and the entire tribal court appellate record. Dockets 1-1, 1-2, 1-3, 1-4. Additional records are attached to Montileaux's motion to dismiss and Mazaska's response thereto. Dockets 13, 15.

*States*, 4 F.3d 643, 646 (8th Cir. 1993)). Therefore, "[t]he threshold inquiry in every federal case is whether the court has jurisdiction and the Eighth Circuit has admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases." *Id.* (quoting *Rock Island Millwork Co. v. Hedges-Gough Lumber Co.*, 337 F.2d 24, 26–27 (8th Cir. 1964)). "Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether subject matter jurisdiction exists." *Green Acre Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005) (citing *Osborn,* 918 F.2d at 728–30).

### 2. Motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court is to "accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Rydholm*, 44 F.4th at 1108 (citation omitted). Also, while review is confined to the pleadings, the court may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items

appearing in the record of the case, and exhibits attached to the complaint[.]"
*Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up).

## DISCUSSION

### I.     Whether the Tribe is an indispensable party

Montileaux asserts that Mazaska's complaint must be dismissed because
the tribal court is a necessary and indispensable party and Mazaska failed to
join the tribal court in this action. Docket 13-1 at 6. Mazaska responds that
the tribal court is neither necessary nor indispensable because it is not a party
to the mortgage documents between Mazaska and Montileaux. Docket 15 at 9–
10. Alternatively, Mazaska claims that if this Court concludes that joinder is
necessary, it could, in lieu of dismissing the complaint, order that the tribal
court be joined by an amendment to the pleadings. *Id.* at 10.

"[D]etermining whether a non-party is an indispensable party is a two-
step process." *Sorenson v. Sorenson*, 64 F.4th 969, 975 (8th Cir. 2023). "First,
the court must determine whether the non-joined party is a 'required'
(necessary) party under Rule 19(a)(1)." *Id.* (citation omitted). "If the non-party is
necessary under Rule 19(a)(1), the court must conduct a multi-factor analysis
under Rule 19(b) to 'determine whether, in equity and good conscience,' the
action should proceed or be dismissed.'" *Id.* (citation omitted). However, "[o]nly
if the non-party is necessary pursuant to Rule 19(a)(1) does the court analyze
the matter under Rule 19(b)." *Id.* (citation omitted).

Turning first, then, to Rule 19(a)(1). Under that rule:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Although Montileaux cites multiple cases wherein a tribal court or tribal court official was a party to a federal action seeking to enjoin a tribal court proceeding, *see* Docket 13-1 at 6, those cases did not concern the question here—whether the tribal court is a necessary party to federal court action when the action concerns enjoining further tribal court proceedings. Importantly, Montileaux, as the party asserting that the tribal court must be joined, has the burden of demonstrating that the tribal court is a necessary party in this case. *See Wilwal v. Nielsen,* 346 F. Supp. 3d 1290, 1300 (D. Minn. 2018) ("The party seeking dismissal bears the burden of demonstrating that the complainant failed to join a necessary party to the lawsuit under Rule 19."); *see also Larson Mfg. Co. of S.D., Inc. v. Western Showcase Homes, Inc.*, No. 4:16-CV-04118-VLD, 2018 WL 6528250, at *6 (D.S.D. Dec. 11, 2018). This she has not done.

First, it is not necessary to join the tribal court to accord the parties complete relief because the Court can, in the tribal court's absence, grant an injunction enjoining Montileaux from further litigating her tribal court action.

As one court has explained, it is not necessary to join a tribal court in an action on a question of federal jurisdiction because such court would be expected to comply with the federal court's binding pronouncement. *See Yellowstone Cnty. v. Pease*, 96 F.3d 1169, 1172–73 (9th Cir. 1996) (recognizing that "it is not necessary to join the tribal court as a party to [the] suit for the simple reason that tribal judges, like state judges, are expected to comply with binding pronouncements of the federal courts").

Second, Montileaux has not shown that the tribal court has a legally protected interest in the subject of her lawsuit against Mazaska. As such, disposing of Mazaska's action in the tribal court's absence will not impede or impair an interest of the tribal court or leave the tribal court with a risk of double, multiple, or inconsistent obligations. Because Montileaux has not met her burden demonstrating that the tribal court is a necessary party under Rule 19(a)(1), the Court need not proceed to Rule 19(b).

## II.    Whether Montileaux's tribal court action can be removed to federal district court

Montileaux claims that none of the statutes cited by Mazaska (or any statute for that matter) authorize the removal of Mazaska's case from *tribal court* to federal district court. Docket 13-1 at 7–10. Thus, Montileaux argues that Mazaska's complaint fails to state a claim upon which relief may be granted. *Id.* at 7. At the hearing, the Tribe agreed with Montileaux's argument in this regard and added its view that this Court is without authority to resolve Montileaux's claims against Mazaska in any event based on the manner in

which Mazaska drafted its complaint—seeking only removal and an injunction when no such relief is authorized.

In its complaint, Mazaska asserts that "[*r*]*emoval* jurisdiction is proper pursuant to 28 U.S.C. § 1331" and "pursuant to 12 U.S.C. § 2614." Docket 1 ¶¶ 14 and 15 (emphasis added). But neither statute authorizes, let alone concerns, *removal*. Instead, § 1331 gives federal district courts "*original* jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added); *see also Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521 (8th Cir. 2020) ("Federal courts have original jurisdiction over all civil actions 'arising under' federal law." (quoting 28 U.S.C. § 1331)). And § 2614 provides that an action "may be *brought* in the United States district court or in any other court of competent jurisdiction" for violations of certain RESPA provisions.[5] 12 U.S.C. § 2614 (emphasis added).

The *removal* statute is 28 U.S.C. § 1441, but Mazaska did not cite to or rely on that statute in its complaint, presumably because courts have

---

[5] That statute provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Bureau, the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

12 U.S.C. § 2614.

interpreted it to pertain only to the removal of *state court* actions, not to the removal of a *tribal court* action.[6] *See Nevada v. Hicks*, 533 U.S. 353, 368–69 (2001) (noting that "the general federal-question removal statute refers only to removal from *state* court"); *Becenti v. Vigil*, 902 F.2d 77, 779–80 (10th Cir. 1990) (noting that several courts have interpreted § 1441 to apply only to removal from *state court* and vacating the removal of a tribal court action to federal district court). Mazaska has identified no authority on which this Court can *remove* Montileaux's tribal court action to federal district court.

However, Mazaska's complaint nevertheless properly invokes this Court's jurisdiction to determine whether the tribal court is without jurisdiction to hear Montileaux's tribal court action. As the Supreme Court explained, a federal district court may, under 28 U.S.C. § 1331, determine whether federal law has divested a tribal court of jurisdiction to consider an action in tribal court and, thus, whether an injunction should issue. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 852-53 (1985) ("Because petitioners contend that federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference" and they have "filed an action 'arising under' federal law within the meaning of § 1331."). The Eighth Circuit similarly stated that the "existence of tribal court jurisdiction itself presents a federal question

---

[6] Section 1441 provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441.

within the scope of 28 U.S.C. § 1331." *Bruce H. Lein Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1421–22 (8th Cir. 1996).

Importantly, the parties do not dispute that Mazaska exhausted its remedies available in tribal court, which is a prerequisite to this Court considering the jurisdictional question. *See Nat'l Farmers*, 471 U.S. at 857 (holding that although federal jurisdiction exists under § 1331, the federal court should not entertain the action "until after the Tribal Court has had a full opportunity to determine its own jurisdiction"). Therefore, the Court declines to dismiss Mazaska's complaint and will consider the jurisdictional issue properly raised by Mazaska.

### III. Whether the tribal court lacks jurisdiction over Montileaux's tribal court action

Montileaux argues that Mazaska's federal district court complaint fails to state a claim upon which relief can be granted because, contrary to Mazaska's argument otherwise, "there is no claim listed in [her] Tribal Court Complaint that remotely involves federal law" and none of the relief sought is "based upon, invoke[s] or even reference[s] federal law." Docket 13-1 at 10. Rather, according to Montileaux, her tribal court action against Mazaska "arises from a contractual relationship under which Mazaska and Ms. Montileaux expressly consented to Tribal Court jurisdiction" and for which there is tribal court jurisdiction. *Id.* at 1–2.

In response, Mazaska argues that "Montileaux's tribal complaint demands relief under federal law, not merely contract, against a non-Indian[,]" and thus, her tribal court complaint brings her claims within the federal

court's jurisdiction. Docket 15 at 5. Mazaska focuses specifically on paragraph

53 in Montileaux's tribal court complaint, which alleges:

> The Respondent has breached its contractual obligations by failing and refusing to properly account for the escrow funds as required by *Section 2 of the Third Mortgage*, unilaterally extending the maturity date as delineated in the Third Note, and not applying Petitioner's payments in accordance with the Third Mortgage.

Docket 18 at 8 (emphasis added); Docket 1-1 ¶ 53 (emphasis added). Mazaska

then directs this Court to Section 2 of the third mortgage, which provides:

> UNIFORM COVENANTS
> BORROWER AND LENDER COVENANT AND AGREE AS
> FOLLOWS:
> . . .
> 2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for:
>
> [a list of items]
>
> These items are called "Escrow items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account *under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. section 2601 et seq ("RESPA")*, unless another law that applies to the funds set a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items or otherwise in accordance with applicable law.

Docket 15-1 at 53 (emphasis added). According to Mazaska, the above reflects

that Montileaux's "tribal court complaint invokes relief only authorized by

RESPA" and that "the tribal court is without jurisdiction." Docket 15 at 6.

Whether Montileaux's tribal court action arises under federal law "must

be determined from what necessarily appears in the plaintiff's statement of

[her] own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 (1983) (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76 (1914)). Under this rule, federal jurisdiction exists only when the plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 27–28; *see also Berger Levee Dist., Franklin Cnty., Mo. v. United States*, 128 F.3d 679, 681 (8th Cir. 1997) (citation omitted); *In re Otter Tail Power Co.*, 116 F.3d 1207, 1213 (8th Cir. 1997) (citation omitted). The federal question must appear on "the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).

On its face, Montileaux's complaint asserts that Mazaska violated specific terms of the parties' contract and the related duty of good faith and fair dealing. *See generally* Docket 1-1. Her request for relief seeks damages for those breaches and an accounting. *Id.* at 8-9. While the complaint relies on a mortgage document that refers to RESPA, Montileaux's complaint does not allege a federal claim under RESPA, does not seek a federal remedy, and does not request relief that "necessarily depends on resolution of a substantial question of federal law[.]" *See Berger Levee Dist.*, 128 F.3d at 681. Therefore, Montileaux's tribal court action to enforce the terms of the parties' contract and the related duty of good faith and fair dealing does not raise a federal question.

Likewise, her request for relief does not arise under federal law; it is based on Mazaska's breach of its duties under the parties' contract. *See, e.g., Muhammad v. U.S. Bank*, No. 1:19-CV-5357-MLB-JSA, 2020 WL 9599952, at *11–12 (N.D. Ga. May 5, 2020) (concluding that plaintiff did not assert a federal claim under RESPA); *Neal v. UMB Bank Nat'l Assoc.*, No. 3:24-CV-100-DPJ-ASH, 2024 WL 3048499, at *4 (S.D. Miss. June 18, 2024) (rejecting argument that complaint "necessarily hinges" on RESPA when the face of the complaint does not reference or invoke RESPA). Indeed, "the mere presence of a federal issue in [the] cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *Moubry v. Krebs*, 58 F. Supp. 2d 1041, 1044 (D. Minn. 1999) ("The fact that a Complaint mentions, or even incorporates a Federal law, is not determinative of whether it 'arises under' the Constitution, laws or treaties of the United States.").

However, Mazaska further asserts that Montileaux's tribal court complaint is "imprecisely and unartfully worded" and should, in fact, be construed to allege claims under RESPA. Docket 18 at 8.[7] And, in Mazaska's view, the tribal court is without jurisdiction to consider her RESPA claims, because "[t]here are no tribal laws adopting the RESPA on the Pine Ridge Indian Reservation[,]" no tribal laws governing such financial transactions, and

---

[7] Although Mazaska's argument in this regard is taken from its brief in support of its renewed motion for a TRO, the premise of the same argument is within its brief in opposition to Montileaux's motion to dismiss.

"Congress has not granted jurisdiction for the resolution of disputes under RESPA to Indian Tribes." Docket 15 at 5–6.

An exception exists to the well-pleaded complaint rule when a plaintiff artfully pleads a claim to avoid raising a federal question on the face of the complaint. As the Eighth Circuit explained, "if Congress has completely preempted a particular area, plaintiff may not avoid federal question jurisdiction and the preemption of state law claims by artfully concealing the federal question in an otherwise well-pleaded complaint under state law." *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002). Here, however, Mazaska has not established that Montileaux artfully pled her tribal court complaint to avoid raising a federal question; instead, Mazaska makes only the conclusory assertion that Montileaux's claims arise under RESPA. *See* Docket 15 at 5, 6 (asserting without explanation that "Montileaux's tribal complaint demands relief under federal law" and "invokes relief only authorized by RESPA").

More importantly, even if Montileaux did draft her complaint to avoid raising a federal question, Mazaska has not shown that Congress has completely preempted common law contract claims when it enacted RESPA, such that the tribal court would be without jurisdiction to hear Montileaux's action. In fact, Congress did just the opposite; it gave consumers the protections available under RESPA and common law. *See* 12 U.S.C. § 2616 (providing that RESPA "does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any

State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency"). Importantly, Congress indicated that laws giving *greater* protection to the consumer are not to be found inconsistent with RESPA. *Id.*; *see also* 12 C.F.R. § 1024.5(c)(2)(i) (Regulation X).

The court's decision in *Washington Mutual Bank v. Superior Court* is instructive. 75 Cal. App. 4th 773 (Cal. Ct. App. 1999). In that case, the petitioner banks argued that RESPA expressly preempted plaintiffs' state law claims because "neither RESPA nor Regulation X provides for a private right of action for a violation of disclosure requirements relating to charges for settlement services" and allowing a state law "private right of action based on such a theory is 'inconsistent' with the federal law and is preempted." *Id.* at 776–77. In response, the court explained:

> [T]he mere absence of a private right of action in a federal law does not mean that a private right of action under state law is inherently in conflict with the federal law and is preempted. We will not presume that Congress cavalierly preempted all private state causes of action simply by enacting a limited provision preempting state laws that are inconsistent with the RESPA or Regulation X. Indeed, courts are reluctant to find that state provisions are inconsistent with federal law unless the state law directly conflicts with the federal law, undermines the federal law, or makes it impossible to comply with both federal and state law.

*Id.* at 783. The court then held that the provisions of RESPA and Regulation X make "clear that Congress intended that consumers should receive maximum protection not only in the form of federal legislation but also in the form of state laws" and that "Congress did not intend any preemption of state laws to occur

18

if those laws resulted in more protections for the consumer as long as the state law did not interfere with the operation of the federal law and it was possible to comply with both the state and federal laws." *Id.* at 785; *see also Blair v. Source One Mortg. Servs. Corp.*, 925 F. Supp. 617 (D. Minn. 1996) (concluding that RESPA has not preempted state law claims).

Here, although Mazaska relies on the preemption language in RESPA and Regulation X, it has not directed the Court to provisions of tribal law that are inconsistent with RESPA. It likewise has not alleged that tribal law interferes with the operation of RESPA or that it is impossible for Mazaska to comply with both tribal and federal laws. Therefore, Mazaska has not shown that Montileaux's tribal court claims alleging breach of contract, in as much as they could be construed to implicate RESPA, are preempted by RESPA.

## IV.    Motion to dismiss for failure to state a claim that the tribal court lacks jurisdiction over Mazaska

Although not expressly alleged in its complaint, Mazaska asserts in response to Montileaux's motion to dismiss that "[t]here is no tribal court jurisdiction over non-member Mazaska." Docket 15 at 6. It claims that jurisdiction does not exist because "[t]he Tribe does not regulate any aspect of the financing arrangement between Montileaux and Mazaska[.]" *Id.* at 8. It also argues Montileaux's reliance on the consensual relationship exception from *Montana v. United States,* 450 U.S. 544, 565 (1981), is misplaced because "a consensual relationship does not permit tribal regulation of matters already removed from tribal control." Docket 15 at 8–9.

It appears Mazaska's jurisdictional arguments in this regard are premised on the view that Montileaux's tribal court complaint raises a federal question that must be decided in federal district court. In the event the Court correctly characterizes Mazaska's argument, it fails based on this Court's determination above that Montileaux's tribal court compliant, on its face, does not raise a federal question and the exceptions to the well-pleaded complaint rule do not apply. To the extent Mazaska is advancing an additional argument that the tribal court lacks jurisdiction to adjudicate Montileaux's tribal court action because her claims involve the conduct of a nonmember of the Tribe, that argument likewise fails.

"[T]ribes retain considerable control over nonmember conduct on tribal land." *Strate v. A-1 Contractors*, 520 U.S. 438, 454 (1997). "To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." *Montana*, 450 U.S. at 565. "A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* at 565–66 (citations omitted). "A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* (citations omitted). These principles are known as the *Montana* exceptions, and they "set[] the outer limits of tribal civil

20

jurisdiction—both regulatory and adjudicatory—over nonmember activities on tribal and nonmember land." *See Attorney's Process and Investigation Servs., Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 609 F.3d 927, 936 (8th Cir. 2010) ("The *Montana* exceptions are rooted in the tribes' inherent power to protect certain sovereign interests.").

Here, Mazaska entered into a consensual business relationship with tribal member Montileaux concerning tribal trust land within the boundaries of the Reservation, and Montileaux's tribal court claims against Mazaska arise out of that consensual relationship. There is also a sufficient nexus between Montileaux's claims and the consensual relationship to provide for tribal court jurisdiction. Indeed, the parties expressly contracted for tribal court jurisdiction to resolve their disputes arising out of the contract. *See* Docket 1-1 at 64 (The governing note, drafted by Mazaska, provides that "[t]he courts of the Tribe shall have sole and exclusive jurisdiction with respect to all controversies or claims relating to or arising out of this Note."). As such, Mazaska has engaged in the type of consensual relationship with a tribal member through its dealings that would subject it to tribal court jurisdiction. *See F.T.C. v. Payday Fin., LLC*, 935 F. Supp. 2d 926, 936 (D.S.D. 2013).

Further, Mazaska should have foreseen or, at the very least, reasonably anticipated that its activities would trigger tribal authority over it. *See Plains Com. Bank v. Long Family Land and Cattle Co., Inc.,* 554 U.S. 316, 338 (2008) (indicating that tribal jurisdiction depends on what non-Indians "reasonably" should "anticipate[]" from their dealings with a tribe or tribal members on a

reservation). For example, in 2012, the Tribe passed a resolution concerning Mazaska's on-reservation lending business. Docket 1-3 at 147. Through the resolution, the Tribe acknowledged that Mazaska "is a mortgage lending agency and provides such services on the Pine Ridge Indian Reservation[.]" *Id.* The Tribe then "established a partnership" with Mazaska and determined it to be "in the best interest of the Tribe and its members to set aside" a site of trust land for Mazaska to lease for office space at annual rate of $100 for twenty-five years. *Id.* at 147–48. In a separate resolution passed in 2017, the Tribe pledged $100,000 in financial support for Mazaska's activities. *Id.* at 149–50. The record also discloses that Mazaska has paid $16,000 in business license fees for years 2010 to 2025. Docket 41 at 137–38.

Finally, Mazaska has not presented any reason why the Tribe would be without regulatory authority over Mazaska's activities on the Reservation. *See Attorney's Process*, 609 F.3d at 938 (rejecting the argument that "precisely tailored regulations" are required). While positive law is not required, *see id.*, the Court notes certain aspects of the Tribe's regulatory authority. The Tribe's constitution authorizes its governing body (the tribal council) to, among many other powers, enact laws regulating conduct of businesses and persons on the Reservation, protecting and promoting the health and general welfare of the Tribe and its members, managing the Tribe's economic affairs, and for the administration of justice. Docket 30-1 at 9–10. Consistent with its constitutional authority, the tribal council enacted ordinances regulating business on the Reservation, whether it be through licensing, taxation, or other

means, Docket 30-1 at 57–61, 103–108; regulating leasehold mortgages, Docket 30-1 at 62–97; and adopting a credit code, Docket 30-1 at 109–14.

In light of the foregoing, there is more than a sufficient basis to conclude that the first *Montana* exception applies, and tribal jurisdiction over Mazaska's conduct on the Reservation is proper. Because tribal jurisdiction over Montileaux's tribal court claims against Mazaska exists under the first *Montana* exception, it is unnecessary to address the second exception.

## CONCLUSION

While this Court has jurisdiction to consider Mazaska's federal district court complaint seeking an injunction, Mazaska's complaint fails to state a claim upon which relief may be granted because it has not established that the tribal court is without jurisdiction to consider Montileaux's tribal court action. Accordingly, it is hereby

ORDERED that Lillian "Toni" Montileaux's motion to dismiss, Docket 13, is granted. It is further

ORDERED that Mazaska Owecaso Otipi Financial Inc.'s complaint and petition for removal and for an injunction, Docket 1, is dismissed. It is further

ORDERED that Mazaska Owecaso Otipi Financial Inc.'s renewed motion for a temporary restraining order, Docket 17, is dismissed as moot.

Dated October 22, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

23